| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT FOR<br>THE DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(a)<br><br>Benesch, Friedlander, Coplan & Aronoff LLP<br>Michael J. Barrie (NJ No. 033262000)<br>Kevin M. Capuzzi (NJ No. 173442015)<br>Continental Plaza II<br>411 Hackensack Ave., 3rd Floor<br>Hackensack, NJ 07601-6323<br>Telephone: (302) 442-7010<br>Facsimile: (302) 442-7012<br>mbarrie@beneschlaw.com<br>kcapuzzi@beneschlaw.com<br><br>*Counsel to 710 Route 38 ABL I Holdings, LLC* | |
| In re:<br><br>EVERGREEN I ASSOCIATES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-17116 (CMG)<br><br>(Jointly Administered)<br><br>Judge: Christine M. Gravelle<br><br>Hearing Date: December 14, 2021<br><br>**RE: D.I. 103** |

### OBJECTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC TO DEBTORS' MOTION (I) OBJECTING TO, REDUCING AND FIXING THE CLAIMS FILED BY 710 ROUTE 38 ABL I HOLDINGS, LLC AND (II) GRANTING RELATED RELIEF

Secured lender and judgment creditor, 710 Route 38 ABL I Holdings, LLC ("Lender"),[2]

by and through its undersigned counsel, hereby objects (this "Objection") to the *Motion of Debtors*

---

[1] The Debtors in these chapter 11 cases and the last four digits of the Debtors' taxpayer identification numbers are as follows: Evergreen I Associates, LLC (5258), Evergreen II Associates, LLC (5300), Evergreen III Associates, LLC (5332), and Evergreen Plaza Associates, LLC (5141).

[2] Lender is the assignee and successor-in-interest to the original lender, Pender Capital Asset Based Lending Fund I, LP ("Pender"), under that certain Assignment of Mortgage and Other Recorded Loan Documents dated August 31, 2021 ("Assignment"). A true and correct copy of the Assignment is attached to the Beldock Declaration as **Exhibit A**.

15238607

*for Entry of an Order (I) Objecting to, Reducing and Fixing the Claims Filed by 710 Route 38 ABL I Holdings, LLC and (II) Granting Related Relief* [D.I. 103] (the "Claim Objection Motion"). In support of this Objection, Lender submits the accompanying Declaration of Neil Beldock ("Beldock Declaration" or "Beldock Decl.") and Certification of Kevin M. Capuzzi, Esq. ("Capuzzi Certification" or "Capuzzi Cert."), and the exhibits annexed thereto, attached hereto as **Exhibits 1 and 2**, respectively, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Claim Objection Motion is premised on a misplaced reading of the Mortgage and the New Jersey State Court's orders on the applicable rate of interest. *First*, the Mortgage expressly provides that the application of the 20% default rate of interest will survive and continue after the entry of a final judgment in foreclosure. *Second*, the New Jersey State Court has already ruled, following years of contentious litigation, that the default rate of interest (*i.e.*, a $3,551.55 per diem rate of interest) applies. As such, this Court lacks jurisdiction to review that determination under the Rooker-Feldman doctrine.

2. Alternatively, the Court should also deny the Claim Objection Motion as barred by *res judicata* and the entire controversy doctrine because the issue of the applicable rate of interest and amount due has already been litigated and determined by the New Jersey State Court.

## RELEVANT BACKGROUND

**I. THE LOAN DOCUMENTS PROVIDE THAT THE 20% DEFAULT RATE OF INTEREST WILL APPLY POST-JUDGMENT**

3. Prior to the September 9, 2021 Petition Date (the "Petition Date"), Pender—the predecessor in interest of Lender—made a $6,500,000 loan ("Loan") to the Debtors that is secured

---

Unless expressly stated otherwise, references in this Objection to "Lender," shall refer, collectively, to 710 Route 38 ABL I Holdings, LLC and Pender.

by substantially all of the assets of the Debtors. To evidence their indebtedness, on or about March 14, 2018, the Debtors, as borrowers, executed in favor of, and delivered to, Pender, as lender, a Promissory Note in the principal amount of $6,500,000, (as amended, supplemented, or modified from time to time, the "Note," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit B**) with an initial rate of interest of 12.00% (the "Fixed Interest Rate"). Note § 1(a). The Note further defines the default rate as "[a]n annual interest rate equal to **eight percentage points (8%)** above the Fixed Interest Rate," or 20.00% (the "Default Rate"). *Id.* (emphasis in original).

