| |
|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(a) |
| Benesch, Friedlander, Coplan & Aronoff LLP <br> Michael J. Barrie (NJ No. 033262000) <br> Kevin M. Capuzzi (NJ No. 173442015) <br> Continental Plaza II <br> 411 Hackensack Ave., 3rd Floor <br> Hackensack, NJ 07601-6323 <br> Telephone: (302) 442-7010 <br> Facsimile: (302) 442-7012 <br> mbarrie@beneschlaw.com <br> kcapuzzi@beneschlaw.com <br><br> *Counsel to 710 Route 38 ABL I Holdings, LLC* |
| In re: <br><br> EVERGREEN I ASSOCIATES, LLC, *et al.*,[1] <br><br> Debtors. |

Chapter 11

Case No. 21-17116 (CMG)

(Jointly Administered)

Judge: Christine M. Gravelle

Hearing Date: January 18, 2022
                 at 2:00 p.m. ET

**MOTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC FOR (I) ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363(e), AND/OR (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

Secured lender and judgment creditor, 710 Route 38 ABL I Holdings, LLC (the "Lender"),[2] by and through its undersigned counsel, hereby moves (this "Motion") this Court, pursuant to

---

[1]      The Debtors in these chapter 11 cases and the last four digits of the Debtors' taxpayer identification numbers are as follows: Evergreen I Associates, LLC (5258), Evergreen II Associates, LLC (5300), Evergreen III Associates, LLC (5332), and Evergreen Plaza Associates, LLC (5141).

[2]      The Lender is the assignee and successor-in-interest to the original lender, Pender Capital Asset Based Lending Fund I, LP ("Pender"), under that certain Assignment of Mortgage and Other Recorded Loan Documents dated August 31, 2021 ("Assignment"). A true and correct copy of the Assignment is attached to the Beldock Declaration as **Exhibit A**.

sections 105(a), 361, 362, and 363(e) of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order: (i) granting the Lender adequate protection of its interest in its collateral, including the Property (as defined herein); and/or (ii) granting the Lender relief from the automatic stay to foreclose on the Property. In support of this Motion, the Lender submits the accompanying Declaration of Neil Beldock ("Beldock Declaration" or "Beldock Decl.") and Certification of Kevin M. Capuzzi, Esq. ("Capuzzi Certification" or "Capuzzi Cert."), and the exhibits annexed thereto, attached hereto as **Exhibits 2 and 3**, respectively, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors have not paid or contributed *anything* to operate their business during these bankruptcy cases. They have skirted their obligations by leaving in place a two-and-a-half year state court receivership instituted as a consequence of the Debtors' gross mismanagement. Through their procedural machinations, the Debtors have forced *the Lender* to involuntarily fund the concurrent state court receivership with *the Lender's* own property since September's petition date, which includes all of the operating costs of the Debtors' business.

2. To make matters worse, senior to the Lender's position are seven figures worth of past due real property taxes accruing interest post-petition at an 18% interest rate.[3] And until these delinquent taxes are satisfied, the State of New Jersey will not permit payment on any current or other past due taxes which the Debtors concede total no less than $1,091.867.55 and continue to

---

Unless expressly stated otherwise, references in this Objection to "Lender," shall refer, collectively, to 710 Route 38 ABL I Holdings, LLC and Pender.

[3] The Lender moved the Court to pay these taxes, but the Court sustained the Debtors' objection and denied Lender's motion. *See* D.I. 45, 71, 78, 85.

2

accrue interest at $363.32 per day, plus post-petition real property taxes due November 1, 2021 totaling no less than $55,657.82 (collectively, the "Tax Debt"), none of which have been paid.