4. To secure the observance, payment, and performance of their obligations under the Note, on or about March 14, 2018, the Debtors executed in favor of, and delivered to, Pender a Mortgage, Assignment of Rents and Security Agreement (as amended, supplemented, or modified from time to time, the "Mortgage," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit C**). The Mortgage, Note, and all other documents evidencing, securing, guarantying, or relating to any of the Debtors' obligations under the Loan are referred to collectively as the "Loan Documents". The Mortgage was duly recorded with the Office of the Burlington County Clerk on April 5, 2018, as Instrument Number 5374273, in Book OR13328 at Page 9222.

5. Contrary to the Debtors' assertions in the Claim Objection Motion (Claim Objection Motion p.8 n.5), the Mortgage provides that the Default Rate shall survive the entry of any foreclosure judgment as follows:

> **OBLIGATION TO PAY AT DEFAULT RATE.** Borrower agrees that it is the intention of Borrower and Lender that in the event of a foreclosure or other action to enforce the terms of any or all of the Loan Documents, and the entry of a judgment in such foreclosure or other enforcement action ("**Judgment**"), ***Borrower's obligation to pay Lender interest at the Default Rate*** (as defined in the Note), any taxes, insurance, premiums or other charges advanced by Lender, or

attorney's fees or other costs and expenses incurred by Lender with respect to any or all of the Loan Documents, whether paid or incurred before or after the entry of such Judgment, ***will not be deemed to have merged into the Judgment and will survive the entry of such Judgment and continue in full force and effect*** until all such sums have been paid in full to Lender.

Mortgage § 55 (bold/italics added; all other emphasis in original).

## II. THE NEW JERSEY STATE COURT ALREADY FIXED THE RATE OF INTEREST IN AN ORDER THAT IS FINAL AND UNAPPEALABLE FOLLOWING YEARS OF LITIGATION

6. On February 12, 2019, Pender filed the *Complaint in Foreclosure* ("Foreclosure Complaint") in the Superior Court of New Jersey, Chancery Division, Burlington County ("State Court"), Case No. SWC-F-002953-19 (Fiamingo, J.) ("Foreclosure Action").[3]

7. On February 28, 2020, Lender moved for summary judgment in the Foreclosure Action. After receiving multiple extensions, the Debtors filed an opposition to the motion for summary judgment on May 12, 2020. The State Court heard oral argument on the motion for summary judgment, after several adjournments at Debtors' request, on July 10, 2020 and July 14, 2020 where the Debtors were represented by counsel.

8. On July 15, 2020, the State Court granted Lender's motion for summary judgment (the "Summary Judgment Order"), struck the Debtors' answer and counterclaims, and returned the matter to the Office of Foreclosure to proceed as an uncontested action. A true and correct copy of the Summary Judgment Order is attached to the Capuzzi Certification as **Exhibit D**.

9. On July 28, 2020, Lender then moved the Office of Foreclosure to enter an Order for Final Judgment of Foreclosure (the "Motion for Final Judgment"). In support of its motion, Lender submitted, among other things, a Certification of Amount Due ("Certification of Amount

---

[3] A true and correct copy of the docket in the Foreclosure Action (the "Foreclosure Docket") is attached to the Capuzzi Certification as **Exhibit I**.

Due"). A true and correct copy of the Motion for Final Judgment, inclusive of the Certification of Amount Due, is attached to the Capuzzi Certification as **Exhibit E**.

10. The Debtors had ten days from service of the Motion for Final Judgment to file an objection to the calculation of amount due under New Jersey Rules of Civil Procedure ("NJ Rules") 4:64-1(d) and 4:64-9(b). *See also* Capuzzi Cert. Ex. E, Notice of Motion for Entry of Final Judgment of Foreclosure pp.3-4.