3.  While the Lender's collateral base is indisputably shrinking because of the Debtors' failure to pay their taxes and operating expenses, the Court has afforded the Debtors many opportunities to save their equity in this two-party dispute. Despite the Court's requirement that the Debtors file a financing motion seeking approval of a *real* financing transactions, they have failed to do so. Despite the Court's requirement that the Debtors demonstrate proof of funds to satisfy the Lender's claim, they have failed to do so. Despite the Court's requirement that the Debtors' principal escrow $300,000 in cash that he promised to escrow by December 14, 2021, he has refused to do so. When this Court tasked the Debtors with paying the freight of their bankruptcy cases, the Debtors defiantly rebuffed the Court demanding that the Lender do so. *See* D.I. 137 (Letter from I. Volkov to the Court dated December 17, 2021). And when the Bankruptcy Code required the Debtors to pay interest to the Lender at the contract rate, they filed an unconfirmable plan to skirt that obligation, too. *See* D.I. 89 (Order granting Lender's Motion for Determination that Debtors' Cases are Single Asset Real Estate Cases dated October 28, 2021); D.I. 124 (Debtors' Plan (the "Plan")).

4.  The Lender is pleading for the Court to end the Debtors' free ride. Should the Court not dismiss these bankruptcy cases, it should precondition adequate protection before this two-party dispute instituted to save the equity interests in the Debtors may continue. Should the Debtors desire to continue these cases, and should the Court permit them to do so, the Debtors are required by law to provide adequate protection. That adequate protection should consist of, at a minimum, the following:

- payment of all interest that has accrued post-petition on account of the past-due tax liabilities;

- payment of all taxes and interest that have accrued since the Petition Date (defined below);

- monthly payments to the Lender in an amount equal to the contract rate of interest that would be due under its loan calculated at $2,130.93 *per diem*; and

- payment of all operational and capital expenses associated with the Property (as defined below) from and after the Petition Date.

5. As set forth below, the requested relief is appropriate and necessary to prevent the continuation of an ongoing harm; a harm being suffered by only a single constituent in these cases: the Lender.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief sought herein are sections 105(a), 361, 362(d), and 363(e) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 4001.

## BACKGROUND

**I. PROCEDURAL BACKGROUND**

8. On September 9, 2021 (the "Petition Date"), each of Evergreen Plaza Associates LLC ("Evergreen Plaza"), Evergreen I Associates LLC ("Evergreen I"), Evergreen II Associates LLC ("Evergreen II"), and Evergreen III Associates, LLC ("Evergreen III," collectively with Evergreen Plaza, Evergreen I, and Evergreen II, the "Debtors" and each, a "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.

9. As of the date of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory creditors' committee has been appointed.

**II.    THE LENDER'S FIRST-LIEN SECURED LOAN TO DEBTORS**

10. Prior to the Petition Date, Pender—the predecessor in interest of Lender—made a $6,500,000 loan (the "Loan") to the Debtors that is secured by substantially all of the assets of the Debtors. To evidence their indebtedness, on or about March 14, 2018, the Debtors, as borrowers, executed in favor of, and delivered to, Pender, as lender, a Promissory Note in the principal amount of $6,500,000, with an initial rate of interest of 12.00% (as amended, supplemented, or modified from time to time, the "Note," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit B** and incorporated herein by reference in its entirety).

11. To secure the observance, payment, and performance of their obligations under the Note, on or about March 14, 2018, the Debtors executed in favor of, and delivered to, Pender a Mortgage, Assignment of Rents and Security Agreement (as amended, supplemented, or modified from time to time, the "Mortgage," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit C** and incorporated herein by reference in its entirety). The Mortgage, the Note, and all other documents evidencing, securing, guarantying, or relating to any of Debtors' obligations under the Loan are referred to collectively as the "Loan Documents". The Mortgage was duly recorded with the Office of the Burlington County Clerk on April 5, 2018, as Instrument Number 5374273, in Book OR13328 at Page 9222.

12. The Mortgage encumbers all that certain tract, lot, and parcel of land situate and lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map, and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060, as more

particularly described in the Mortgage (the "Property"). A true and correct copy of the metes and bound description of the Property is attached as **Exhibit D** to the Beldock Declaration and incorporated herein by reference in its entirety.

13. The Property consists primarily of a shopping center known as "Evergreen Plaza," comprised of approximately 90,000 square feet of commercial space including unoccupied space. The shopping center has approximately six tenants consisting of, among others, a Dollar Tree, a furniture store, a hardware store, restaurants, and a nail salon (the "Tenants").