11. On August 7, 2020, the Debtors filed an objection to the amount due ("Objection to Amount Due"), but objected only to how Lender applied and charged interest on certain reserve funds. *See* Order Sustaining Objection in Part (the "Amount Due Order") at p.7 ("Here [Debtors] assert that [Lender] improperly charged [Lender] for principal borrowed that was not released to them at closing. [Debtors] further assert that [Lender's] demand for interest on amounts not borrowed is improper and should be denied. [Debtors] further assert that monies paid to the [Lender] by the rent receiver have not been properly applied."). True and correct copies of the Objection to Amount Due and Amount Due Order, inclusive of the State Court's Statement of Reasons, ultimately entered by the State Court on November 10, 2020, are attached to the Capuzzi Certification as **Exhibits F & G**, respectively.

12. Despite having an opportunity, the Debtors did not raise any objection to the application of the Default Rate. *See* Capuzzi Cert. Ex. G (Amount Due Order) at p.12 ("Here [the Debtors] did not object to the imposition of the default rate of interest."). Accordingly, the State Court ruled that the "reasonableness [of the Default Rate] is presumed and nothing to the contrary has been presented to the [State Court]." *Id.*

13. On September 11, 2020, the State Court held an *initial* hearing and heard oral argument on the Debtors' Objection to Amount Due.

14. On October 9, 2020 and October 13, 2020, the Debtors filed supplemental letter briefs in support of their Objection to Amount Due which, again, contested the application of interest on certain reserved funds, but did not contest the application of the Default Rate of interest.

15. On October 16, 2020, the State Court held *another* hearing and heard further oral argument on the Objection to Amount Due.

16. On November 10, 2020, the State Court entered the Amount Due Order that unequivocally provides that "[*t*]*he final judgment will reflect* principal balance due as of September 30, 2020 in the amount of $6,392,791.61, accrued interest of $2,195,094.74 and *per diem interest of $3,551.55*." *Id.* at p.1 (emphasis added); *see also id.* at p.12 (calculating the amount due including "[p]er diem interest at 20% from 10/1/20: $3,551.55"); *id.* at p.13 ("[T]he court sustains defendant's objections and sets the amount of principal due as of 9/30/20 at $6,392,791.61, accrued interest to 9/30/20 at $2,195,094.74 and per diem interest due from that date at $3,551.55. *Final judgment will be entered in that amount* ….") (emphasis added).

17. On November 13, 2020, the State Court entered the Final Judgment of Foreclosure (the "<u>Foreclosure Judgment</u>") providing that:

> [T]here is due and owing to [Lender], as more particularly described in the Note and Mortgage, the aggregate sum of … $8,591,437.90, as of … September 30, 2020, with lawful interest computed thereafter on the total sum due [Lender] until the same be paid and satisfied, plus costs to be taxed and counsel fees ….

Foreclosure Judgment p.2. A true and correct copy of the Foreclosure Judgment is attached to the Capuzzi Certification as **Exhibit H**.

18. The Debtors never appealed the Summary Judgment Order, the Amount Due Order, or the Foreclosure Judgment and, as such, they are final orders of the State Court. *See* NJ Rule 2:4-1(a) ("[A]ppeals from final judgments of courts … shall be filed within 45 days of their entry."); *see also Farzan v. Bayview Loan Servicing, LLC*, 2021 WL 613843, at *5 (D.N.J. Feb.

17, 2021), *aff'd sub nom. In re Farzan*, 2021 WL 4075750 (3d Cir. Sept. 8, 2021) (holding that time to appeal foreclosure judgment had expired under NJ Rule 2:4-1 and, therefore, "there is a 'final judgment or decree rendered by the highest court of a State in which a decision could be had'") (citation omitted).

## OBJECTION[4]

I. **LENDER IS ENTITLED TO POST-JUDGMENT INTEREST AT THE DEFAULT RATE UNDER THE TERMS OF THE MORTGAGE AND *STENDARDO***

19. The Debtors concede that a contractual default rate of interest applies post-judgment in a foreclosure action if there is language in the loan documents that "clearly evidences an intent to preserve the effectiveness of that provision post-judgment." Claim Objection Motion ¶ 20 (citing *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337, 342 (3d Cir. 2006) (quoting *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993))).