14. To induce Pender to make the Loan, and to provide additional security of its repayment thereof and the repayment of any other indebtedness owed by the Debtors to Pender, the Mortgage contains a provision entitled "Assignment of Rents; Appointment of Receiver; Lender in Possession" (the "Assignment of Rents"). Mortgage § 3. The Assignment of Rents provides that "[a]s part of the consideration for the indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents." *Id.* at § 3(a). The Assignment of Rents further provides that "[i]t is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower." *Id.* Lender is expressly permitted, upon an event of default, to provide notice to Tenants and instruct them to pay rents to Lender. Mortgage § 3(b). Further, "Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents." *Id.*

15. Pursuant to the Assignment of Rents, the Debtors agreed that:

> If an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security of the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the

making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents …, protecting the Mortgaged Property or the security of this instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property…. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law….

Mortgage § 3(d).[4]

16. On or about September 13, 2018, the Debtors executed in favor of, and delivered to, Pender an Amendment to the Mortgage (the "Amendment to the Mortgage"), which was duly recorded with the Burlington County Clerk on October 2, 2018, as Instrument Number 5413200, at Book OR13356, at Page 1848. A true and correct copy of the Amendment to the Mortgage is attached as **Exhibit E** to the Beldock Declaration and incorporated herein by reference in its entirety.

17. On or about August 31, 2021, Pender, as assignor, and 710 Route 38 ABL I Holdings, LLC, as assignee, entered into that certain Assignment of Mortgage and Other Recorded Loan Documents (the "Assignment") assigning all of Pender's rights under the Loan Documents to the Lender. A true and correct copy of the Assignment of Judgement and Writ of Execution filed in the Chancery Division, including the Assignment, is attached as **Exhibit A** to the Beldock Declaration and incorporated herein by reference in its entirety.

---

[4] All rents for the Property are the Lender's property pursuant to the absolute and unconditional assignment of the rents to Lender in the Mortgage. *See First Fidelity Bank, N.A. v. Jason Realty, L.P.* (*In re Jason Realty, L.P.*), 59 F.3d 423, 427 (3d Cir. 1995) ("It is settled in New Jersey that an assignment of rents passes title to the assignee."). The Lender reserves all rights with respect to its property interest in the rents.

### III. THE LENDER COMMENCES FORECLOSURE PROCEEDINGS AND THE STATE COURT APPOINTS A RECEIVER TO MANAGE THE PROPERTY

18. On February 12, 2019, Pender filed the *Complaint in Foreclosure* ("Foreclosure Complaint") in the Superior Court of New Jersey, Chancery Division, Burlington County ("State Court"), Case No. SWC-F-002953-19 (Fiamingo, J.) ("Foreclosure Action").

19. On August 26, 2019, while the Foreclosure Action was pending, the Debtors allowed the Property to fall into a state of disrepair and a receiver (the "Receiver") was appointed by order of the State Court (the "Original Receiver Order"). A true and correct copy of the orders Original Receiver Order is attached to the Capuzzi Certification at **Exhibit F** and incorporated herein by reference in its entirety.

20. On February 21, 2020, the order appointing the Receiver was amended (the "Amended Receiver Order," and together with the Original Receiver Order, the "Receiver Orders"), due to ongoing misconduct by the Debtors and Aynilian, and the Receiver's powers were expanded and the Debtors and their principals were expressly enjoined from interfering with the Property. A true and correct copy of the Amended Receiver Order is attached to the Capuzzi Declaration at **Exhibit G** and incorporated herein by reference in its entirety.

21. The Amended Receiver Order provides, among other things, that the Receiver "unequivocally and exclusively possesses the following powers … to enter into, renew, extend, cancel, or modify, any existing or new leases … [and] to operate, manage, and lease the [Real] Property, and to market the [Real] Property for lease …." Amended Receiver Order ¶ 7. The Amended Receiver Order further enjoins the Debtors and Aynilian from operating or even entering upon the Property. *See id.* at ¶ 10.