20. The Debtors, however, have misled the Court by stating that the Mortgage contains "no such language" that "evidence[es] the parties' intent to extend the application of [the Mortgage's] contractual default rate of interest beyond the date of the foreclosure judgment." Claim Objection Motion p.8 n.5. Rather, the Mortgage includes a section titled "**OBLIGATION**

---

[4] The Debtors state, without evidentiary support, that "Lender is not oversecured" and that "Lender incorrectly contends that interest on its claim continues to accrue 'after the Petition Date at $3,551.55 per day.'" Claim Objection Motion ¶ 14. The Debtors do not, however, seek, nor have they properly noticed, any relief from this Court with regard to post-petition interest in the Claim Objection Motion. Lender disputes the Debtors' contentions and reserves all rights with regard to the accrual of post-petition interest including, without limitation, that Lender has the burden of proof regarding its oversecured status. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) ("The initial burden should be on the party challenging a secured claim's value, because '11 U.S.C. § 502(a) and Bankruptcy Rule 3001(f) grant prima facie effect to the validity and amount of a properly filed claim.' It is only fair, then, that the party seeking to negate the presumptively valid amount of a secured claim—and thereby affect the rights of a creditor—bear the initial burden.") (citation omitted). The Debtors have not introduced evidence regarding the value of the Lender's collateral and have therefore failed to meet their burden.

**TO PAY AT THE DEFAULT RATE**" providing for the Debtors' express agreement that "in the event of a foreclosure …, and the entry of a judgment in such foreclosure, … Borrower's obligation to pay Lender interest at the Default Rate (as defined in the Note) … will not be deemed to have merged into the Judgment and will survive the entry of such Judgment and continue in full force and effect …." Beldock Decl. Ex. C (Mortgage) § 55; *see also* Beldock Decl. Ex. B (Note) § 1(a) (defining the Default Rate as 20%).

21.     Nor does the Amount Due Order provide that the Default Rate of interest will apply only "until the date that a final judgment would be entered" (Claim Objection Motion ¶ 8), and the Debtors' contention that the State Court's use of the phrase "lawful interest" in the Foreclosure Judgment means anything other than the contractual Default Rate is unavailing. *See* Claims Objection Motion ¶¶ 25-27. New Jersey Rule 4:42-11, on which the Debtors rely, provides for post-judgment interest rates "[e]xcept as otherwise ordered by the court …." NJ Rule 4:42-11(a).[5] The State Court here has "otherwise ordered" in the Amount Due Order that the "[t]he final judgment will reflect … per diem interest of $3,551.55." Capuzzi Cert. Ex. G (Amount Due Order) at p.1. The State Court's Statement of Reasons in support of the Amount Due Order similarly "set[] the amount of principal due as of 9/30/20 at $6,392,791.61, accrued interest to 9/30/20 at $2,195,094.74 and per diem interest due from that date at $3,551.55," and that "[f]inal judgment will be entered in that amount …." *Id.* at p.13. Thus, the "lawful interest" set forth in the Final Judgment is what the State Court ordered.

---

[5]     As the State Court recognized, under New Jersey law, "'[d]efault interest rates … are presumed reasonable," the Debtors "did not object to the imposition of the default rate of interest," and the Default Rate's "reasonableness is presumed and nothing to the contrary has been presented to the [State] [C]ourt." Capuzzi Cert., Ex. G (Amount Due Order) at p.12.

22. In sum, looking at the State Court's interest rate determination both logically and holistically: (1) the Final Judgment awards, among other things, "lawful interest" to Lender; (2) lawful interest is set by New Jersey Rule 4:42-11, which begins: "[e]xcept as otherwise ordered by the court;" (3) the State Court "otherwise ordered," after more than a year of "highly contested and contentious" litigation, that the 20% Default Rate of interest shall apply;[6] (4) the Debtors never appealed the Amount Due Order or the Final Judgment; and (5) those decisions are final and unappealable, and cannot be altered by this Court under the Rooker-Feldman Doctrine and other well-settled principles of law discussed in Section II below.

23. Thus, the 20% Default Rate of interest applies to the Foreclosure Judgment because (i) the Mortgage contemplates both a foreclosure judgment and the parties' intent regarding the rate of interest that will apply to the foreclosure judgment; and (ii) the State Court has "otherwise ordered" what rate of interest shall apply to the Foreclosure Judgment. *See Knauss v. Dwek*, 2006 WL 1098031, at *5 (D.N.J. Mar. 31, 2006) (applying the rate of interest under the loan documents where "the language of the Mortgage contemplates both a judgment award, and the interest rate that would apply to that judgment."); NJ Rule 4:42-11(a).