22. The Receiver is further "instructed" by the State Court to "make the following disbursements, as and when incurred from the rents, income, and profits received by the [Receiver]

8

which are deemed to be necessary expenses of the Property, business assets, and business operations: All general costs of operation, including real estate taxes, water and sewer rents, insurance on the Property, utilities, trash collection, essential and routine repairs and maintenance to the Property, costs and expenses relating to the business operations, and reimbursement of the [Receiver's] actual and necessary out-of-pocket costs." *Id.* at ¶ 13.  The Receiver is further prohibited from making any payments to the Lender from the Rents until those expenses are paid. *See id.*

IV.  **THE STATE COURT ENTERS SUMMARY JUDGMENT IN THE LENDER'S FAVOR AND ENTERS A FINAL JUDGMENT IN FORECLOSURE**

23.  On February 28, 2020, the Lender moved for summary judgment in the Foreclosure Action.

24.  On July 15, 2020, the State Court granted the Lender's motion for summary judgment (the "Summary Judgment Order"), struck the Debtors' answer and counterclaims, and returned the matter to the Office of Foreclosure to proceed as an uncontested action. A true and correct copy of the Summary Judgment Order is attached to the Capuzzi Certification as **Exhibit H** and incorporated herein by reference in its entirety.

25.  On November 10, 2020, the State Court entered the Order Sustaining in Part Debtors' objection to the amount due (the "Amount Due Order") that unequivocally provides that "[t]he final judgment will reflect principal balance due as of September 30, 2020 in the amount of $6,392,791.61, accrued interest of $2,195,094.74 and per diem interest of $3,551.55." *Id.* at p.1; *see also id.* at p.12 (calculating the amount due including "[p]er diem interest at 20% from 10/1/20: $3,551.55"); *id.* at p.13 ("[T]he court sustains defendant's objections and sets the amount of principal due as of 9/30/20 at $6,392,791.61, accrued interest to 9/30/20 at $2,195,094.74 and per diem interest due from that date at $3,551.55. Final judgment will be entered in that amount ….").

9

A true and correct copy of the Amount Due Order, inclusive of the State Court's Statement of Reasons, is attached to the Capuzzi Certification as **Exhibit I** and incorporated herein by reference in its entirety.

26. On November 13, 2020, the State Court entered the Final Judgment of Foreclosure (the "Foreclosure Judgment") providing that:

> [T]here is due and owing to [Lender], as more particularly described in the Note and Mortgage, the aggregate sum of … $8,591,437.90, as of … September 30, 2020, with lawful interest computed thereafter on the total sum due [Lender] until the same be paid and satisfied, plus costs to be taxed and counsel fees ….

Foreclosure Judgment p.2. A true and correct copy of the Foreclosure Judgment is attached to the Capuzzi Certification as **Exhibit J** and incorporated herein by reference in its entirety.

27. The Debtors never appealed the Summary Judgment Order, the Amount Due Order, or the Foreclosure Judgment and, as such, they are final orders of the State Court. *See* NJ Rule 2:4-1(a) ("[A]ppeals from final judgments of courts … shall be filed within 45 days of their entry."); *see also Farzan v. Bayview Loan Servicing, LLC*, 2021 WL 613843, at *5 (D.N.J. Feb. 17, 2021), *aff'd sub nom. In re Farzan*, 2021 WL 4075750 (3d Cir. Sept. 8, 2021) (holding that time to appeal foreclosure judgment had expired under NJ Rule 2:4-1 and, therefore, "there is a 'final judgment or decree rendered by the highest court of a State in which a decision could be had'") (citation omitted).

**V.    THE DEBTORS OPERATE AS DEBTORS-IN-POSSESSION AND SEEK APPROVAL OF PRIMING LIENS ON THE PROPERTY WHILE FORCING THE LENDER TO PAY ALL EXPENSES FOR THE PROPERTY**

28. On September 16, 2021, the Debtors filed the *Initial Declaration of Nicholas J. Aynilian, Sr. in Support of Debtors' Chapter 11 Petitions and Related Motions* [D.I. 22] (the "Aynilian Declaration"). The Aynilian Declaration states that the intended purpose of the Debtors' bankruptcy is to "refinance and repay the Lender in full and to supply the necessary capital for its

development efforts." Aynilian Declaration ¶ 38; *see also id.* at ¶ 65 ("Obtaining replacement financing is critical to the success of the Bankruptcy Cases and the Debtors' ultimate development goals."). However, the Debtors were clear that "the Debtors do not intend to effectuate the development of the Property in bankruptcy …." *Id.* at ¶ 30.