## II. THE COURT LACKS JURISDICTION TO DECIDE THE CLAIM OBJECTION MOTION UNDER THE ROOKER-FELDMAN DOCTRINE

24. The Amount Due Order and the Foreclosure Judgment are final orders entered by the State Court and, consequently, the Rooker-Feldman Doctrine operates to bar this Court from having jurisdiction over the Claim Objection Motion. *See Zaid v. DiSanti* (*In re Zaid*), 582 B.R.

---

[6] Indeed, given the "highly contested and contentious" nature of the litigation, the State Court found that it had an obligation to clearly articulate the judgment amount due to Lender in the Amount Due Order so that the Final Judgment could be issued without delay: "In a highly contested and contentious case, such as this matter, the court finds that it is its obligation to go beyond the issue of the amount due and instead make the necessary calculations in order that Final Judgment may be entered without further delay." Capuzzi Cert. Ex. G (Amount Due Order) at p.7.

370, 374 (Bankr. E.D. Pa. 2018) ("When applicable, the Rooker-Feldman Doctrine . . . serves to divest the bankruptcy court of jurisdiction that it might otherwise have exercised under 28 U.S.C. § 1134(b).") (citations omitted).

25. Pursuant to the Rooker-Feldman doctrine, federal courts generally lack subject matter jurisdiction to engage in appellate review of state court determinations. *Gage v. Wells Fargo Bank, NA AS*, 521 Fed. App'x. 49, 50 (3d. Cir. 2013). The Rooker-Feldman doctrine applies where "state-court losers complai[n] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010).

26. Courts in the Third Circuit, including this Court, have consistently found Rooker-Feldman to be applicable to bar a plaintiff's relief in federal district court in the context of state foreclosure actions. *See In re Farzan*, 2020 WL 2769046, *5 (Bankr. D.N.J. May 27, 2020); *Mayeres v. BAC Home Loans*, 2011 WL 2945833, *3 (Bankr. D.N.J. July 21, 2011); *In re Rusch*, 2010 WL 5394789 (Bankr. D.N.J. Dec. 28, 2010) (citation omitted); *Klein v. U.S. Bank*, 2010 WL 5018881 (M.D. Pa. Nov. 15, 2010).

27. As this Court recently recognized, "the Rooker-Feldman doctrine precludes federal court review of challenges to state court foreclosure judgments where the relief requested would require the federal court to directly or indirectly, review, negate, void, or provide any relief that would invalidate the decision in the state court." *In re Farzan*, 2020 WL 2769046, at *5.

28. The Third Circuit Court of Appeals has articulated a four (4) part test to determine if the Rooker-Feldman Doctrine applies: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) those judgments were rendered before

the federal suit was filed; and (4) the plaintiff is inviting the federal court to review and reject the state judgments." *Sabertooth, LLC v. Simons* (*In re Sabertooth, LLC*), 443 B.R. 671, 680 (Bankr. E.D. Pa. 2011) (citing *Great Western Mining & Mineral Co.*, 615 F.3d at 166); *see also In re Farzan*, 2020 WL 2769046, at *5. All four parts are readily met here.

29. *First*, the Debtors lost the Foreclosure Action in the State Court, including with regard to the amount due under the Loan Documents and applicable rate of interest as discussed above, as evidenced by the Summary Judgment Order, the Amount Due Order, and the Foreclosure Judgment. *See generally*, Capuzzi Cert. Exs. D, G & H.

30. *Second*, the Debtors complain of injuries sustained by the State Court's judgments. Specifically, the Debtors challenge the correct interest rate to be applied to the Foreclosure Judgment that was conclusively determined by the State Court in the Amount Due Order as discussed in detail above. *See* Claim Objection Motion ¶¶ 25-27; *see also* Capuzzi Cert. Ex. G (Amount Due Order) at p.1 ("The final judgment will reflect … per diem interest of $3,551.55.").

31. *Third*, the Summary Judgment Order, the Amount Due Order, and the Foreclosure Judgment were all entered nearly a year or more before the Petition Date. *See generally*, Capuzzi Cert. Exs. D, G & H.