29. Also on September 16, 2021, the Debtors filed an "emergent" motion seeking authorization from the Court to enter into a DIP term sheet (the "DIP Term Sheet") with proposed DIP lender Urban Bay Housing Fund, LLC, or an affiliate thereof, ("Urban Bay") for an $8 million loan [D.I. 21] (the "DIP Term Sheet Motion"). The DIP Term Sheet Motion provides that Urban Bay would receive a superpriority priming lien on the Property and contemplated an October 27, 2021 closing date of the loan from Urban Bay. Mr. Aynilian's declaration further clarified that "the Debtors do not seek to indemnify Urban Bay or advance any fees or costs with the prospective DIP loan," and that Mr. Aynilian would pay a "$25,000 deposit, as well as other fees and costs," to Urban Bay from non-debtor funds. *See* Aynilian Declaration ¶ 63.

30. On September 23, 2021, the Court granted the DIP Term Sheet Motion [D.I. 40] (the "DIP Term Sheet Order") providing that, "[f]or the avoidance of doubt, the Debtors must move under 11 U.S.C. § 364 for approval in all respects of any DIP financing agreement," and that "all parties in interest, including Lender, reserve all rights with respect thereto." DIP Term Sheet Order ¶ 3. Three months later, the Debtors have not so moved.

31. On October 8, 2021, the Court entered an order [D.I. 62] (the "First Interim 543 Order"), the form of which was agreed to by the Debtors, granting the Lender's motion to approve relief under Bankruptcy Code Section 543 to exempt the Receiver from turnover requirements

11

under the Bankruptcy Code [D.I. 15] (the "543 Motion")[5] on an interim basis providing, among other things, that (i) "[t]he Receiver Orders shall remain in full force and effect notwithstanding the above-captioned bankruptcy proceedings," and (ii) "[t]he rents and leases of the Real Property are Lender's property and are not property of the Debtors' estates." First Interim 543 Order ¶¶ 3-4.

32. On October 28, 2021, the Court entered a second interim order [D.I. 88] (the "Second Interim 543 Order") providing that "[t]he interim relief set forth in the First Interim [543] Order shall remain in full force and effect pending a further hearing by this Court on December 14, 2021." Second Interim 543 Order ¶ 1.

33. On November 1, 2021, post-petition real property taxes in the principal amount of $55,657.79 became due. A true and correct copies of the Lumberton and Mount Holly real property tax records showing amounts due for each parcel of the Property are attached to the Capuzzi Certification as **Exhibit K**.

34. On November 30, 2021, the Debtors filed a motion seeking Court approval under Section 363 to, among other things, (i) enter into a commitment letter with Urban Bay on similar terms to the DIP Term Sheet (the "Urban Bay Commitment Letter") for an $8 million loan and providing Urban Bay with a first position superpriority lien on the Property; (ii) enter into a non-binding letter of intent with Pioneer Construction and Development Corp. ("Pioneer") for up to $3 million in additional financing (the "Pioneer Letter of Intent") and providing Pioneer with a second position superpriority lien on the Property [D.I. 116] (the "DIP Commitment Motion").

---

[5] The Debtors responded to the 543 Motion on September 20, 2021 [D.I. 30], and "agree[d] with virtually all of the relief sought in the Lender's 543 Motion," except for certain modifications to the proposed form of order.

35. In the DIP Commitment Motion, the Debtors concede that the Debtors have failed, and continue post-petition to fail, to pay real property taxes, which total no less than $1,091.867.55 and continue to accrue interest at $363.32 per day. *See id.* at ¶¶ 13-18.

36. At the December 14, 2021 hearing, the Court granted the DIP Commitment Motion and deferred consideration on the 543 Motion as well as Lender's (and the Office of the United States Trustee's) motions to dismiss to a hearing date in January 2022.