32. *Finally*, the Debtors are inviting the Court to review and reject the 20% Default Rate of interest imposed by the State Court in the Amount Due Order and the Foreclosure Judgment and instead impose a 4.5% post-judgment interest rate. *See* Claim Objection Motion ¶ 22. Indeed, the Debtors dispute that the State Court granted post-judgment interest at the 20% Default Rate despite the Amount Due Order expressly providing that "[t]he final judgment will reflect … per diem interest of $3,551.55." Capuzzi Cert. Ex. G (Amount Due Order) at p.1. The

Claim Objection Motion therefore invites this Court to act as an appellate court with regard to the State Court's determination of the applicable interest rate.

33. As this Court recognized in *In re Farzan*, "[i]t would be illogical and unjust to allow [the debtor] to repackage a request for relief based on the same claims that have been fully adjudicated in the State Court under the guise of an adversary proceeding or an objection to claim within the context of a bankruptcy," because "[d]oing so would lead to a deluge of bankruptcy filings serving no purpose other than to obtain federal jurisdiction to challenge a final judgment in foreclosure." *In re Farzan*, 2020 WL 2769046, at *7. The Debtors here are attempting to do just that; repackaging a request for relief based on claims that have been fully adjudicated in the State Court (*i.e.*, the State Court's application of the 20% Default Rate of interest) as a claim objection and the Court should similarly deny the Claim Objection Motion under the Rooker-Feldman doctrine. *See id.*

### III. THE CLAIM OBJECTION MOTION IS BARRED BY THE DOCTRINE OF *RES JUDICATA* AND/OR THE ENTIRE CONTROVERSY DOCTRINE

34. As this Court further recognized in *In re Farzan*, "[a]s the Third Circuit has noted, usually, the final step in a Rooker-Feldman doctrine analysis is to "apply state law to determine the preclusive effect of the prior state-court judgments." *In re Farzan*, 2020 WL 2769046, at *7. Here, the Debtors' Claim Objection Motion is barred by the doctrine of *res judicata* and the entire controversy doctrine under New Jersey law. *See In re Farzan*, 2021 WL 4075750, at *1 (3d Cir. Sept. 8, 2021) (affirming dismissal of adversary complaint challenging determinations in a New Jersey foreclosure action as "barred by New Jersey's preclusion rules" regarding *res judicata* and the entire controversy doctrine).

35. Under New Jersey law, *res judicata* applies when there is "'(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of

the cause of action.'" *Id.* (quoting *Brookshire Equities, LLC v. Montaquiza*, 787 A.2d 942, 947 (N.J. Super. Ct. App. Div. 2002)).[7] Further, "[t]he principle of res judicata applies not only to 'all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented, but were not.'" *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 406 (N.J. 1989). All four elements of the doctrine of *res judicata* are met and the Claim Objection Motion should is barred.

36. *First*, the Amount Due Order and the Foreclosure Judgment, issued on November 10, 2020 and November 13, 2020, respectively, are both final judgments by the State Court. The Debtors were required to appeal the Amount Due Order and the Foreclosure Judgment within 45 days (*i.e.*, no later than December 28, 2020). NJ Rule 2:4-1(a) ("[A]ppeals from final judgments of courts … shall be filed within 45 days of their entry."). The Debtors failed to commence an appeal and the Amount Due Order and the Foreclosure Judgment are final. *See Bayview Loan Servicing, LLC*, 2021 WL 613843, at *5 (holding that time to appeal foreclosure judgment had expired under NJ Rule 2:4-1 and, therefore, "there is a 'final judgment or decree rendered by the highest court of a State in which a decision could be had'") (citation omitted).

37. *Second*, the parties here are identical or in privity with the parties in the Foreclosure Action. *See Brookshire Equities, LLC v. Montaquiza*, 346 N.J. Super. 310, 319, 787 A.2d 942, 947 (App. Div. 2002) ("Res judicata will apply if a party in the second action is in privity with a party in the first action."). The Debtors here are the same parties as the defendants in the

---

[7] The elements of *res judicata* have also been formulated as "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Delacruz v. Alfieri*, 145 A.3d 695, 707 (N.J. Super. Law. Div. 2015). The elements of *res judicata* are met under either formulation for the reasons discussed above.

Foreclosure Action. *See generally* Capuzzi Cert. Ex. I (Foreclosure Docket) (listing parties). The Lender here is also in privity with Pender as the assignee of all of Pender's rights under the Loan Documents. *See* Beldock Decl. Ex. A (Assignment).