37. On December 15, 2021, the Court entered the order approving the DIP Commitment Motion [D.I. 135] (the "DIP Commitment Order") providing, similar to the DIP Term Sheet Order, that "[f]or the avoidance of doubt, the Debtors must move for and obtain Court approval for any financing arrangement under the Urban Bay Commitment Letter, the Pioneer Letter of Intent and/or the Aynilian Funding, and all parties in interest reserve all rights with respect thereto." DIP Commitment Order ¶ 5.

38. On December 16, 2021, the Court entered a third interim order [D.I. 136] (the "Third Interim 543 Order") providing that "[t]he interim relief set forth in the First Interim [543] Order shall remain in full force and effect pending a further hearing by this Court on January 18, 2022." Third Interim 543 Order ¶ 1.

**RELIEF REQUESTED**

39. The Lender seeks entry of an order pursuant to sections 361, 362(d), and 363(e) of the Bankruptcy Code granting it adequate protection of its interests in its collateral, including the Property.

**BASIS FOR THE RELIEF REQUESTED**

I. **The Lender is Entitled to Adequate Protection for the Ongoing Use of Its Collateral**

40. Section 361 of the Bankruptcy Code provides, in pertinent part, as follows:

13

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property[.]

11 U.S.C. § 361(1).

41. Section 363(e) of the Bankruptcy Code provides, in pertinent part, as follows:

> (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

42. The purpose of the adequate protection doctrine is to prevent the impairment or decline in the value of a secured party's interest in its collateral, while enabling the debtor to use the secured property in the ordinary course of its business during its attempt to reorganize its business. *Albion Prod. Credit Ass'n v. Langley (In re Langley)*, 30 B.R. 595, 602 (Bankr. N.D. Ind. 1983); *Ford Motor Credit Co. v. JKJ Chevrolet, Inc. (In re JKJ Chevrolet, Inc.)*, No. CA-96-167-A, 1997 WL 407827 at *2 (4th Cir. July 21, 1997); *Travelers Life Ins. & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.).*, 98 B.R. 170, 173 (Bankr. S.D.N.Y. 1989); *In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995). Adequate protection is based on the policy of protecting the secured party's benefit of its bargain. *In re Gavia*, 24 B.R. 216, 217 (Bankr. E.D. Cal. 1982), *affirmed* 24 B.R. 573 (B.A.P. 9th Cir. 1982).

43.     A secured party is entitled to adequate protection of its interest in collateral to ensure that its collateral is not impaired during the course of a bankruptcy proceeding. *See*, *e.g.*, *U.S. v. Booth Tow Servs., Inc.*, 64 B.R. 539, 543 (Bankr. W.D. Mo. 1985).

44.     The secured party who requests adequate protection has the burden of proving the validity, priority, or extent of its interests in the debtor's property, while the debtor bears the burden of proving that the secured party's interest in the property is adequately protected. 11 U.S.C. § 363(p); *see also In re Hartman*, 2016 WL 1183175, at *7 (D.N.J. Mar. 28, 2016) (citing *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994)); *In re Ernst Home Center, Inc.*, 209 B.R. 955, 965 (Bankr. W.D. Wash. 1997); *In the Matter of Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992).

45.     Here, the Lender's burden under section 363(p) of the Bankruptcy Code is met by virtue of the valid and binding Loan Documents and the final and non-appealable Foreclosure Judgment, as evidenced by the copies of the executed documents, related filings with the Office of the Burlington County Clerk attached to the Beldock Declaration, and the final judgment attached to the Capuzzi Certification. As detailed above, the Lender holds a perfected security interest in the Property. Under section 363 of the Bankruptcy Code, the Lender is entitled to adequate protection related to that security interest. *See In re Monroe Park*, 17 B.R. 934, 940 (D. Del. 1982) (affirming grant of relief from the automatic stay noting that the right to foreclose on collateral "is an important part of the value of [creditor's] interest in property which must be fully protected. Because [creditor] would be delayed in realizing the value of its interest in collateral by virtue of the automatic stay, it was incumbent upon [debtor] to provide some form of relief which would compensate [creditor] for the loss of use of its money or to supply some 'indubitable equivalent' of the accruing interest of which [creditor] was deprived").