38. *Finally*, the issues and causes of action in the Foreclosure Action are identical to those presented by the Debtors in the Claim Objection Motion. Namely, both the Foreclosure Action and the Claim Objection Motion involve a determination of (i) the amount of Lender's claim against the Debtors under the Mortgage and Note, and (ii) the correct interest rate to be applied. Indeed, the Debtors challenged the Lender's calculation of interest in the Foreclosure Action but decided against challenging the application of the 20% Default Rate of interest. *See* Capuzzi Cert. Ex. G (Amount Due Order) at p.7 ("[Debtors] object to the manner in which the interest has been calculated and the amount of the outstanding principal."); *id.* at p.12 ("[Debtors] did not object to the imposition of the default rate of interest").

39. Importantly, the Court may still apply the doctrine of *res judicata* even though the Debtors did not object to the application of the Default Rate of interest because the Debtors could have presented those arguments in the State Court in, without limitation, (i) their Objection to Amount Due, (ii) either of their two supplemental briefs in support of the Objection to Amount Due; or (iii) either of the two oral arguments conducted by the State Court regarding the Objection to Amount Due. *See Culver*, 559 A.2d at 406; *see also Delacruz v. Alfieri*, 145 A.3d 695, 708 (N.J. Super. Law. Div. 2015) ("Claims or defenses that went to the validity of the mortgage, the amount due, or the right of [lender] to foreclose had to be raised in the foreclosure proceeding or they were barred."); *see also* Capuzzi Cert. Ex. G (Amount Due Order) at p.12 ("Here [the Debtors] did not object to the imposition of the default rate of interest."); Capuzzi Cert. Ex. I (Foreclosure

Docket).[8] The Court should therefore deny the Claim Objection Motion on the independent basis that it is barred by the doctrine of *res judicata*.

40. In the alternative, to the extent the Court finds any difference between the claims in the Foreclosure Action and here, the Claim Objection Motion is barred under New Jersey's entire controversy doctrine. *See In re Farzan*, 2021 WL 4075750, at *2. As articulated by the Third Circuit in a case involving a prior state court determination in a foreclosure action, under New Jersey's entire controversy doctrine, "a party must bring in one action 'all affirmative claims that [it] might have against another party…' and must join 'all parties with a material interest in the controversy,' or 'be forever barred from bringing a subsequent action involving the same underlying facts.'" *Id.* (citation omitted). The Claim Objection Motion is based on the same underlying facts as the Debtors' objection to the amount due in the Foreclosure Action—an interpretation of the Loan Documents and calculation of the amount due to Lender based thereon. As such, the entire controversy doctrine "bars any variations of the claims" between the Foreclosure Action and the claim objection here. *See id.* (citing *Delacruz*, 145 A.3d at 708); *see also Delacruz*, 145 A.3d at 700 ("Claims are required to be joined if they arise out of the same

---

[8] The Court may alternatively bar the Claim Objection Motion under the doctrine of collateral estoppel. *See In re Farzan*, 2020 WL 2769046, at *7-8 (Bankr. D.N.J. May 27, 2020) (providing elements of collateral estoppel under New Jersey law as "(1) The issue to be precluded is identical to the issue decided in the prior proceeding; (2) The issue was actually litigated in the prior proceeding; (3) The court in the prior proceeding issued a final judgment on the merits; (4) The determination of the issue was essential to the prior judgment; and (5) The party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.") (citing *In re Estate of Dawson*, 641 A.2d 1026 (N.J. 1994)). Elements 1, 3, and 5 of the collateral estoppel doctrine are satisfied as stated above. The parties also actually litigated the calculation of the interest due under the Loan Documents and the determination of interest, including post-judgment interest, was essential to the Amount Due Order and the Foreclosure Judgment establishing elements 2 and 4.

transactional nexus as other claims in the suit. … The doctrine includes the joinder of defenses….") (citation omitted).

41. The Debtors' Claim Objection Motion is therefore barred by preclusive doctrines and should be denied by this Court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Lender respectfully requests that the Court (a) deny the Claim Objection Motion; and (b) grant Lender such further relief as is necessary and proper.

Dated: December 7, 2021    Respectfully submitted,

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

  /s/ Kevin M. Capuzzi
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel for 710 Route 38 ABL I Holdings, LLC*