46. As adequate protection, the Lender requests that the Debtors pay (i) all past due post-petition real property taxes, including any accrued interest, for the Property in full within thirty (30) days of the order approving this Motion and timely pay all future real estate taxes as they become due; (ii) all post-petition interest accrued and accruing on the Tax Debt from the Petition Date; (iii) all post-petition capital expenditures on the Property that may be required with the exception of the replacement of the HVAC unit for tenant Jaron's which shall be addressed in accordance with the Court's December 7, 2021 Order [D.I. 122]; and (iv) $2,130.93 per diem post-petition interest to the Lender calculated at the pre-default contract rate of interest (*i.e.*, 12.00%)[6] on the principal balance due on the Loan under the Foreclosure Judgment ($6,392,791.61)[7] (x) within thirty (30) days of the date of the order approving this Motion for *per diem* interest accruing from the Petition Date to the date of the order;[8] and (y) on the first of each month after the entry of the order approving this Motion for interest accrued in the preceding month (collectively, the "Adequate Protection Payments").

47. The value of the Lender's collateral (*i.e.*, the Property) is being depleted on a daily basis by (i) the Tax Debt, including taxes that became due post-petition, that continues to accrue interest on a daily basis; and (ii) the costs and expenses associated with maintaining the Property.[9]

---

[6] Lender reserves all rights regarding the application of the default rate of interest accruing after the date of the Foreclosure Judgment.

[7] The Note provides that interest shall be calculated "on the basis of a 360-day year consisting of twelve 30-day months." Beldock Declaration, Ex. B (Note) at ¶ 3(b).

[8] *See In re New World Pasta Co.*, 2004 WL 5651052, *5 (Bankr. M.D. Pa. July 9, 2004) (awarding adequate protection payments to prepetition secured creditor calculated from the petition date); *In re Monroe Park*, 17 B.R. at 939-40; *see also Matter of Keystone Camera Prod. Corp.*, 126 B.R. 177, 183 (Bankr. D.N.J. 1991) ("A secured creditor has a constitutional right to have the value of its secured claim **on the petition date** preserved.") (emphasis added).

[9] The Debtors state in the DIP Term Sheet Motion and DIP Commitment Motion that they intend to seek superpriority liens in connection with the ultimate approval of post-petition

The Debtors are, and have since the Petition Date, enjoyed the use of the Property without paying any of the expenses for the Property or the taxes accruing thereon solely to the detriment of the Lender.

48. Instead, the Lender has had to bear all expenses for the Property to preserve the Lender's collateral and the Debtors' sole asset during the pendency of these Bankruptcy Cases while simultaneously suffering continued diminution in the value of its collateral due to, among other things, the continued interest accruing on the Tax Debt. *See In re Hartman*, 2016 WL 1183175, at *9 (D.N.J. Mar. 28, 2016) (holding bankruptcy court did not abuse its discretion in awarding adequate protection payments equivalent to full contract amount of post-petition mortgage payments while debtor contested validity of lender's secured claim under mortgage in adversary proceeding); *In re Monroe Park*, 17 B.R. at 939 ("Obviously, any accruing property taxes, or water or sewer charges on the mortgaged property, which were not paid by [debtor] during the pendency of the bankruptcy proceedings, would erode the value of [creditor's] secured interest."). The Lender asserts that the Adequate Protection Payments are the only effective form of adequate protection and are appropriate in light of the foregoing.

49. "[T]he requirement of adequate protection in Section 363(e) is mandatory. If adequate protection cannot be offered, such use . . . of the collateral must be prohibited." Lawrence P. King, *Collier on Bankruptcy* § 363.05. Having met the burden required under section 363(p) of the Bankruptcy Code, the grant of adequate protection is mandatory.

---

financing from a combination of funds from Urban Bay, Pioneer, and Mr. Aynilian. *See, e.g.*, DIP Term Sheet Motion ¶ 12; DIP Commitment Motion ¶¶ 23, 25. However, the Debtors have yet to file a motion to approve the priming postpetition financing under 11 U.S.C. § 364(d), the only provision of the Bankruptcy Code that would allow the Debtors to obtain financing on such terms. As a result, the Debtors have avoided providing the Lender the adequate protection to which it is entitled. See 11 U.S.C. § 364(d)(1)(B). The Lender reserves all rights regarding any motion for approval of post-petition financing.

50. The Lender is therefore entitled to adequate protection of its interests in its collateral, including the Property, pursuant to Sections 361 and 363(e) of the Bankruptcy Code.

II. **The Lender is Entitled to Relief from the Automatic Stay to Complete the Foreclosure Sale Absent the Debtors' Payment of Adequate Protection Under Section 362(d)**

51. Section 362(d)(1) of the Bankruptcy Code provides that the bankruptcy court "shall" grant relief from the automatic stay on request of a party in interest "for cause, ***including the lack of adequate protection*** of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1) (emphasis added). If the movant makes a prima facie case for "cause" for relief, the burden of going forward shifts to the debtor pursuant to section 362(g) of the Bankruptcy Code. *See Izzarelli v. Rexene Prods. Co.* (*In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992). The burden of proof on the issue of whether a secured creditor's interest in property is adequately protected, however, belongs at all times to the debtor. *See* 11 U.S.C. § 362(g)(2); *Wilmington Savs. Fund Soc. v. 1025 Assocs., Inc.* (*In re 1025 Assocs., Inc.*), 106 B.R. 805, 810 (Bankr. D. Del. 1989).

52. Unless the Debtors make the Adequate Protection Payments specified above, the Court should grant the Lender relief from the automatic stay to complete the foreclosure sale in accordance with Section 362(d)(1) for lack of adequate protection. The Debtors have not otherwise met their burden to demonstrate that the Lender is adequately protected in the face of the continued diminution of the value of Lender's collateral caused by the continually accruing interest on the Tax Debt, accrual of post-petition real property taxes and interest accruing thereon, and the continuing expenses associated with maintaining the Property. Relief from the automatic stay is therefore appropriate.

53. Alternatively, relief from stay is appropriate under Section 362(d)(3) as the Debtors have filed an unconfirmable, sham plan to avoid paying post-petition contract rate of interest to

the Lender as required by single asset real estate Debtors such as these. D.I. 89 (Order granting Lender's Motion for Determination that Debtors' Cases are Single Asset Real Estate Cases dated October 28, 2021); D.I. 124 (Debtors' Plan). Section 362(d)(3) provides that the Court "shall grant relief from the stay" to the "creditor whose claim is secured by an interest in such real estate" (the Lender here), unless the Debtors, within 90 days after the Petition Date, have "filed a plan of reorganization ***that has a reasonable possibility of being confirmed within a reasonable time***," or have commenced monthly payments to the Lender. *See* 11 U.S.C. § 362(d)(3) (emphasis added). The Plan, which was filed nearly 3 weeks ago, is premised on a refinancing that the Debtors cannot demonstrate will occur in a "reasonable time" (indeed, no motion under Section 364 has been filed), let alone be confirmed in a "reasonable time" as required by Section 362(d)(3) of the Bankruptcy Code. *See* Plan § 7.3 (listing sources of consideration for Plan distributions); *id.* at § 7.4(A) (providing closing on post-petition financing with Urban Bay and Pioneer as a means for implementation of the Plan to be used "in part, to pay the Allowed Secured Lender's Claim and the Allowed Secured Tax Debt Claims"); *see also In re Mullock*, 404 B.R. 800, 806-10 (Bankr. E.D. Pa. 2009) (granting relief from the stay under Section 362(d)(2), in part, because of debtor's effective reorganization was not probable within a reasonable period of time.).

## **WAIVER OF MEMORANDUM OF LAW**

54. Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Lender respectfully requests that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-1(a) be waived.

[*Remainder of Page Intentionally Left Blank*]

**NO PRIOR REQUEST**

55.No previous motion for relief sough herein has been made to this or to any other court.

**CONCLUSION**

WHEREFORE, the Lender therefore respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit 1, (i) providing the Lender with adequate protection of its interests in the collateral in the form of the proposed Adequate Protection Payments; (ii) granting the Lender relief from the Automatic Stay if the Debtors fail to make the Adequate Protection Payments; and (iii) granting such other and further relief that is just and proper under the circumstances.

Dated:  December 28, 2021Respectfully submitted,

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

  /s/ Kevin M. Capuzzi
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel for 710 Route 38 ABL I Holdings, LLC*