## EXHIBIT 2 - BELDOCK DECLARATION

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(a)

Benesch, Friedlander, Coplan & Aronoff LLP
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel to 710 Route 38 ABL I Holdings, LLC*

In re:

EVERGREEN I ASSOCIATES, LLC, *et al.*,[1]

Debtors.

Chapter 11

Case No. 21-17116 (CMG)

(Jointly Administered)

Judge: Christine M. Gravelle

## DECLARATION OF NEIL BELDOCK IN SUPPORT OF
## THE MOTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC FOR
## (I) ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363(e), AND/OR
## (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

1.      I, Neil Beldock, am the Senior Vice President of Lending at Pender Capital Asset
Based Lending Fund I, LP ("Pender") and an authorized representative of 710 Route 38 ABL I
Holdings, LLC ("Lender").  I regularly work with the business records of Lender and Pender and
have personal knowledge of the facts set forth herein.

2.      Except as otherwise indicated, all facts set forth in this declaration (the
"Declaration") are based upon (a) my personal knowledge of the Lender's and Pender's

---

[1]     The Debtors in these chapter 11 cases and the last four digits of the Debtors' taxpayer
identification numbers are as follows:  Evergreen I Associates, LLC (5258), Evergreen II
Associates, LLC (5300), Evergreen III Associates, LLC (5332), and Evergreen Plaza
Associates, LLC (5141).

operations and finances, (b) information learned from my review of relevant documents, and (c) information obtained by my review of the business records of Pender and Lender. The business records of Pender and Lender I reviewed are regularly maintained and kept in the ordinary course of business of Pender and Lender in connection with the regularly conducted business of Pender and Lender (i.e., making loans and deploying capital).

3.      If called upon to testify, I could and would testify competently to the facts as set forth herein.

4.      Lender is the assignee and successor-in-interest to the original lender, Pender Capital Asset Based Lending Fund I, LP, under that certain Assignment of Mortgage and Other Recorded Loan Documents dated August 31, 2021 ("Assignment").

5.      Attached hereto as **Exhibit A** is a true and correct copy of the Assignment of Judgment and Writ of Execution filed in the Foreclosure Action (defined below) attaching a true and correct copy of the Assignment.

I.      **THE LENDER'S FIRST-LIEN SECURED LOAN TO DEBTORS**

6.      Pender—the predecessor in interest of Lender—made a $6,500,000 loan ("Loan") to Evergreen Plaza Associates LLC ("Evergreen Plaza"), Evergreen I Associates LLC ("Evergreen I"), Evergreen II Associates LLC ("Evergreen II"), and Evergreen III Associates, LLC ("Evergreen III," collectively with Evergreen Plaza, Evergreen I, and Evergreen II, the "Debtors" and each, a "Debtor") that is secured by substantially all of the assets of the Debtors.

7.      To evidence their indebtedness, on or about March 14, 2018, Debtors, as borrowers, executed in favor of, and delivered to, Pender, as lender, a Promissory Note in the principal amount of $6,500,000, with an initial rate of interest of 12.00% (as amended, supplemented, or modified from time to time, the "Note").  Note § 1(a).

8.      Attached hereto as **Exhibit B** is true and correct copy of the Note.

9.      To secure the observance, payment, and performance of their obligations under the Note, on or about March 14, 2018, Debtors executed in favor of, and delivered to, Pender a Mortgage, Assignment of Rents and Security Agreement (as amended, supplemented, or modified from time to time, the "Mortgage").  The Mortgage, Note, and all other documents evidencing, securing, guarantying, or relating to any of Debtors' obligations under the Loan are referred to collectively as the "Loan Documents".  The Mortgage was duly recorded with the Office of the Burlington County Clerk on April 5, 2018, as Instrument Number 5374273, in Book OR13328 at Page 9222.

10.     Attached hereto as **Exhibit C** is a true and correct copy of the Mortgage.

11.     The Mortgage encumbers all that certain tract, lot, and parcel of land situate and lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map, and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060, as more particularly described in the Mortgage (the "Property").

12.     Attached hereto as **Exhibit D** is a true and correct copy of the metes and bound description of the Property.

13.     On or about September 13, 2018, Debtors executed in favor of, and delivered to, Pender an Amendment to the Mortgage (the "Amendment to the Mortgage"), which was duly recorded with the Burlington County Clerk on October 2, 2018, as Instrument Number 5413200, at Book OR13356, at Page 1848.

14.    Attached hereto as **Exhibit E** is a true and correct copy of the Amendment to the Mortgage.

15.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  December 28, 2021                                    _/s/ Neil Beldock_
                                                                          Neil Beldock

# EXHIBIT A

Benesch, Friedlander, Coplan & Aronoff LLP
By:    Michael J. Barrie (NJ No. 033262000)
       Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff Pender Capital Asset Based Lending Fund I, LP*

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>DOCKET NO. F-002953-19<br><br>CIVIL ACTION<br><br>**ASSIGNMENT OF JUDGMENT AND WRIT OF EXECUTION** |

It being represented that PENDER CAPITAL ASSET BASED LENDING FUND I, LP

("Assignor"), having an address of 11766 Wilshire Boulevard, Suite 1460, Los Angeles, California

90025, is the holder of the Final Judgment of Foreclosure, entered in favor of Assignor and against

EVERGREEN   PLAZA   ASSOCIATES   LLC,   EVERGREEN   I   ASSOCIATES   LLC,

EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC on November

13, 2020, in the amount of $8,591,437.90, together with costs and attorneys' fees to be taxed by

the clerk and lawful interest from the date of final judgment until the same be paid and satisfied

(the "Judgment");[1]

---

[1] A true and correct copy of the Judgment is attached hereto as Exhibit A.

11295905 v1

It being represented that the promissory note, mortgage, and all other loan documents which form the basis for the action upon which the Judgment was entered have been assigned to 710 ROUTE 38 ABL I HOLDINGS, LLC ("Assignee"), having an address of 11766 Wilshire Boulevard, Suite 1460, Los Angeles, California 90025;[2]

It being represented that Assignee is desirous of owning the Judgment in addition to the loan documents;

Accordingly, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Assignor hereby sets over, transfers, and assigns to Assignee, all of Assignor's right, title, and interest in and to the Judgment, together with the Writ of Execution issued in conjunction with the Judgment, without warranty or recourse.[3]

IN WITNESS WHEREOF, ASSIGNOR has caused this instrument to be executed this 31st day of August, 2021.

> PENDER CAPITAL ASSET BASED LENDING
> FUND I, LP, a Delaware limited partnership
>
> By: Pender Capital Asset Based Lending Fund I
> Management LLC
> Its: General Partner
>
> By: Pender Capital Management, LLC
> Its: Managing Member
>
> By: _____
> Name: Cory Johnson
> Title:   Manager

*[Acknowledgement Page Follows]*

---

[2] A true and correct copy of the recorded Assignment of Mortgage and Other Recorded Loan Documents is attached hereto as Exhibit B.

[3] A true and correct copy of the Writ of Execution is attached hereto as Exhibit C.

11295905 v1

**ACKNOWLEDGMENT**

State of _____
County of _____

On _____ before me personally appeared Zachary W. Murphy, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SEE ATTACHED

Signature _____ (Seal)

11295905 v1

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                                    **CIVIL CODE § 1189**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of California          )

County of ____**Los Angeles**____ )

On __8 -31- 21__ _____ before me, ___Nivie Samaan-Lloyd___ __Notary Public__,
       *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared ___CORY JOHNSON_____

                                   *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIVIE SAMAAN-LLOYD
Notary Public · California
Los Angeles County
Commission # 2334308
My Comm. Expires Sep 25, 2024

Signature _____
                   *Signature of Notary Public*

*Place Notary Seal Above*

─────────────── **OPTIONAL** ───────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____      Signer's Name: _____
☐ Corporate Officer — Title(s): _____    ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited   ☐ General      ☐ Partner — ☐ Limited   ☐ General
☐ Individual   ☐ Attorney in Fact       ☐ Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator   ☐ Trustee   ☐ Guardian or Conservator
☐ Other: _____       ☐ Other: _____
Signer Is Representing: _____     Signer Is Representing: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

# <u>Exhibit A</u>



# SUPERIOR COURT OF NEW JERSEY

# OFFICE OF FORECLOSURE

# Cost Sheet

Chancery Division

Docket No. SWC-F-002953-19                                    County:BURLINGTON

| | |
|---|---|
| Attorney's Allowance by Statute | 50.00 |
| Filing Fees Paid to Clerk | 250.00 |
| Counsel  Fees Allowed Under R.4:42-9 | 7500.00 |
| Sheriff Fees for Service | 0.00 |
| Search Costs Allowed Under R.4:42-10 | 500.00 |
| Printing Costs for Publication | 0.00 |
| Cost of Filing Lis Pendens | 0.00 |
| Motions | 100.00 |
| Costs on Application for Writ of Execution (if applicable) | 0.00 |
| Other | 0.00 |
| Total Costs | 8400.00 |

Date Taxed and Filed:    11/13/2020

Attorney:

Benesch, Friedlander, Coplan & Aronoff LLP
By:     Michael J. Barrie (NJ No. 033262000)
        Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff Pender Capital Asset Based Lending Fund I, LP*

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>Docket No. SWC-F-002953-19<br><br>Civil Action – Foreclosure<br><br>**FINAL JUDGMENT OF FORECLOSURE** |

Upon motion to the Court by Plaintiff Pender Capital Asset Based Lending Fund I, LP ("Plaintiff"), by and through its counsel; and it appearing that the Summons and Complaint in Foreclosure were duly issued and served upon Defendants Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates, LLC (together, "Defendants") in accordance with the Rules of Civil Practice Governing the Courts of the State of New Jersey; and the Court ordering summary judgment against Defendants on July 15, 2020.

And it appearing that the Note dated March 14, 2018 and the Mortgage dated March 18, 2018, have been presented and marked as exhibits by the Court; and that proofs have been

submitted of the amounts due thereon; and that there is due and owing to Plaintiff, as more particularly described in the Note and Mortgage, the aggregate sum of ~~$8,340,659.20~~ $8,591,437.90, as of ~~July 31, 2020~~ September 30, 2020, with lawful interest computed thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs to be taxed and counsel fees;

IT IS on this 13th day of November, 2020;

1.    ORDERED AND ADJUDGED that Plaintiff is entitled to have first the sum of ~~$8,340,659.20~~ $8,591,437.90, with lawful interest from ~~December 1, 2018~~ the date of final judgment, until the same be paid and satisfied, plus costs ~~of this suit to be taxed ($850.00) and~~ attorney's fees ($7,500.00) ~~in the aggregate amount of $8,350.00,~~ all to be raised and paid out of those certain tracts, lots, and parcels of land situate and lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060 (collectively, the "Property" or the "Mortgaged Premises") and collateral; and it is

2.    FURTHER ORDERED AND ADJUDGED that Plaintiff, its successors and/or assigns, or any purchaser at the foreclosure sale duly recover against Defendants, and all parties holding by, though, or claiming under them, possession of the premises and collateral mentioned and described in the Complaint in Foreclosure with the appurtenances thereon and that a Writ of Possession issue thereon; and it is

3.     FURTHER ORDERED AND ADJUDGED that the Mortgaged Premises be sold to raise and satisfy the amounts due to Plaintiff, or its successors and assigns, and that, for that purpose, an execution duly issue out of this Court directed to the Sheriff of Burlington County commanding him or her to make a sale, according to law, of the Mortgaged Premises and collateral, and out of the monies arising from the sale that he or she pay Plaintiff, or its successors and assigns or its attorney, the amounts due and owing to Plaintiff until such amounts are paid in full and satisfied; and that in case more money shall be realized by such sale than shall be necessary to satisfy such indebtedness to Plaintiff, that such surplus be brought into this Court and deposited with the Clerk to abide the further order of this Court and that the Sheriff make his or her report of the aforesaid sale without delay as required by the Rules Governing the Courts of the State of New Jersey; and it is

4.     FURTHER ORDERED AND ADJUDGED that this Final Judgment shall not affect the rights of persons protected by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-68.l *et. seq.*, if any; and it is

5.     FURTHER ORDERED AND ADJUDGED that Defendants, and their heirs, successors and assigns, stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the Mortgaged Premises and collateral described in the Complaint in Foreclosure when sold by virtue of this Final Judgment, except as provided by 28 U.S.C. § 2410.

/s/Kathi F. Fiamingo, J.T.C. t/a          
Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

# Exhibit B

Upon recordation, return to:

Benesch, Friedlander, Coplan & Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Attn: Kevin M. Capuzzi, Esq.

## ASSIGNMENT OF MORTGAGE AND OTHER RECORDED LOAN DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS:

THAT, **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, a Delaware limited partnership ("Assignor"), for value received, does by these presents, grant, bargain, sell, assign, transfer, and set over to **710 ROUTE 38 ABL I HOLDINGS, LLC**, a Delaware limited liability company, its successors, and assigns (hereinafter referred to as "Assignee"), all right, title and interest in and to those certain documents identified on **Exhibit A** attached hereto and made a part hereof.

TO HAVE AND TO HOLD THE SAME UNTO SAID ASSIGNEE, ITS SUCCESSORS, AND ASSIGNS.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION, OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY ASSIGNOR. THE LOAN IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTABILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON.

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, SELLER has caused this instrument to be executed this 31st day of August, 2021.

**PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership**

By: Pender Capital Asset Based Lending Fund I Management LLC
Its: General Partner

By: Pender Capital Management, LLC
Its: Managing Member

By: _____
Name: Cory Johnson
Title: Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of **Los Angeles**

On **8-31-21** before me, **Nivie Samaan-Lloyd Notary Public**, personally appeared **CORY JOHNSON**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that she/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

NIVIE SAMAAN-LLOYD
Notary Public - California
Los Angeles County
Commission # 2334308
My Comm. Expires Sep 25, 2024

## EXHIBIT A

### to Assignment of Mortgage and Other Loan Documents

That certain Mortgage, Assignment of Rents and Security Agreement, dated March 14, 2018, executed and delivered by Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates, LLC in favor of Pender Capital Asset Based Lending Fund I, LP, relating to the real property commonly known as S. Pemberton Road and 1722 Route 38, Mount Holly, New Jersey, and also known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map and (ii) Lots 2.04 and 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, and legally described below (the "Mortgaged Real Estate"), and recorded with the Office of the Burlington County Clerk (the "Recorder") on April 5, 2018, as Instrument Number 5374273, in Book OR13328 at Page 9222, as amended by that certain Amendment to Mortgage, Assignment of Rents and Security Agreement, dated September 13, 2018, and recorded with the Recorder on October 2, 2018, as Instrument Number 5413200, in Book OR13356 at Page 1848.

LEGAL DESCRIPTION OF THE MORTGAGED REAL ESTATE:

Attached as Exhibit 1

## EXHIBIT 1

### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

TRACT I

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the end of a curve connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way (60') running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set; thence
2. South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3. North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4. South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5. North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6. South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7. South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8. North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9. South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet and a length of 81.40 feet to the point or place of BEGINNING.

TRACT II:

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A) Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B) North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**American Land Title Association** **Commitment**
(Continued) **Revised 10-17-92**

Commitment Number:   843266(S-NJ-CR-LX)C

2. South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found; thence
3. North 58 degrees 26 minutes  24 seconds West 269.52 feet to a monument found; thence
4. North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.


Copyright 2006-2009 American Land Title Association.  All rights reserved.


The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Book # OR 13356 Page # 1848 Inst. # 5443200

# <u>Exhibit C</u>

Benesch, Friedlander, Coplan & Aronoff LLP
By:     Michael J. Barrie (NJ No. 033262000)
        Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff Pender Capital Asset Based Lending Fund I, LP*

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>Docket No. SWC-F-002953-19<br><br>Civil Action – Foreclosure<br><br>**WRIT OF EXECUTION** |

THE STATE OF NEW JERSEY TO

SPECIAL MASTER IAN V. LAGOWITZ

GREETINGS:

WHEREAS, on the 13th day of November, 2020, by a certain judgment made in our Superior Court of New Jersey in a certain cause therein pending wherein Pender Capital Asset Based Lending Fund I, LP ("Plaintiff") is the plaintiff and Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates LLC (collectively, "Defendants") are the defendants, it was ordered and adjudged that certain mortgaged premises with the appearances and collateral particular set forth and described in the

Complaint in Foreclosure, that is to say: all those certain tracts, lots, and parcels of land situate and lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060, the real property as more particularly described on **Exhibit A** attached hereto and made a part hereof.

TOGETHER with all and singular the rights, liberties, privileges, hereditaments, and appurtenances thereunto belonging or in anywise appertaining, and the reversion and remainders, rents, issues, and profits thereof, and also all the estate, right, title, interest, use, property, claim, and demand of Defendants of, in, to and out of the same, and all collateral, including, but not limited to, fixtures, be sold to pay and satisfy in the first place unto Plaintiff the aggregate sum of $8,591,437.90, as of September 30, 2020, which is secured by a certain mortgage dated March 14, 2018 and given by Defendants, together with lawful interest computed thereafter on the total sum due Plaintiff until the same be paid and satisfied, and also the costs and attorneys' fees of the aforesaid Plaintiff, with interest thereon;

AND that, for that purpose, a Writ of Execution should issue, directed to Special Master Ian V. Lagowitz (the "Special Master"), commanding him to make the sale as aforesaid; and that the surplus money arising from such sale, if any there be, should be brought into said Court and deposited with the Clerk, subject to the further order of the said Court as by the said judgment remaining as of record in our said Superior Court of New Jersey, at Trenton, doth and may more fully appear;

SWC-F-002953-19   09/08/2021 5:01:16 PM   Pg 4 of 6 Trans ID: CHC2021176857
Recorded see the Office of the Superior Court Clerk – Entered 12/28/21 16:56:334

WHEREAS, the costs of the said Plaintiff including attorneys' fees have been duly taxed in the amount of $8,400.00;

THEREFORE, you are hereby commanded that you cause sale to be made of the premises and collateral, by selling so much of the same as may be needful and necessary for the purpose, to raise for Plaintiff said sum of $8,591,437.90, as of September 30, 2020, with lawful interest thereafter, plus costs and attorneys' fees in the amount of $8,400.00, and that you have the surplus money, if any there be, before the Superior Court of New Jersey aforesaid at Trenton, within thirty (30) days after the sale to abide the further order of the said court, according to the judgment aforesaid; and you are to make return of the time and place aforesaid, by certificate under your hand, of the manner in which you have executed this our Writ, together with this Writ.  If there is no sale, the Writ shall be returnable within twenty-four (24) months in accordance with Rule 4:59-l(a).

WITNESS, the Honorable Kathi F. Fiamingo, J.T.C. t/a, a Judge of the Superior Court of New Jersey, at Mount Holly, New Jersey, aforesaid this 12th  day of May, 2021.

*/s/ Michelle M. Smith, Esquire*
MICHELLE M. SMITH, ESQUIRE
CLERK OF THE SUPERIOR COURT

SIGNED AND SEALED IN THE SUPERIOR COURT OF NEW JERSEY

Benesch, Friedlander, Coplan &
Aronoff LLP
*Attorneys for Plaintiff*

By:    */s/ Kevin M. Capuzzi*
        KEVIN M. CAPUZZI

EXHIBIT 'A'
DESCRIPTION OF THE LAND

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly &
Lumberton, County of Burlington and State of New Jersey being more particularly described as
follows:

**TRACT 1:**

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38
South Pemberton Road, said point being the end of a curve connecting the southerly line of New
Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory
Way (60') running; thence

1.  Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton
    Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set;
    thence
2.  South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3.  North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4.  South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5.  North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6.  South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7.  South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8.  North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9.  South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the
    southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds
    East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet
    and a length of 81.40 feet to the point or place of BEGINNING.

The above description is drawn in accordance with a survey prepared by William J. Fiore, dated
August 21, 2006.

Together with certain rights, privileges and easements appurtenant to the above described
property created by those certain Deeds of easements recorded in Deed Book 3965 Page 238;
Deed Book 3965; Page 241; and Deed Book 3965, Page 244.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2 in Block 117.02 on the
Township of Mount Holly Tax Map, and Lot 4.01 in Block 22 on the Township of Lumberton
Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:  BEING COMMONLY KNOWN AS Block
117.02 Lot 2, Mount Holly, NJ 08060 and Block 22, Lot 4.01, Lumberton, NJ 08048.

Book # OR 13328 Page # 9222 Inst. # 5374273

4

Case 21-17116-CMG    Doc 144-2    Filed 12/28/21    Entered 12/28/21 14:57:43    Desc
Exhibit 2 - Beldock Declaration    Page 27 of 87

SWC-F-002953-19    09/08/2021 5:01:16 PM    Pg 6 of 6 Trans ID: CHC2021176857
Recorded in the Office of the Superior Court Clerk 09/15/2021 4:05:59 PM 5374273

**TRACT II:**

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A)      Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B)      North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1.      Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence
2.      South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found;  thence
3.      North 58 degrees 26 minutes 24 seconds West 269.52 feet to a monument found; thence
4.      North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.

The above description is in accordance with a survey made by William J. Fiore, Inc., dated 8/21/2006.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2.04 and 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:   BEING COMMONLY KNOWN AS S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060

Book # OR 13328 Page # 9222 Inst. # 5374273

Benesch, Friedlander, Coplan & Aronoff LLP
By:    Michael J. Barrie (NJ No. 033262000)
       Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff*

|  |  |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP, <br><br> Plaintiff, <br><br> v. <br><br> EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY <br><br> DOCKET NO. F-002953-19 <br><br> CIVIL ACTION <br><br> **CERTIFICATION OF SERVICE** |

I hereby certify that on September 8, 2021, I caused a copy of:

1. Assignment of Judgment and Writ of Execution; and
2. Certification of Service.

To be served via first-class mail upon:

Evergreen Plaza Associates LLC
Evergreen I Associates LLC
Evergreen II Associates LLC
Evergreen III Associates LLC
477 Colonial Road
Ridgewood, New Jersey 07450
*Defendants*

15004235

James D. Daniels, Esq.
Tod S. Chasin, Esq.
Riker, Danzig, Scherer, Hyland & Perretti LLP
500 Fifth Avenue, 49th Floor
New York, NY 10110
*Attorney for Defendants*

Ian V. Lagowitz
IVL Group, LLC
24 Church Street
Montclair, New Jersey 07042
*Receiver*

Scott T. Tross, Esq.
Herrick, Feinstein LLP
One Gateway Center
Newark, New Jersey 07102
*Attorney for Receiver*

James B. Daniels, Esq.
Riker, Danzig, Scherer, Hyland, Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
*Attorney for Paul Robbins and Barbara Lowenthal*

Alan R. Ackerman, Esq.
Law Offices of Alan R. Ackerman
1719 Route 10 East, Suite 106
Parsippany, NJ 07054
*Attorney for The Independence Project Inc. and Dennis Maurer*

Sheriff Anthony Basantis
Burlington County Sheriff's Office
49 Rancocas Road
Room G4
Mount Holly, NJ 08060

Dated: September 8, 2021                    */s/ Kevin M. Capuzzi*
                                    Kevin M. Capuzzi (NJ No. 173442015)

# EXHIBIT B

## PROMISSORY NOTE
### (New Jersey)

US $6,500,000.00                                                                       March 14, 2018

FOR VALUE RECEIVED, the undersigned, **EVERGREEN PLAZA ASSOCIATES LLC, a New Jersey limited liability company, EVERGREEN I ASSOCIATES LLC, a New Jersey limited liability company, EVERGREEN II ASSOCIATES LLC, a New Jersey limited liability company**, and **EVERGREEN III ASSOCIATES LLC, a New Jersey limited liability company** (together with such party's or parties' successors and assigns, "**Borrower**"), jointly and severally (if more than one) promise to pay to the order of **PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership**, the principal sum of **SIX MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS (US $6,500,000.00)**, with interest on the unpaid principal balance, as hereinafter provided.

1.     **Defined Terms.**

(a)     In addition to defined terms found elsewhere in this Note, as used in this Note, the following definitions shall apply:

**Business Day**:  Any day other than a Saturday, a Sunday or any other day on which Lender or the national banking associations are not open for business.

**Default Rate**:  An annual interest rate equal to **eight percentage points (8%)** above the Fixed Interest Rate. However, at no time will the Default Rate exceed the Maximum Interest Rate.

**Disbursement Date**:  The date of the initial disbursement of Loan proceeds hereunder.

**First Payment Due Date**:  **May 1, 2018.**

**Fixed Interest Rate**:  The annual interest rate of **twelve percent (12%)**.

**Indebtedness**:  The principal of, interest on, or any other amounts due at any time under, this Note, the Mortgage or any other Loan Document, including late charges, default interest, and advances to protect the security of the Mortgage under Section 12 of the Mortgage or any other applicable provision of the Mortgage or any other Loan Document or as permitted by law.

**Lender**:  The holder(s) from time to time of this Note.

**Loan**:  The loan evidenced by this Note.

**Maturity Date**:  The earlier of (i) **April 1, 2019**, and (ii) the date on which the unpaid principal balance of this Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.  The Maturity Date of this Note is subject to extension up to **April 1, 2020** upon the terms and conditions set forth in Section 3(f).

**Maximum Interest Rate**:  The rate of interest that results in the maximum amount of interest allowed by applicable law.

**Mortgage**:  That certain Mortgage, Assignment of Rents and Security Agreement dated as of the date of this Note, executed by Borrower to or for the benefit of Lender and securing this Note, which Mortgage encumbers certain real property commonly known as **1710 Route 38 and 1722 Route 38, Mount Holly, NJ 08060**.

**Payment Due Date**:  The First Payment Due Date and any subsequent date on which a monthly installment of interest or principal and interest is due and payable pursuant to Section 3.

**Property Jurisdiction**:  The jurisdiction in which the Land is located.

(b)     "**Event of Default**" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Mortgage.

2.     **Address for Payment.**   All payments due under this Note shall be payable at **PENDER CAPITAL, 11766 Wilshire Blvd., Suite 460, Los Angeles, CA 90025, Attn: Loan Servicing**, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

3.     **Payments.**

(a)     Interest will accrue on the outstanding principal balance of this Note at the Fixed Interest Rate, subject to the provisions of Section 8.

(b)     Interest under this Note shall be computed on the basis of a 360-day year consisting of twelve 30-day months. Each monthly payment will first be applied to pay in full interest due, and the balance of the monthly payment paid by Borrower will be credited to principal.

(c)     Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Disbursement Date. If the Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under Section 3(d) of interest only or principal and interest, as applicable, will be the First Payment Due Date set forth in Section 1(a). Except as provided in this Section 3(c), accrued interest will be payable in arrears.

(d)     Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month. The amount of the monthly installment of interest only payable pursuant to this Section 3(d) on a Payment Due Date shall be **SIXTY-FIVE THOUSAND AND 00/100 DOLLARS (US $65,000.00)** (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred). The amount of the monthly interest only payment shall be adjusted in the event any principal reduction payments or other changes to the outstanding principal balance are made during the term of the Loan.

(e)     All remaining Indebtedness, including all principal and interest, shall be due and payable by Borrower on the Maturity Date. All payments under this Note shall be made in immediately available U.S. funds. Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any accrued interest remaining past due for **thirty (30)** days or more, at Lender's discretion, may be added to and become part of the unpaid principal balance of this Note and any reference to "accrued interest" shall refer to accrued interest which has not become part of the unpaid principal balance. Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in Borrower's designated account to cover any preauthorized monthly debit from Borrower's checking account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of **$100.00** (but not more than the maximum amount allowed by law) for each such event.

[The balance of this page is intentionally left blank.]

(f)       Borrower shall have **two (2)** options to extend the Maturity Date (each, an **"Extension Option"**) for **six (6)** months each (each, an **"Extension Period"**) to **October 1, 2019** and **April 1, 2020**, respectively.  Each Extension Option is exercisable upon the following terms and conditions:

(i)        No Event of Default shall exist and no monthly payment due under this Note since the initial funding of the Loan shall have been received by Lender more than **thirty (30)** days after the Payment Due Date.

(ii)       Borrower must exercise such Extension Option by written notice to Lender at least **sixty (60)** days prior to the then-current Maturity Date, accompanied by a non-refundable cash extension fee in the amount of **three percent (3%)** of the outstanding principal balance of this Note, plus a **$5,000.00** document processing fee, on the date of Borrower's notice of exercise of such Extension Option.

(iii)      [Intentionally Omitted]

(iv)      The Fixed Interest Rate shall remain unchanged during each Extension Period.

(v)       Borrower shall continue making monthly interest only payments on the first day of each calendar month during each Extension Period.

4.        **Application of Payments.**  If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

5.        **Security.**  The Indebtedness is secured by, among other things, the Mortgage and reference is made to the Mortgage for other rights of Lender as to collateral for the Indebtedness.

6.        **Acceleration.**  If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, and all other amounts payable under this Note and any other Loan Document, shall at once become due and payable, at the option of Lender, without any prior notice to Borrower (except if notice is required by applicable law, then after such notice).  Lender may exercise this option to accelerate regardless of any prior forbearance.

7.        **Late Charge.**

(a)       If any installment of interest or principal and interest or other amount payable under this Note, the Mortgage or any other Loan Document is not received in full by Lender within **ten (10)** days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to **ten percent (10%)** of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted).

(b)       Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan and that it is extremely difficult and impractical to determine those additional expenses.  Borrower agrees that the late charge payable pursuant to this Section 7 represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment.  The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

8.        **Default Rate.**

(a)       So long as (i) any monthly installment under this Note remains past due for **thirty (30)** days or more or (ii) any other Event of Default has occurred and is continuing, then notwithstanding anything in Section 3 to the contrary, interest

under this Note shall accrue on the unpaid principal balance from the Payment Due Date of the first such unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at the Default Rate.

(b)      From and after the Maturity Date, the unpaid principal balance and all accrued interest shall continue to bear interest at the Default Rate until and including the date on which the entire principal balance is paid in full.

(c)      Borrower acknowledges that (i) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (ii) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (iii) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate provided for in Section 1(a) shall be immediately due and payable in addition to the regularly scheduled interest only or principal and interest payments.

9.      **Full Recourse Personal Liability.** Borrower shall have full recourse personal liability under this Note, the Mortgage and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under this Note, the Mortgage and all other Loan Documents.

10.      **Voluntary Prepayments.** Borrower may voluntarily prepay all or part of the unpaid principal balance of this Note at any time without payment of penalty or premium. Any prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments, unless Lender agrees otherwise in writing.

11.      **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay: (a) all expenses and costs, including Attorneys' Fees and Costs incurred by Lender or any Loan Servicer as a result of and default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents (whether or not any lawsuit or other proceeding is instituted), including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding; and (b) all expenses and costs, including Attorneys' Fees and Costs, incurred by Lender or any Loan Servicer in connection with the servicing of the Loan, including without limitation responding to requests from Borrower, and expenses and costs incurred in connection with potential defaults or other legal questions regarding the Loan.

12.      **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Mortgage, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

13.      **Waivers.** Borrower and all endorsers and guarantors of this Note and all other third party obligors waive presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness.

14.      **Loan Charges.** Neither this Note nor any of the other Loan Documents shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate greater than the Maximum Interest Rate. If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower in connection with the Loan is interpreted so that any interest or other charge provided for in any Loan Document, whether considered separately or together with other charges provided for in any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that interest or charge is hereby reduced to the extent necessary to eliminate that violation. The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the unpaid principal

balance of this Note.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness that constitutes interest, as well as all other charges made in connection with the Indebtedness that constitute interest, shall be deemed to be allocated and spread ratably over the stated term of this Note.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of this Note.

      **15.**      **Purpose of Indebtedness.**  Borrower represents and warrants to Lender that the proceeds of this Note will be used solely for business, commercial investment, or similar purposes, and that no portion of it will be used for agricultural, personal, family, or household purposes.

      **16.**      **Counting of Days.**  Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

      **17.**      **Governing Law.**  This Note shall be governed by the laws of the Property Jurisdiction.

      **18.**      **Construction.**  The captions and headings of the Sections of this Note are for convenience only and shall be disregarded in construing this Note.  Any reference in this Note to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Note or to a Section of this Note.  All Exhibits attached to or referred to in this Note are incorporated by reference in this Note.  Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.  Use of the singular in this Note includes the plural and use of the plural includes the singular.  As used in this Note, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation."  The use of one gender includes the other gender, as the context may require.  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Note shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Note or any other Loan Document), and (b) any reference in this Note to any Person shall be construed to include such Person's successors and assigns.

      **19.**      **Notices; Written Modifications.**

      (a)      All notices, demands and other communications required or permitted to be given pursuant to this Note shall be given in accordance with Section 31 of the Mortgage.

      (b)      Any modification or amendment to this Note shall be ineffective unless in writing signed by the party sought to be charged with such modification or amendment.

      **20.**      **Consent to Jurisdiction and Venue.**  Borrower agrees that any controversy arising under or in relation to this Note may be litigated in the Property Jurisdiction.  The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies that shall arise under or in relation to this Note.  Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.  However, nothing in this Note is intended to limit any right that Lender may have to bring any suit, action or proceeding relating to matters arising under this Note in any court of any other jurisdiction.

      **21.**      **Counterparts.**  This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

      **22.**      **Document Imaging.**  Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Note and the other Loan Documents, and Lender may destroy or archive the paper originals.  Borrower waives (i) any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Note or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

23.    WAIVER OF TRIAL BY JURY.  BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

IN WITNESS WHEREOF, and in consideration of Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal (where applicable) or has caused this Note to be signed and delivered by its duly authorized representative under seal (where applicable).  Where applicable law so provides or allows, Borrower intends that this Note shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

EVERGREEN PLAZA ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN I ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN II ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN III ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

# EXHIBIT C

| RECORDING INFORMATION SHEET | | 50 RANCOCAS RD, MT. HOLLY, NJ 08060 |
|---|---|---|

| INSTRUMENT NUMBER: | DOCUMENT TYPE: |
|---|---|
| **5374273** | **MORTGAGE** |

| Document Charge Type | MORTGAGE |
|---|---|

**Official Use Only**

Return Address *(for recorded documents)*
INGEO
1300 NORTH 200 EAST, SUITE 118
LOGAN UT 84321

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER
8484436
RECORDED ON
April 05, 2018 12:30 PM

INSTRUMENT NUMBER
5374273

**BOOK: OR13328**
**PAGE: 9222**

| No. Of Pages *(Excluding Recording Information and/or Summary Sheet)* | 28 |
|---|---|
| Consideration Amount | $6,500,000.00 |
| Recording Fee | $300.00 |
| Realty Transfer Fee | $0.00 |
| Total Amount Paid | $300.00 |

| Municipality | MOUNT HOLLY TWP |
|---|---|
| Parcel Information | Block: 117.02 Lot: 2 |
| First Party Name | EVERGREEN PLAZA ASSOC |
| Second Party Name | PENDER CAPITAL ASSET BASED LENDING FUND |

**Additional Information (Official Use Only)**





I HEREBY CERTIFY THIS
TO BE A TRUE COPY
*Joanne Schwartz*
JOANNE SCHWARTZ
COUNTY CLERK

Ctrl Id: 5616099 Recording Clerk: dcoco

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *DO NOT REMOVE THIS PAGE.* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**Burlington County Document Summary Sheet**

| | |
|---|---|
| BURLINGTON COUNTY CLERK<br><br>50 RANCOCAS RD<br>MOUNT HOLLY NJ 08060 1317 | **Transaction Identification Number**   3342803   2810139<br><br>**Recorded Document to be Returned by Submitter to:**<br>MAIN STREET TITLE AGENCY INC NJ<br>190 MAIN ST.<br>HACKENSACK, NJ 07601 |

| **Official Use Only** | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 03/29/2018 |
| | **No. of Pages** *(excluding Summary Sheet)* | 28 |
| | **Recording Fee** *(excluding transfer tax)* | $300.00 |
| | **Realty Transfer Tax** | $0.00 |
| | **Total Amount** | $300.00 |
| | **Document Type**   MORTGAGE | |
| | **Electronic Recordation Level**   L2 - Level 2 (With Images) | |
| | **Municipal Codes**<br>   LUMBERTON TWP   17 | |
| | **Bar Code(s)** | |

307687

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Burlington County Document Summary Sheet

| Type | MORTGAGE |
|---|---|
| Consideration | $6,500,000.00 |
| Submitted By | MAIN STREET TITLE AGENCY INC NJ (CSC/INGEO SYSTEMS INC) |
| Document Date | 03/18/2018 |

**MORTGAGE**

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | | | | |

**MORTGAGOR**

| Name | Address |
|---|---|
| EVERGREEN PLAZA ASSOCIATES | |
| EVERGREEN I ASSOCIATES | |
| EVERGREEN II ASSOCIATES | |
| EVERGREEN III ASSOCIATES | |

**MORTGAGEE**

| Name | Address |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I LP | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

***\* DO NOT REMOVE THIS PAGE.***
***COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.***
***RETAIN THIS PAGE FOR FUTURE REFERENCE.***

RECORD & RETURN TO:
MAIN STREET TITLE & SETTLEMENT SERVICES, LLC
190 MAIN STREET
HACKENSACK, NEW JERSEY 07601
MS- 93718

*PREPARED BY, AND AFTER RECORDING
RETURN TO:*

PENDER CAPITAL
11766 Wilshire Blvd
Suite 460
Los Angeles, CA 90025
Attn: Cory Johnson

Tax Parcel Number(s):  170002200000000402 and
170002200000000401

Space Above for Recorder's Use

## MORTGAGE,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### (NEW JERSEY)

**A.**     THIS MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT (this "Instrument") is dated as of March 14, 2018, and is given by **EVERGREEN PLAZA ASSOCIATES LLC**, a New Jersey limited liability company, **EVERGREEN I ASSOCIATES LLC**, a New Jersey limited liability company, **EVERGREEN II ASSOCIATES LLC**, a New Jersey limited liability company, and **EVERGREEN III ASSOCIATES LLC**, a New Jersey limited liability company, whose address is 477 Colonial Rd., Ridgewood, NJ 07450, collectively as mortgagor (jointly and severally referred to herein in the singular as "Borrower"), in favor of **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, a Delaware limited partnership, whose address is 11766 Wilshire Blvd, Suite 460, Los Angeles, CA 90025, Attn: Loan Servicing, as mortgagee ("Lender"). EVERGREEN PLAZA ASSOCIATES LLC's organizational identification number is 0400053759. EVERGREEN I ASSOCIATES LLC's organizational identification number is 0400053761. EVERGREEN II ASSOCIATES LLC's organizational identification number is 0400053765. EVERGREEN III ASSOCIATES LLC's organizational identification number is 0400053855.

**B.**     Borrower is indebted to Lender in the principal amount of SIX MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS (US $6,500,000.00), as evidenced by Borrower's Promissory Note payable to Lender, dated as of the date of this Instrument, and maturing on the earlier of (i) **April 1, 2019**, and (ii) the date on which the unpaid principal balance of the Note becomes due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document (the "Maturity Date"). The Maturity Date of the Note is subject to extension up to April 1, 2020, upon the terms and conditions set forth in the Note.

**C.**     TO SECURE TO LENDER the repayment of the Indebtedness, and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan Documents, Borrower mortgages, warrants, grants, conveys and assigns to Lender, the Mortgaged Property, including the Land located in Burlington County, State of New Jersey and described in Exhibit "A" attached to this Instrument.

New Jersey Mortgage

D.      Borrower represents and warrants that Borrower is lawfully seized of the Mortgaged Property and has the right, power and authority to mortgage, grant, convey and assign the Mortgaged Property, and that the Mortgaged Property is unencumbered except as shown on the Schedule of Title Exceptions. Borrower covenants that Borrower will warrant and defend generally the title to the Mortgaged Property against all claims and demands, subject to any easements and restrictions listed in the Schedule of Title Exceptions.

Covenants. In consideration of the mutual promises set forth in this Instrument, Borrower and Lender covenant and agree as follows:

1.      DEFINITIONS. The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:

(a)     "Assignment" means, collectively, the provisions of Sections 3 and 4 of this Instrument relating to the assignment of rents and leases affecting the Mortgaged Property.

(b)     "Attorneys' Fees and Costs" means (i) fees and out-of-pocket costs of Lender's and Loan Servicer's attorneys, as applicable (whether or not any lawsuit or other proceeding is instituted), including costs of Lender's and Loan Servicer's allocable costs of in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; and (iii) investigatory fees. As used in this Instrument and in the Note, "Attorneys' Fees and Costs" shall include those awarded by an appellate court.

(c)     "Bankruptcy Code" means the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq., as amended from time to time.

(d)     "Borrower" means, jointly and severally, all Persons identified as "Borrower" in paragraph A of this Instrument, together with their successors and assigns.

(e)     "Borrower Certificate" means that certain Borrower Certificate dated the same date as this Instrument, executed by Borrower in favor of Lender.

(f)      "Collateral Agreement" means any separate agreement between Borrower and Lender for the purpose of establishing replacement reserves for the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account.

(g)     "Controlling Entity" means an entity which owns, directly or indirectly through one or more intermediaries, (A) a general partnership interest or a Controlling Interest of the limited partnership interests in Borrower (if Borrower is a partnership or joint venture), (B) a manager's interest in Borrower or a Controlling Interest of the ownership or membership interests in Borrower (if Borrower is a limited liability company), or (C) a Controlling Interest of any class of voting stock of Borrower (if Borrower is a corporation).

(h)     "Controlling Interest" means (i) 51 percent or more of the ownership interests in an entity, or (ii) a percentage ownership interest in an entity of less than 51 percent, if the owner(s) of that interest actually direct(s) the business and affairs of the entity without the requirement of consent of any other party.

(i)      "Environmental Indemnity" means that certain Environmental Indemnity Agreement dated the same date as this Instrument, executed by Borrower, as Indemnitor, in favor of Lender, as Indemnitee.

(j)      "Environmental Permit" means any permit, license, or other authorization issued under any Hazardous Materials Law with respect to any activities or businesses conducted on or in relation to the Mortgaged Property.

(k)     "Event of Default" means the occurrence of any event listed in Section 22.

(l)      "Fixtures" means all property owned by Borrower which is so attached to the Land or the Improvements as to constitute a fixture under applicable law, including: machinery, equipment, engines, boilers, incinerators, installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring and conduits used in connection with radio, television, security, fire prevention, or fire detection or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers and other appliances; light fixtures, awnings, storm windows and storm doors; pictures, screens, blinds, shades, curtains

New Jersey Mortgage                                                                                              Page 2

and curtain rods; mirrors; cabinets, paneling, rugs and floor and wall coverings; fences, trees and plants; swimming pools; and exercise equipment.

(m)     "Governmental Authority" means any board, commission, department or body of any municipal, county, state or federal governmental unit, or any subdivision of any of them, that has or acquires jurisdiction over the Mortgaged Property or the use, operation or improvement of the Mortgaged Property or over Borrower.

(n)     "Guarantor" means each guarantor identified in that certain Guaranty dated the same date as this Instrument, as well as any other or future guarantor of all or any portion of the Indebtedness.

(o)     "Guaranty" means that certain Guaranty dated the same date as this Instrument, and each and every other guaranty executed by any Guarantor in favor of Lender.

(p)     "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Mortgaged Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Hazardous Materials Law.

(q)     "Hazardous Materials Laws" means all federal, state, and local laws, ordinances and regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future and including all amendments, that relate to Hazardous Materials or the protection of human health or the environment and apply to Borrower or to the Mortgaged Property. Hazardous Materials Laws include, but are not limited to, the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 *et seq.*, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, as amended by the Superfund Amendments Reauthorization Act of 1986, the Materials Transportation Act, 49 U.S.C. Section 1801 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Solid Waste Disposal Act, as amended, the Clean Air Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101, and their state analogs.

(r)     "Impositions" and "Imposition Deposits" are defined in Section 7(a).

(s)     "Improvements" means the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements and additions.

(t)     "Indebtedness" means the principal of, interest on, and all other amounts due at any time under, the Note, this Instrument or any other Loan Document, including late charges, default interest, and advances to protect the security of this Instrument under Section 12 of this Instrument or any other applicable provision of this Instrument or any other Loan Document or as permitted by law.

(u)     "Initial Owners" means, with respect to Borrower or any other entity, the Person(s) that (i) on the date of the Note, or (ii) on the date of a Transfer to which Lender has consented, own in the aggregate 100% of the ownership interests in Borrower or that entity.

(v)     "Land" means the land described in Exhibit "A".

(w)     "Leases" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Mortgaged Property, or any portion of the Mortgaged Property, and all modifications, extensions or renewals.

(x)     "Lender" means the Person or Persons identified as "Lender" in paragraph A of this Instrument, or any subsequent holder of the Note.

(y)     "Loan" means the loan evidenced by the Note and secured by this Instrument.

(z)     "Loan Documents" means the Note, this Instrument, the Assignment, the Borrower Certificate, the Environmental Indemnity, all guaranties, all indemnity agreements, all Collateral Agreements, O&M Plans, and any other documents now or in the future executed by Borrower, any Guarantor or any other Person in connection with the Loan, as such documents may be amended from time to time.

(aa)     "Loan Servicer" means the Person or Persons that from time to time is designated by Lender to collect payments and deposits and receive notices under the Note, this Instrument and any other Loan Document, and otherwise to

New Jersey Mortgage                                                                                  Page 3

service the Loan for the benefit of Lender. Unless otherwise specified in Section 2 of the Note, or unless Borrower receives notice to the contrary, the Loan Servicer means the Person or Persons identified as "Lender" in paragraph A of this Instrument.

(bb)    "**Mortgaged Property**" means all of Borrower's present and future right, title and interest in and to all of the following: (1) the Land; (2) the Improvements; (3) the Fixtures; (4) the Personalty; (5) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights-of-way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefiting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated; (6) all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, whether or not Borrower obtained the insurance pursuant to Lender's requirement; (7) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property, including any awards or settlements resulting from condemnation proceedings or the total or partial taking of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof; (8) all contracts, options and other agreements for the sale of the Land, the Improvements, the Fixtures, the Personalty or any other part of the Mortgaged Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations; (9) all proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; (10) all Rents and Leases; (11) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Mortgaged Property, and all undisbursed proceeds of the Loan; (12) all funds on deposit pursuant to any separate agreement between Borrower and Lender (including, without limitation, all Imposition Deposits) for the purpose of establishing replacement reserves for the Mortgaged Property, to fund any water and sewer charges, premiums for fire or other hazard insurance, rent loss insurance or other insurance required by Lender, taxes, assessments, vault rentals, or other charges or expenses required by Lender to protect the Mortgaged Property, establishing a fund to assure the completion of repairs or improvements specified in that agreement, or assuring reduction of the outstanding principal balance of the Indebtedness if the occupancy of or income from the Mortgaged Property does not increase to a level specified in that agreement, or any other agreement or agreements between Borrower and Lender which provide for the establishment of any other fund, reserve or account; (13) all refunds or rebates of Impositions by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Instrument is dated); (14) all tenant security deposits which have not been forfeited by any tenant under any Lease and any bond or other security in lieu of such deposits; and (15) all names under or by which any of the above Mortgaged Property may be operated or known, and all trademarks, trade names, and goodwill relating to any of the Mortgaged Property.

(cc)    "**Mortgaged Property UCC Collateral**" means any of the Mortgaged Property which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code, whether such Mortgaged Property is owned now or acquired in the future, and all products and cash and non-cash proceeds thereof.

(dd)    "**Note**" means the Promissory Note described in paragraph B of this Instrument, including all schedules, riders, allonges and addenda, as such Promissory Note may be amended from time to time.

(ee)    "**O&M Plan**" shall have the meaning as defined in the Environmental Indemnity.

(ff)    "**Person**" means any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

(gg)    "**Personalty**" means all: (i) accounts (including deposit accounts); (ii) equipment and inventory owned by Borrower which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements, including furniture, furnishings, machinery, building materials, appliances, goods, supplies, tools, books, records (whether in written or electronic form), computer equipment (hardware and software); (iii) other tangible personal property (other than Fixtures) which are used now or in the future in connection with the ownership, management or operation of the Land or the Improvements or are located on the Land or in the Improvements; (iv) any operating agreements relating to the Land or the Improvements; (v) any surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements; (vi) all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental

New Jersey Mortgage                                                                                                                                Page 4

permits relating to any activities on the Land or the Improvements and including subsidy or similar payments received from any sources, including a Governmental Authority; and (vii) any rights of Borrower in or under letters of credit.

(hh)    "**Property Insurance**" is defined in Section 19.

(ii)    "**Property Jurisdiction**" is defined in Section 30(a).

(jj)    "**Rents**" means all rents, revenues and other income of the Land or the Improvements, including parking fees, laundry and vending machine income and fees and charges for other services provided at the Mortgaged Property, whether now due, past due, or to become due, and deposits forfeited by tenants.

(kk)    "**Schedule of Title Exceptions**" means title exceptions approved by Lender and shown in the schedule of exceptions to coverage in the title policy issued to Lender contemporaneously with the recordation of this Instrument and insuring Lender's interest in the Mortgaged Property.

(ll)    "**Taxes**" means all taxes, assessments, vault rentals and other charges, if any, general, special or otherwise, including all assessments for schools, public betterments and general or local improvements, which are levied, assessed or imposed by any public authority or quasi-public authority, and which, if not paid, will become a lien, on the Land or the Improvements.

(mm)    "**Transfer**" is defined in Section 21.

2.    **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.**

(a)    This Instrument is also a security agreement under the Uniform Commercial Code for the Mortgaged Property UCC Collateral, and Borrower, as debtor, hereby grants to Lender, as secured party, a security interest in the Mortgaged Property UCC Collateral. Borrower hereby authorizes Lender to prepare and file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest and Borrower agrees, if Lender so requests, to execute and deliver to Lender such financing statements, continuation statements and amendments. Without limiting the generality of the foregoing, Borrower authorizes Lender to file any financing statement that describes the collateral as "all assets" of Borrower, or words to similar effect. Borrower shall pay all filing costs and all costs and expenses of any record searches for financing statements and/or amendments that Lender may require. Without the prior written consent of Lender, Borrower shall not create or permit to exist any other lien or security interest in any of the Mortgaged Property UCC Collateral. Unless Borrower gives notice to Lender within 30 days after the occurrence of any of the following, and executes and delivers to Lender modifications or supplements of this Instrument (and any financing statement which may be filed in connection with this Instrument) as Lender may require, Borrower shall not (i) change its name, identity, structure or jurisdiction of organization; (ii) change the location of its place of business (or chief executive office if more than one place of business); or (iii) add to or change any location at which any of the Mortgaged Property UCC Collateral is stored, held or located. If an Event of Default has occurred and is continuing, Lender shall have the remedies of a secured party under the Uniform Commercial Code, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Lender may exercise its remedies against the Mortgaged Property UCC Collateral separately or together, and in any order, without in any way affecting the availability of Lender's other remedies. This Instrument constitutes a financing statement with respect to any part of the Mortgaged Property that is or may become a Fixture, if permitted by applicable law.

3.    **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.**

(a)    As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Promptly upon request by Lender, Borrower agrees to execute and deliver such further assignments as Lender may from time to time require. Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1. However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)    After the occurrence of an Event of Default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, Lender. However, until the occurrence of an Event of Default, Lender hereby grants to Borrower a revocable license to collect and receive all Rents, to hold

all Rents in trust for the benefit of Lender and to apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities, Taxes and insurance premiums (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Instrument. From and after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents shall automatically terminate and Lender shall without notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower shall pay to Lender upon demand all Rents to which Lender is entitled. At any time on or after the date of Lender's demand for Rents, Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Mortgaged Property instructing them to pay all Rents to Lender, no tenant shall be obligated to inquire further as to the occurrence or continuance of an Event of Default, and no tenant shall be obligated to pay to Borrower any amounts which are actually paid to Lender in response to such a notice. Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents.

(c)      Borrower represents and warrants to Lender that Borrower has not executed any prior assignment of Rents (other than an assignment of Rents securing indebtedness that will be paid off and discharged with the proceeds of the Loan), that Borrower has not performed, and Borrower covenants and agrees that it will not perform, any acts and has not executed, and shall not execute, any instrument which would prevent Lender from exercising its rights under this Section 3, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any Rents for more than one (1) month prior to the due dates of such Rents. Borrower shall not collect or accept payment of any Rents more than one (1) month prior to the due dates of such Rents.

(d)      If an Event of Default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. Lender or the receiver, as the case may be, shall be entitled to receive a reasonable fee for managing the Mortgaged Property. Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower shall surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and shall deliver to Lender or the receiver, as the case may be, all documents, records (including computer files and other records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents. In the event Lender takes possession and control of the Mortgaged Property, Lender may exclude Borrower and its representatives from the Mortgaged Property. Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 3 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

(e)      If Lender enters the Mortgaged Property, Lender shall be liable to account only to Borrower and only for those Rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Mortgaged Property, by reason of any act or omission of Lender under this Section 3, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

New Jersey Mortgage                                                                                            Page 6

(f)      If the Rents are not sufficient to meet the costs of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an additional part of the Indebtedness as provided in Section 12.

(g)      Any entering upon and taking of control of the Mortgaged Property by Lender or the receiver, as the case may be, and any application of Rents as provided in this Instrument shall not cure or waive any Event of Default or invalidate any other right or remedy of Lender under applicable law or provided for in this Instrument.

4.      **ASSIGNMENT OF LEASES; LEASES AFFECTING THE MORTGAGED PROPERTY.**

(a)      As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all of Borrower's right, title and interest in, to and under the Leases, including Borrower's right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.  It is the intention of Borrower to establish a present, absolute and irrevocable transfer and assignment to Lender of all of Borrower's right, title and interest in, to and under the Leases.  Borrower and Lender intend this assignment of the Leases to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.  For purposes of giving effect to this absolute assignment of the Leases, and for no other purpose, the Leases shall not be deemed to be a part of the "Mortgaged Property" as that term is defined in Section 1.  However, if this present, absolute and unconditional assignment of the Leases is not enforceable by its terms under the laws of the Property Jurisdiction, then the Leases shall be included as a part of the Mortgaged Property and it is the intention of Borrower that in this circumstance this Instrument create and perfect a lien on the Leases in favor of Lender, which lien shall be effective as of the date of this Instrument.

(b)      Until Lender gives notice to Borrower of Lender's exercise of its rights under this Section 4, Borrower shall have all rights, power and authority granted to Borrower under any Lease (except as otherwise limited by this Section 4 or any other provision of this Instrument), including the right, power and authority to modify the terms of any Lease or extend any Lease. In no event, however, shall Borrower have the right to terminate any lease or to modify the terms of any lease so as to decrease the rent or shorten the term of the lease without the prior written consent of Lender.  Any purported termination or modification of any lease without Lender's prior written consent in violation of the preceding sentence shall constitute an Event of Default and shall be void and of no force or effect.  Upon the occurrence of an Event of Default, the permission given to Borrower pursuant to the first sentence of this Section 4(b) to exercise rights, power and authority under Leases shall automatically terminate. Borrower shall comply with and observe Borrower's obligations under all Leases, including Borrower's obligations pertaining to the maintenance and disposition of tenant security deposits.

(c)      Borrower acknowledges and agrees that the exercise by Lender, either directly or by a receiver, of any of the rights conferred under this Section 4 shall not be construed to make Lender a mortgagee-in-possession of the Mortgaged Property so long as Lender has not itself entered into actual possession of the Land and the Improvements.  The acceptance by Lender of the assignment of the Leases pursuant to Section 4(a) shall not at any time or in any event obligate Lender to take any action under this Instrument or to expend any money or to incur any expenses.  Lender shall not be liable in any way for any injury or damage to person or property sustained by any Person in or about the Mortgaged Property.  Prior to Lender's actual entry into and taking possession of the Mortgaged Property, Lender shall not (i) be obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease); (ii) be obligated to appear in or defend any action or proceeding relating to the Lease or the Mortgaged Property; or (iii) be responsible for the operation, control, care, management or repair of the Mortgaged Property or any portion of the Mortgaged Property.  The execution of this Instrument by Borrower shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Mortgaged Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

(d)      Upon delivery of notice by Lender to Borrower of Lender's exercise of Lender's rights under this Section 4 at any time after the occurrence of an Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, Lender immediately shall have all rights, powers and authority granted to Borrower under any Lease, including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.

(e)      Borrower shall, promptly upon Lender's request, deliver to Lender an executed copy of each Lease then in effect.

(f)      Borrower further covenants with Lender that (i) all Leases shall be written on a standard form of lease that has been or will be approved in writing in advance by Lender; (ii) upon request, Borrower shall furnish Lender with executed copies of all Leases and all amendments thereto; (iii) no material changes may be made to the Lender-approved standard lease

New Jersey Mortgage                                                                                                     Page 7

without the prior written consent of Lender; (iv) all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates and shall be arm's-length transactions; (v) all Leases shall provide that (A) they are subordinate to this Instrument and any other indebtedness now or hereafter secured by the Mortgaged Property, (B) lessees agree to attorn to Lender (such attornment to be effective upon Lender's acquisition of title to the Mortgaged Property), (C) lessees agree to execute such further evidences of attornment as Lender may from time to time request, (D) the attornment of lessees shall not be terminated by foreclosure, (E) Lender may, at Lender's option, accept or reject such attornment, and (F) lessees agree to execute and acknowledge a subordination, attornment and non-disturbance agreement in form and content acceptable to Lender, and, two times in any calendar year, as Lender may request, a certificate signed by lessee confirming and containing such factual certifications and representations deemed appropriate by Lender; (vi) Borrower shall not grant any purchase options without the prior written approval of Lender; and (vii) all new Leases shall be subject to the prior written approval of Lender.

(g)     Borrower shall not receive or accept Rent under any Lease for more than one (1) month in advance.

5.     **PAYMENT OF INDEBTEDNESS; PERFORMANCE UNDER LOAN DOCUMENTS.**  Borrower shall pay the Indebtedness when due in accordance with the terms of the Note and the other Loan Documents and shall perform, observe and comply with all other provisions of the Note and the other Loan Documents.

6.     **FULL RECOURSE PERSONAL LIABILITY.**  Borrower shall have full recourse personal liability under the Note, this Instrument and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Note, this Instrument and all other Loan Documents.

7.     **DEPOSITS FOR TAXES, INSURANCE AND OTHER CHARGES.**

(a)     Unless this requirement is waived in writing by Lender, or as otherwise provided in this Section, Borrower shall deposit with Lender on the day monthly installments of principal or interest, or both, are due under the Note (or on another day designated in writing by Lender), until the Indebtedness is paid in full, an additional amount estimated by Lender to be sufficient to accumulate with Lender the entire sum required to pay, when due, the items marked "COLLECT" below, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate.  Lender will not initially require Borrower to make Imposition Deposits with respect to any items marked "DEFERRED" or "NOT APPLICABLE" below.

| | |
|---|---|
| [COLLECT] | Property insurance premiums or other insurance premiums required by Lender under Section 19 |
| [COLLECT] | Taxes |
| [DEFERRED] | water and sewer charges (that could become a lien on the Mortgaged Property) |
| [DEFERRED] | assessments or other charges (that could become a lien on the Mortgaged Property) |

The amounts deposited under the preceding sentence are collectively referred to in this Instrument as the "**Imposition Deposits**".  The obligations of Borrower for which the Imposition Deposits are required are collectively referred to in this Instrument as "**Impositions**".  The amount of the Imposition Deposits shall be sufficient to enable Lender to pay each Imposition before the last date upon which such payment may be made without any penalty or interest charge being added.  Lender shall maintain records indicating how much of the monthly Imposition Deposits and how much of the aggregate Imposition Deposits held by Lender are held for the purpose of paying Taxes, insurance premiums and each other Imposition.

(b)     Imposition Deposits shall be held by Lender or in a bank, credit union or other financial institution designated by Lender.  Lender shall apply the Imposition Deposits to pay Impositions so long as no Event of Default has occurred and is continuing.  Unless applicable law requires, Lender shall not be required to pay Borrower any interest, earnings or profits on the Imposition Deposits.  As additional security for all of Borrower's obligations under this Instrument and the other Loan Documents, Borrower hereby pledges and grants to Lender a security interest in the Imposition Deposits and all proceeds of, and all interest and dividends on, the Imposition Deposits.  Any amounts deposited with Lender under this Section 7 shall not be trust funds, nor shall they operate to reduce the Indebtedness, unless applied by Lender for that purpose under Section 7(e).

(c)     If Lender receives a bill or invoice for an Imposition, Lender shall pay the Imposition from the Imposition Deposits held by Lender.  Lender shall have no obligation to pay any Imposition to the extent it exceeds Imposition Deposits then held by Lender.  Lender may pay an Imposition according to any bill, statement or estimate from the appropriate public office or insurance company without inquiring into the accuracy of the bill, statement or estimate or into the validity of the Imposition.

(d)     If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition exceeds the amount reasonably deemed necessary by Lender, plus at Lender's discretion, a contingency reserve of up to one-

New Jersey Mortgage                                                                                              Page 8

sixth of such estimate, the excess shall be credited against future installments of Imposition Deposits. If at any time the amount of the Imposition Deposits held by Lender for payment of a specific Imposition is less than the amount reasonably estimated by Lender to be necessary, plus, at Lender's discretion, a contingency reserve of up to one-sixth of such estimate, Borrower shall pay to Lender the amount of the deficiency within 15 days after notice from Lender.

(e)      If an Event of Default has occurred and is continuing, Lender may apply any Imposition Deposits, in any amounts and in any order as Lender determines, in Lender's discretion, to pay any Impositions or as a credit against the Indebtedness. Upon payment in full of the Indebtedness, Lender shall refund to Borrower any Imposition Deposits held by Lender.

(f)      If Lender does not collect an Imposition Deposit with respect to an Imposition either marked "DEFERRED" in Section 7(a) or pursuant to a separate written waiver by Lender, then at least thirty (30) days before the date each such Imposition is due, or on the date this Instrument requires each such Imposition to be paid, Borrower must provide Lender with proof of payment of each such Imposition for which Lender does not require collection of Imposition Deposits. Lender may revoke its deferral or waiver and require Borrower to deposit with Lender any or all of the Imposition Deposits listed in Section 7(a), regardless of whether any such item is marked "DEFERRED" in such section, upon notice to Borrower, (i) if Borrower does not timely pay any of the Impositions as required by this Instrument, (ii) if Borrower fails to provide timely proof to Lender of such payment as required by this Instrument, or (iii) at any time from and after the occurrence of an Event of Default or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

(g)      In the event of a Transfer prohibited by or requiring Lender's approval under Section 21, Lender's waiver or deferral of the collection of any Imposition Deposit in this Section 7 may be modified or rendered void by Lender at Lender's sole option and discretion by notice to Borrower and the transferee(s) as a condition of Lender's approval of such Transfer.

8.      **COLLATERAL AGREEMENTS.** Borrower shall deposit with Lender such amounts as may be required by any Collateral Agreement and shall perform all other obligations of Borrower under each Collateral Agreement.

9.      **APPLICATION OF PAYMENTS.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender may apply that payment to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under this Instrument and the Note shall remain unchanged.

10.      **COMPLIANCE WITH LAWS AND ORGANIZATIONAL DOCUMENTS.**

(a)      Borrower shall comply with all laws, ordinances, regulations and requirements of any Governmental Authority and all recorded lawful covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, fair housing, zoning and land use, and Leases. Borrower also shall comply with all applicable laws that pertain to the maintenance and disposition of tenant security deposits.

(b)      Borrower shall at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 10.

(c)      Borrower shall take appropriate measures to prevent, and shall not engage in or knowingly permit, any illegal activities at the Mortgaged Property that could endanger tenants or visitors, result in damage to the Mortgaged Property, result in forfeiture of the Mortgaged Property, or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property. Borrower represents and warrants to Lender that no portion of the Mortgaged Property has been or will be purchased with the proceeds of any illegal activity.

(d)      Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the Property Jurisdiction.

(e)      If Borrower is not a natural person: (A) Borrower, and any Sub-Entity, shall maintain its existence as long as any portion of the Indebtedness remains unpaid; and (B) Borrower shall give written notice to Lender within ten (10) days after any dissolution or event triggering dissolution of Borrower or any Sub-Entity (which shall constitute an Event of Default under clause (A) of this sentence). As used in this Section 10, "Sub-Entity" shall include any managing or controlling entities, including any of the following that is not a natural person: (i) any manager or member of a limited liability company and any Sub-Entity thereof, (ii) any general partner of a general or limited partnership or limited liability partnership and any Sub-Entity thereof. To the extent not in conflict with the provisions of this Instrument and the other Loan Documents, Borrower shall at all times comply

New Jersey Mortgage                                                                                    Page 9

with its organizational documents, including but not limited to its partnership agreement (if Borrower is a partnership), its by-laws (if Borrower is a corporation or housing cooperative corporation or association) or its operating agreement (if Borrower is a limited liability company, joint venture or tenancy-in-common). If Borrower is not a natural person, then: (A) Borrower shall at all times comply with all laws, regulations and requirements of any Governmental Authority relating to Borrower's formation, continued existence and good standing in the state or commonwealth of Borrower's formation; (B) if the state or commonwealth of Borrower's formation is not the Property Jurisdiction, Borrower shall register or qualify as a foreign entity in the Property Jurisdiction and maintain such registration or qualification in good standing; (C) Borrower shall promptly provide Lender with copies of any amendments or supplements to Borrower's and any Sub-Entity's organizational documents; and (D) within ten (10) days after request by Lender, Borrower shall furnish evidence satisfactory to Lender that Borrower and any Sub-Entity is/are in good standing in its/their state(s) or commonwealth(s) of organization, and, if different, the Property Jurisdiction.

11.     USE OF PROPERTY.  Unless required by applicable law, Borrower shall not (a) except for any change in use approved by Lender, allow changes in the use for which all or any part of the Mortgaged Property was being used at the time this Instrument was executed, (b) convert, in whole or in part, any non-residential income producing units to non-income producing units, (c) initiate or acquiesce in a change in the zoning classification of the Mortgaged Property, or (d) establish any condominium or cooperative regime with respect to the Mortgaged Property.  Borrower acknowledges that Lender has not agreed to grant any partial releases or reconveyances of any portion of the Mortgaged Property, and that the release and reconveyance of the lien of this Instrument shall only be granted by Lender upon full repayment of the Indebtedness.

12.     PROTECTION OF LENDER'S SECURITY.

(a)     If Borrower fails to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws, fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such actions as Lender reasonably deems necessary to perform such obligations of Borrower and to protect Lender's interest, including (1) payment of fees and out of pocket expenses of attorneys, accountants, inspectors and consultants, (2) entry upon the Mortgaged Property to make repairs or secure the Mortgaged Property, (3) procurement of the insurance required by Section 19, (4) payment of amounts which Borrower has failed to pay under Sections 15 and 17, and (5) advances made by Lender to pay, satisfy or discharge any obligation of Borrower for the payment of money that is secured by a pre-existing mortgage, deed of trust or other lien encumbering the Mortgaged Property (a "Prior Lien").

(b)     Any amounts disbursed by Lender under this Section 12, or under any other provision of this Instrument that treats such disbursement as being made under this Section 12, shall be added to, and become part of, the principal component of the Indebtedness, shall be immediately due and payable and shall bear interest from the date of disbursement until paid at the "Default Rate", as defined in the Note.

(c)     Nothing in this Section 12 shall require Lender to incur any expense or take any action.

13.     INSPECTION.  Lender, its agents, representatives, and designees may make or cause to be made entries upon and inspections of the Mortgaged Property (including environmental inspections and tests) during normal business hours, or at any other reasonable time.  Borrower shall within five (5) days after written request by Lender provide the name, phone number, address and email address of a contact person for Borrower or for a property management company managing the Mortgaged Property to arrange such inspection.  Such contact person shall meet Lender's inspector(s) at the Mortgaged Property at the time specified by Lender and shall provide Lender's inspector(s) with access to all areas of the Mortgaged Property as Lender's inspector's may require to complete such inspection.  At any time when an Event of Default has occurred and is continuing, the cost of such inspections shall be paid by Borrower upon written demand by Lender and if not paid within thirty (30) days after such written demand, and, until paid, shall be added to and constitute a part of the Indebtedness as provided in Section 12.

14.     BOOKS AND RECORDS; FINANCIAL REPORTING.

(a)     Borrower shall keep and maintain at all times at the Mortgaged Property or the management agent's offices, and upon Lender's request shall make available at the Mortgaged Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Mortgaged Property, and copies of all written contracts, Leases, and other instruments which affect the Mortgaged Property.  The books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)     Borrower and Guarantor shall furnish to Lender all of the following:

New Jersey Mortgage                                                                                     Page 10

(1)     within one hundred twenty (120) days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower's operation of the Mortgaged Property for that fiscal year, a statement of changes in financial position of Borrower relating to the Mortgaged Property for that fiscal year and, when requested by Lender, a balance sheet showing all assets and liabilities of Borrower relating to the Mortgaged Property as of the end of that fiscal year;

(2)     within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a rent schedule for the Mortgaged Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(3)     within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(4)     within one hundred twenty (120) days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and any Controlling Entity and the interest held by each, if Borrower or a Controlling Entity is a corporation, all officers and directors of Borrower and the Controlling Entity, and if Borrower or a Controlling Entity is a limited liability company, all managers who are not members;

(5)     upon Lender's request, quarterly income and expense statements for the Mortgaged Property;

(6)     upon Lender's request at any time when an Event of Default has occurred and is continuing, monthly income and expense statements for the Mortgaged Property;

(7)     within ten (10) days after Lender's request, a current monthly property management report for the Mortgaged Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender;

(8)     within ten (10) days after Lender's request, a balance sheet, a statement of income and expenses for Borrower and each Guarantor and a statement of changes in financial position of Borrower and each Guarantor for Borrower's or such Guarantor's most recent fiscal year; and

(9)     within thirty (30) days after filing, copies of all federal and state income tax returns filed by Borrower and any Guarantor (or, if Borrower or any Guarantor is a "disregarded entity" for federal tax purposes, the federal and state returns filed by the owner of Borrower or such Guarantor).

(c)     Each of the statements, schedules, documents, items and reports required by Section 14(b) shall be certified to be complete and accurate by each individual Borrower, an individual (or individuals) having authority to bind each entity Borrower and (for guarantor information and documents) each Guarantor, and shall be in such form and contain such detail as Lender may reasonably require. Lender may, at Lender's discretion, require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)     In the event Borrower or any Guarantor fails to deliver such statements, schedules, documents, items and reports within the time frames provided in Section 14(b) above, then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Borrower shall pay a late charge equal to two percent (2%) of the monthly payment amount for each late submission of financial reports to compensate Lender or its servicer for the additional administrative expense caused by such failure or delay whether or not Borrower is entitled to any notice and opportunity to cure such failure prior to the exercise of any of the remedies. Such late charge shall be charged each month that any financial statements remain delinquent. The late charge shall be immediately payable from Borrower upon demand by Lender and, until paid, shall be added to and constitute a part of the Indebtedness as provided in Section 12. In no event shall the financial statement late charge constitute a cure of Borrower's or any Guarantor's default in failing to provide financial statements, nor limit Lender's remedies as a result of such default. In addition to such financial statement late charge and any other remedies which may be available to Lender as a result of such Event of Default, Lender shall have the right: (1) to increase the interest rate under the Note to the Default Rate provided for in the Note as long as such

New Jersey Mortgage                                                                                           Page 11

financial statements remain delinquent, and (2) to have Borrower's or any Guarantor's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness as provided in Section 12.

    (e)    If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Mortgaged Property or its operation.

    (f)    Borrower authorizes Lender to obtain a credit report on Borrower at any time.

**15.**    **TAXES; OPERATING EXPENSES.**

    (a)    Subject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment.

    (b)    Subject to the provisions of Section 15(c), Borrower shall pay the expenses of operating, managing, maintaining and repairing the Mortgaged Property (including insurance premiums, utilities, repairs and replacements) before the last date upon which each such payment may be made without any penalty or interest charge being added.

    (c)    As long as no Event of Default exists and Borrower has timely delivered to Lender any bills or premium notices that it has received, Borrower shall not be obligated to pay Taxes, insurance premiums or any other individual Imposition to the extent that sufficient Imposition Deposits are held by Lender for the purpose of paying that specific Imposition. If an Event of Default exists, Lender may exercise any rights Lender may have with respect to Imposition Deposits without regard to whether Impositions are then due and payable. Lender shall have no liability to Borrower for failing to pay any Impositions to the extent that any Event of Default has occurred and is continuing, insufficient Imposition Deposits are held by Lender at the time an Imposition becomes due and payable or Borrower has failed to provide Lender with bills and premium notices as provided above.

    (d)    Borrower, at its own expense, may contest by appropriate legal proceedings, conducted diligently and in good faith, the amount or validity of any Imposition other than insurance premiums, if (1) Borrower notifies Lender of the commencement or expected commencement of such proceedings, (2) the Mortgaged Property is not in danger of being sold or forfeited, (3) Borrower deposits with Lender reserves sufficient to pay the contested Imposition, if requested by Lender, and (4) Borrower furnishes whatever additional security is required in the proceedings or is reasonably requested by Lender, which may include the delivery to Lender of the reserves established by Borrower to pay the contested Imposition.

    (e)    Borrower shall promptly deliver to Lender a copy of all notices of, and invoices for, Impositions, and if Borrower pays any Imposition directly, Borrower shall promptly furnish to Lender receipts evidencing such payments in accordance with Section 7(f).

**16.**    **LIENS; ENCUMBRANCES.** Borrower acknowledges that the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument and the liens and encumbrances reflected on the Schedule of Title Exceptions) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default under Section 21 of this Instrument.

**17.**    **PRESERVATION, MANAGEMENT AND MAINTENANCE OF MORTGAGED PROPERTY.** Borrower (a) shall not commit waste or permit impairment or deterioration of the Mortgaged Property, (b) shall not abandon the Mortgaged Property, (c) shall restore or repair promptly, in a good and workmanlike manner, any damaged part of the Mortgaged Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, whether or not insurance proceeds or condemnation awards are available to cover any costs of such restoration or repair, (d) shall keep the Mortgaged Property in good repair, including the replacement of Personalty and Fixtures with items of equal or better function and quality, (e) shall provide for professional management of the Mortgaged Property by a property manager satisfactory to Lender under a contract approved by Lender in writing, and (f) shall give notice to Lender of and, unless otherwise directed in writing by Lender, shall appear in and defend any action or proceeding purporting to affect the Mortgaged Property, Lender's security or Lender's rights under this Instrument. Borrower shall not (and shall not permit any tenant or other Person to) remove, demolish or alter the Mortgaged Property or any part of the Mortgaged Property except in connection with the replacement of tangible Personalty.

**18.**    **ENVIRONMENTAL HAZARDS.** Borrower shall comply with all covenants, conditions, provisions and obligations of Borrower (as Indemnitor) under the Environmental Indemnity.

**19.**    **PROPERTY AND LIABILITY INSURANCE.**

    (a)    Borrower shall keep the Improvements insured at all times against such hazards as Lender may from time to time require, which insurance shall include but not be limited to coverage against loss by fire, windstorm and allied perils, general boiler and machinery coverage, and business income coverage. Lender's insurance requirements may change from time to time

New Jersey Mortgage                                                   Page 12

throughout the term of the Indebtedness. If Lender so requires, such insurance shall also include sinkhole insurance, mine subsidence insurance, earthquake insurance, and, if the Mortgaged Property does not conform to applicable zoning or land use laws, building ordinance or law coverage. In the event any updated reports or other documentation are reasonably required by Lender in order to determine whether such additional insurance is necessary or prudent, Borrower shall pay for all such documentation at its sole cost and expense. If any of the Improvements is located in an area that is either (i) identified by the Federal Emergency Management Agency (or any successor to that agency) ("FEMA") as an area having special flood hazards or (ii) designated by FEMA as Zone D, and if flood insurance is available in that area, Borrower shall insure such improvements against loss by flood. If Lender so requires, such insurance shall also include business income/rental value insurance for all relevant perils to be covered in the amount required by Lender, but in no case less than the effective gross income attributable to the Mortgaged Property for the preceding 12 months, as determined by Lender in Lender's discretion. All insurance required pursuant to this Section 19(a) shall be referred to as "**Property Insurance**". All policies of Property Insurance must include a non-contributing, non-reporting mortgagee clause in favor of, and in a form approved by, Lender, and shall provide that the insurer will notify Lender in writing of cancelation of policies at least 10 days before the cancelation of the policy by the insurer for nonpayment of the premium or nonrenewal and at least 30 days before cancelation by the insurer for any other reason.

(b)    All premiums on insurance policies required under this Section 19 shall be paid in the manner provided in Section 7, unless Lender has designated in writing another method of payment. All such policies shall also be in a form approved by Lender. Borrower shall deliver to Lender a legible copy of each insurance policy (or duplicate original) and Borrower shall promptly deliver to Lender a copy of all renewal and other notices received by Borrower with respect to the policies and all receipts for paid premiums. At least 30 days prior to the expiration date of a policy, Borrower shall deliver to Lender a legible copy of each renewal policy (or a duplicate original) in a form satisfactory to Lender.

(c)    Borrower shall maintain at all times commercial general liability insurance, workers' compensation insurance and such other liability, errors and omissions and fidelity insurance coverages as Lender may from time to time require. All policies for general liability insurance must contain a standard additional insured provision, in favor of, and in a form approved by, Lender.

(d)    All insurance policies and renewals of insurance policies required by this Section 19 shall be in such amounts and for such periods as Lender may from time to time require, shall be in such form and contain such endorsements as Lender may from time to time require, and shall be issued by insurance companies satisfactory to Lender.

(e)    Borrower shall comply with all insurance requirements and shall not permit any condition to exist on the Mortgaged Property that would invalidate any part of any insurance coverage that this Instrument requires Borrower to maintain.

(f)    In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 19 shall require Lender to incur any expense or take any action. Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Mortgaged Property to the equivalent of its original condition or to a condition approved by Lender (the "**Restoration**"), or (2) apply the balance of such proceeds to the payment of the Indebtedness, whether or not then due. To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

(g)    Lender shall not exercise its option to apply insurance proceeds to the payment of the Indebtedness if all of the following conditions are met: (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that Borrower has sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the rental income from the Mortgaged Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, Imposition Deposits, deposits to reserves and loan repayment obligations relating to the Mortgaged Property; and (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty.

(h)    If the Mortgaged Property is sold at a foreclosure sale or Lender acquires title to the Mortgaged Property, Lender shall automatically succeed to all rights of Borrower in and to any insurance policies and unearned insurance premiums and in and to the proceeds resulting from any damage to the Mortgaged Property prior to such sale or acquisition.

New Jersey Mortgage                                                                                            Page 13

**20.    CONDEMNATION.**

(a)    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a **"Condemnation"**). Borrower shall appear in and prosecute or defend any action or proceeding relating to any Condemnation unless otherwise directed by Lender in writing. Borrower authorizes and appoints Lender as attorney in fact for Borrower to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with any Condemnation. This power of attorney is coupled with an interest and therefore is irrevocable. However, nothing contained in this Section 20 shall require Lender to incur any expense or take any action. Borrower hereby transfers and assigns to Lender all right, title and interest of Borrower in and to any award or payment with respect to (i) any Condemnation, or any conveyance in lieu of Condemnation, and (ii) any damage to the Mortgaged Property caused by governmental action that does not result in a Condemnation.

(b)    Lender may apply such awards or proceeds, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to the restoration or repair of the Mortgaged Property or to the payment of the Indebtedness, with the balance, if any, to Borrower. Unless Lender otherwise agrees in writing, any application of any awards or proceeds to the Indebtedness shall not extend or postpone the due date of any monthly installments referred to in the Note, Section 7 of this Instrument or any Collateral Agreement, or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards or proceeds as Lender may require.

**21.    TRANSFERS OF THE MORTGAGED PROPERTY OR INTERESTS IN BORROWER [NO RIGHT TO TRANSFER].**

(a)    "Transfer" means (A) a sale, assignment, transfer or other disposition (whether voluntary, involuntary or by operation of law); (B) the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law); (C) the issuance or other creation of an ownership interest in a legal entity, including a partnership interest, interest in a limited liability company or corporate stock; (D) the withdrawal, retirement, removal or involuntary resignation of a partner in a partnership or a member or manager in a limited liability company; or (E) the merger, dissolution, liquidation, or consolidation of a legal entity or the reconstitution of one type of legal entity into another type of legal entity. For purposes of defining the term "Transfer," the term "partnership" shall mean a general partnership, a limited partnership, a joint venture and a limited liability partnership, and the term "partner" shall mean a general partner, a limited partner and a joint venturer.

(b)    "Transfer" does not include: (i) a conveyance of the Mortgaged Property at a judicial or non-judicial foreclosure sale under this Instrument, (ii) the Mortgaged Property becoming part of a bankruptcy estate by operation of law under the Bankruptcy Code, or (iii) a lien against the Mortgaged Property for local taxes and/or assessments not then due and payable.

(c)    The occurrence of any of the following events shall not constitute an Event of Default under this Instrument, notwithstanding any provision of this Section 21 to the contrary:

(i)     a Transfer to which Lender has consented;

(ii)    a Transfer that occurs by devise, descent, or by operation of law upon the death of a natural person (unless such death itself is an Event of Default under Section 22(o) of this Instrument);

(iii)   the grant of a leasehold interest in accordance with the terms of this Instrument or otherwise approved in writing by Lender;

(iv)    a Transfer of obsolete or worn out Personalty or Fixtures that are contemporaneously replaced by items of equal or better function and quality, which are free of liens, encumbrances and security interests other than those created by the Loan Documents or consented to by Lender; and

(v)     the creation of a mechanic's, materialman's, or judgment lien against the Mortgaged Property which is released of record or otherwise remedied to Lender's satisfaction within 60 days of the date of creation.

(d)    The occurrence of any of the following Transfers shall not constitute an Event of Default under this Instrument, provided that Borrower has notified Lender in writing within 30 days following the occurrence of any of the following, and such Transfer does not constitute an Event of Default under any other Section of this Instrument:

(i)     a change of Borrower's name, provided that UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender;

New Jersey Mortgage                                                                     Page 14

     (ii)    a change of the form of Borrower not involving a transfer of Borrower's assets and not resulting in any change in liability of any Initial Owner, provided that: (A) UCC financing statements and/or amendments sufficient to continue the perfection of Lender's security interest have been properly filed and copies have been delivered to Lender, (B) Lender has been provided, in advance, for Lender's review and approval, all proposed filings, amendments and other documents pertaining to such change in form, and (C) Borrower shall pay for attorneys' fees, and other out of pocket costs of Lender for the review of such documents and any filings, including any title endorsement costs if Lender in its discretion requires an endorsement or endorsements to Lender's title policy;

     (iii)   the merger of Borrower with another entity when Borrower is the surviving entity;

     (iv)   [intentionally omitted]; and

     (v)    the grant of an easement, if before the grant Lender determines that the easement will not materially affect the operation or value of the Mortgaged Property or Lender's interest in the Mortgaged Property, and Borrower pays to Lender, upon demand, all costs and expenses, including Attorneys' Fees and Costs, incurred by Lender in connection with reviewing Borrower's request.

  (e)    The occurrence of any of the following events shall constitute an Event of Default under this Instrument:

     (i)    a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property (including without limitation the creation or existence of any Lien as provided in Section 16 of this Instrument);

     (ii)   if Borrower is a limited partnership, a Transfer of (A) any general partnership interest, or (B) limited partnership interests in Borrower that would cause the Initial Owners of Borrower to own less than a Controlling Interest of all limited partnership interests in Borrower;

     (iii)   if Borrower is a general partnership or a joint venture, a Transfer of any general partnership or joint venture interest in Borrower;

     (iv)   if Borrower is a limited liability company, (A) a Transfer of any membership interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the membership interests in Borrower, (B) a Transfer of any membership or other interest of a manager in Borrower that results in a change of manager, or (C) a change of a nonmember manager;

     (v)    if Borrower is a corporation, (A) the Transfer of any voting stock in Borrower which would cause the Initial Owners to own less than a Controlling Interest of any class of voting stock in Borrower or (B) if the outstanding voting stock in Borrower is held by 100 or more shareholders, one or more transfers by a single transferor within a 12-month period affecting an aggregate of 5% or more of that stock;

     (vi)   if Borrower is a trust, (A) a Transfer of any beneficial interest in Borrower which would cause the Initial Owners to own less than a Controlling Interest of all the beneficial interests in Borrower, (B) the termination or revocation of the trust, or (C) the removal, appointment or substitution of a trustee of Borrower; and

     (vii)   a Transfer of any interest in a Controlling Entity which, if such Controlling Entity were Borrower, would result in an Event of Default under any of Sections 21(e)(i) through (vi) above.

Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21.

    **22.**    **EVENTS OF DEFAULT.** The occurrence of any one or more of the following shall constitute an Event of Default under this Instrument:

    (a)    any failure by Borrower to pay or deposit when due any amount required by the Note, this Instrument or any other Loan Document;

    (b)    any failure by Borrower to maintain the insurance coverage required by Section 19 or to provide any financial information or documents required by Section 14;

    (c)    any failure by Borrower to comply with the provisions of Section 33;

    (d)    fraud or material misrepresentation or material omission by Borrower, any of its officers, directors, trustees, general partners or managers or any Guarantor in connection with (A) the application for or creation of the Indebtedness, (B) any financial statement, rent roll, or other report or information provided to Lender during the term of the Indebtedness, or (C) any

Book # OR 13328 Page # 9222 Inst. # 5374273

request for Lender's consent to any proposed action, including a request for disbursement of funds under any Collateral Agreement;

(e)        any event or condition that under the terms of this Instrument is specified as constituting an Event of Default, including, without limitation, any Event of Default under Section 21;

(f)        the commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of the Mortgaged Property or otherwise materially impair the lien created by this Instrument or Lender's interest in the Mortgaged Property;

(g)        any failure by Borrower to perform any of its obligations under this Instrument (other than those specified in Sections 22(a) through (f)), as and when required, which continues for a period of 30 days after notice of such failure by Lender to Borrower.  However, no such notice or grace period shall apply in the case of any such failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Instrument, result in harm to Lender, impairment of the Note or this Instrument or any other security given under any other Loan Document;

(h)        any failure by Borrower or any Guarantor to perform any of its obligations as and when required under any Loan Document other than this Instrument which continues beyond the applicable cure period, if any, specified in that Loan Document;

(i)        any event or condition occurs that results in any other indebtedness (i.e. indebtedness other than the indebtedness secured by this Instrument) owing by Borrower or any Borrower Affiliate (as defined below) to Lender becoming due prior to its scheduled maturity or that enables or permits (after the lapse of any applicable cure period) Lender or any trustee or agent on its behalf to cause such indebtedness to become due prior to its scheduled maturity ("**Borrower Affiliate**" means (i) any entity owned or controlled by Borrower, (ii) any entity commonly owned or controlled by the members or owners of Borrower, (iii) any Guarantor and (iv) any entity owned or controlled by one or more Guarantors);

(j)        any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt on the Mortgaged Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(k)        should any representation or warranty contained in this Instrument, the Borrower Certificate, any other Loan Document, or any other document submitted by Borrower to Lender be or become false or misleading in any material respect;

(l)        if the Mortgaged Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m)        Borrower or any Guarantor makes a general assignment for the benefit of creditors, voluntarily files for bankruptcy protection under the Bankruptcy Code or voluntarily becomes subject to any reorganization, receivership, insolvency proceeding or other similar proceeding pursuant to any other federal or state law affecting debtor and creditor rights, or an involuntary case is commenced against Borrower or any Guarantor by any creditor (other than Lender) of Borrower or any Guarantor pursuant to the Bankruptcy Code or other federal or state law affecting debtor and creditor rights to which Borrower or any Guarantor voluntarily becomes subject, and is not dismissed or discharged within 60 days after filing;

(n)        Borrower, any member, manager, officer, shareholder, general partner or trustee of Borrower, any Guarantor or any member, manager, officer, shareholder, general partner or trustee of any Guarantor, purports to revoke or dispute the validity of, or Borrower's or any Guarantor's liability under, any of the Loan Documents or any Guaranty; and

(o)        Borrower (if Borrower is a natural person) or any member, shareholder, partner or trustee of Borrower (if such member, shareholder, partner or trustee is a natural person), or any Guarantor who is a natural person, dies or becomes incompetent (unless, in the case of the death or incapacity of any member, shareholder or partner of Borrower, the Transfer of such member's, shareholder's or partner's interest in Borrower would not have been an Event of Default under Section 21); provided, however, that in the event of the death of any such person, Borrower (or such deceased person's executor, administrator or successor trustee) may within thirty (30) days after such death, present to Lender credit application(s) for proposed substitute borrower(s), member(s), shareholder(s), partner(s), trustee(s) or guarantor(s) on Lender's required forms, together with such supporting financial information as Lender may require, and in such event Lender, in its sole, absolute and unfettered discretion after review of such application(s) and supporting information, may waive such Event of Default, and provided further that such waiver may, in the case of the death or incompetence of Borrower or any Guarantor, require, as a condition of such waiver, that one or more substitute borrowers or guarantors assume unconditionally the obligations of such deceased person under the Loan Documents and/or guaranty, in a manner satisfactory to Lender.  In such event Borrower or the successor Borrower(s) shall execute such documentation as Lender may require and shall pay all of Lender's Attorneys' Fees and Costs and other out of pocket costs in connection with such assumption.

New Jersey Mortgage                                                                                                    Page 16

**23.**     **REMEDIES CUMULATIVE.** Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument or any other Loan Document or afforded by applicable law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order.

**24.**     **FORBEARANCE.**

(a)     Lender may (but shall not be obligated to) agree with Borrower, from time to time, and without giving notice to, or obtaining the consent of, or having any effect upon the obligations of, any Guarantor or any other third party obligor, to take any of the following actions:  extend the time for payment of all or any part of the Indebtedness; reduce the payments due under this Instrument, the Note, or any other Loan Document; release anyone liable for the payment of any amounts under this Instrument, the Note, or any other Loan Document; accept a renewal of the Note; modify the terms and time of payment of the Indebtedness; join in any extension or subordination agreement; release any Mortgaged Property; take or release other or additional security; modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable under this Instrument; and otherwise modify this Instrument, the Note, or any other Loan Document.

(b)     Any forbearance by Lender in exercising any right or remedy under the Note, this Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of all or any part of the Indebtedness after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments on account of the Indebtedness or to exercise any remedies for any failure to make prompt payment. Enforcement by Lender of any security for the Indebtedness shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right available to Lender.  Lender's receipt of any awards or proceeds under Sections 19 and 20 shall not operate to cure or waive any Event of Default.

**25.**     **LOAN CHARGES.** If any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in any Loan Document, whether considered separately or together with other charges levied in connection with any other Loan Document, violates that law, and Borrower is entitled to the benefit of that law, that charge is hereby reduced to the extent necessary to eliminate that violation.  The amounts, if any, previously paid to Lender in excess of the permitted amounts shall be applied by Lender to reduce the principal of the Indebtedness.  For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all Indebtedness which constitutes interest, as well as all other charges levied in connection with the Indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note.  Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest so computed is uniform throughout the stated term of the Note.

**26.**     **WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document.

**27.**     **WAIVER OF MARSHALLING.** Notwithstanding the existence of any other security interests in the Mortgaged Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Mortgaged Property shall be subjected to the remedies provided in this Instrument, the Note, any other Loan Document or applicable law. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Borrower and any party who now or in the future acquires a security interest in the Mortgaged Property and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Mortgaged Property be sold in the inverse order of alienation or that any of the Mortgaged Property be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

**28.**     **FURTHER ASSURANCES.** Borrower shall execute, acknowledge, and deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements, transfers and assurances as Lender may require from time to time in order to better assure, grant, and convey to Lender the rights intended to be granted, now or in the future, to Lender under this Instrument and the Loan Documents.

**29.**     **ESTOPPEL CERTIFICATE.** Within ten (10) days after a request from Lender, Borrower shall deliver to Lender a written statement, signed and acknowledged by Borrower, certifying to Lender or any Person designated by Lender, as of the date of such statement, (i) that the Loan Documents are unmodified and in full force and effect (or, if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications); (ii) the unpaid principal balance of the Note; (iii) the date to which interest under the Note has been paid; (iv) that Borrower is not in default in paying the Indebtedness or in performing or observing any of the covenants or agreements contained in this Instrument

or any of the other Loan Documents (or, if Borrower is in default, describing such default in reasonable detail); (v) whether or not there are then existing any setoffs or defenses known to Borrower against the enforcement of any right or remedy of Lender under the Loan Documents; and (vi) any additional facts requested by Lender.

**30.    GOVERNING LAW; CONSENT TO JURISDICTION AND VENUE.**

(a)    This Instrument, and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the **"Property Jurisdiction"**).

(b)    Borrower agrees that any controversy arising under or in relation to the Note, this Instrument, or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have non-exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue, or defense to venue to which it might be entitled by virtue of domicile, habitual residence, inconvenient forum or otherwise.

**31.    NOTICE.**

(a)    All notices, demands and other communications (**"notice"**) under or concerning this Instrument shall be in writing. Each notice shall be addressed to the intended recipient at its address set forth in paragraph A of this Instrument, and shall be deemed given on the earliest to occur of (1) the date when the notice is received by the addressee; (2) the first Business Day after the notice is delivered to a recognized overnight courier service, with arrangements made for payment of charges for next Business Day delivery; or (3) the third Business Day after the notice is deposited in the United States mail with postage prepaid, certified mail, return receipt requested. As used in this Section 31, the term "Business Day" means any day other than a Saturday, a Sunday or any other day on which Lender is not open for business.

(b)    Any party to this Instrument may change the address to which notices intended for it are to be directed by means of notice given to the other party in accordance with this Section 31. Each party agrees that it will not refuse or reject delivery of any notice given in accordance with this Section 31, that it will acknowledge, in writing, the receipt of any notice upon request by the other party and that any notice rejected or refused by it shall be deemed for purposes of this Section 31 to have been received by the rejecting party on the date so refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

(c)    Any notice under the Note and any other Loan Document which does not specify how notices are to be given shall be given in accordance with this Section 31.

**32.    SALE OF NOTE; CHANGE IN SERVICER.** The Note or a partial interest in the Note (together with this Instrument and the other Loan Documents) may be sold one or more times without prior notice to Borrower. A sale may result in a change of the Loan Servicer. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given notice of the change.

**33.    SINGLE ASSET BORROWER.** Until the Indebtedness is paid in full, Borrower (a) shall not acquire any real or personal property other than the Mortgaged Property and personal property related to the operation and maintenance of the Mortgaged Property; (b) shall not operate any business other than the management and operation of the Mortgaged Property; and (c) shall not maintain its assets in a way difficult to segregate and identify.

**34.    SUCCESSORS AND ASSIGNS BOUND.** This Instrument shall bind, and the rights granted by this Instrument shall inure to, the respective successors and assigns of Lender and Borrower. However, a Transfer not permitted by Section 21 shall constitute an Event of Default.

**35.    JOINT AND SEVERAL LIABILITY.** If more than one Person signs this Instrument as Borrower, the obligations of such Persons under this Instrument, the Note and other Loan Documents shall be joint and several.

**36.    RELATIONSHIP OF PARTIES; NO THIRD PARTY BENEFICIARY.**

(a)    The relationship between Lender and Borrower shall be solely that of creditor and debtor, respectively, and nothing contained in this Instrument shall create any other relationship between Lender and Borrower.

(b)    No creditor of any party to this Instrument and no other Person shall be a third party beneficiary of this Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (1) any arrangement (a **"Servicing Arrangement"**) between Lender and any Loan Servicer for loss sharing or interim advancement of funds shall constitute a contractual obligation of such Loan Servicer that is independent of the obligation of Borrower for the payment of the Indebtedness, (2) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (3) no payment by the Loan Servicer under any Servicing Arrangement will reduce the amount of the Indebtedness.

New Jersey Mortgage

Page 18

37.    SEVERABILITY; ENTIRE AGREEMENT; AMENDMENTS.  The parties intend that the provisions of this Instrument and all other Loan Documents shall be legally severable.  If any term or provision of this Instrument, or any other Loan Document, to any extent, be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Instrument or of such other Loan Document shall not be affected thereby, and each term and provision shall be valid and be enforceable to the fullest extent permitted by law.  This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument.  This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

38.    CONSTRUCTION.  The captions and headings of the Sections of this Instrument are for convenience only and shall be disregarded in construing this Instrument.  Any reference in this Instrument to an "Exhibit" or a "Section" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an Exhibit attached to this Instrument or to a Section of this Instrument.  All Exhibits attached to or referred to in this Instrument are incorporated by reference into this Instrument.  Any reference in this Instrument to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.  Use of the singular in this Instrument includes the plural and use of the plural includes the singular.  As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation."  The use of one gender includes the other gender, as the context may require.  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document in this Instrument shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument or any other Loan Document), and (b) any reference in this Instrument to any Person shall be construed to include such Person's successors and assigns.

39.    LOAN SERVICING.  All actions regarding the servicing of the Loan, including the collection of payments, the giving and receipt of notice, inspections of the Mortgaged Property, inspections of books and records, and the granting of consents and approvals, may be taken by the Loan Servicer unless Borrower receives notice to the contrary.  If Borrower receives conflicting notices regarding the identity of the Loan Servicer or any other subject, any such notice from Lender shall govern.

40.    DISCLOSURE OF INFORMATION.  Lender may furnish information regarding Borrower or the Mortgaged Property to third parties with an existing or prospective interest in the servicing, enforcement, evaluation, performance, purchase or securitization of the Indebtedness, including but not limited to trustees, master servicers, special servicers, rating agencies, and organizations maintaining databases on the underwriting and performance of similar mortgage loans, as well as governmental regulatory agencies having regulatory authority over Lender.  Borrower irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including but not limited to any right of privacy.

41.    NO CHANGE IN FACTS OR CIRCUMSTANCES.  All information in the application for the loan submitted to Lender (the "Loan Application") and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan Application are complete and accurate in all material respects.  There has been no material adverse change in any fact or circumstance that would make any such information incomplete or inaccurate.

42.    SUBROGATION.  If, and to the extent that, the proceeds of the Loan, or subsequent advances under Section 12, are used to pay, satisfy or discharge a Prior Lien, such Loan proceeds or advances shall be deemed to have been advanced by Lender at Borrower's request, and Lender shall automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the Prior Lien, whether or not the Prior Lien is released.

43.    [Intentionally Omitted]

44.    ACCELERATION; REMEDIES.  At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may foreclose this Instrument by judicial proceeding and may invoke any other remedies permitted by New Jersey law, provided in equity or provided in this Instrument or in any other Loan Document.  Lender shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs permitted by Rules of Court, costs of documentary evidence, abstracts and title reports.

45.    FIXTURE FILING.  This Instrument is also a fixture filing under the Uniform Commercial Code of New Jersey.

Book # OR 13328 Page # 9222 Inst. # 5374273

46.     **RELEASE.** Upon payment of the Indebtedness, Lender shall cancel this Instrument. Borrower shall pay to Lender the actual cost charged by the county recording officer to record the cancellation of the mortgage plus Lender's reasonable costs incurred in canceling this Instrument.

47.     **NO CLAIM OF CREDIT FOR TAXES.** Borrower will not make or claim credit on or deduction from the principal or interest on the sums secured by this Instrument by reason of any municipal or governmental taxes, assessments or charges assessed upon the Mortgaged Property, or claim any deduction from the taxable value of the Mortgaged Property by reason of this Instrument.

48.     **LOAN SUBJECT TO MODIFICATION.** This Instrument is subject to "modification" as such term is defined in N.J.S.A. 46:9-8.1 et seq. and shall be subject to the priority provisions thereof.

49.     **TRUE AND CORRECT COPY.** BORROWER HEREBY DECLARES THAT BORROWER HAS READ THIS INSTRUMENT, HAS RECEIVED A COMPLETELY FILLED-IN COPY OF IT WITHOUT CHARGE THEREFOR, AND HAS SIGNED THIS INSTRUMENT AS OF THE DATE AT THE TOP OF THE FIRST PAGE.

50.     **INTERPRETATION.** It is the intention of Borrower and Lender that if any provision of this Instrument or any other Loan Document is capable of two (2) constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid. Borrower acknowledges that Lender has attempted in good faith to assure that this Instrument, the Note and all other Loan Documents are in compliance with applicable laws of the Property Jurisdiction and federal laws. Nevertheless, in the event that any provision of this Instrument, the Note or any other Loan Document is not in compliance with any such laws, then the non-complying provision shall be deemed to be deleted or modified to the extent necessary to assure legal compliance. Similarly, in the event any language or disclosure required by applicable laws of the Property Jurisdiction is not contained in the Loan Documents, then the Loan Documents shall be deemed to have been supplemented to add such language or disclosure, or, at Lender's option, Lender may provide such additional language or disclosure. In either event, such legal requirement shall thereby be satisfied and such noncompliance shall be deemed to have been cured for all purposes. Within ten (10) days after written request by Lender, Borrower agrees to execute such documentation as Lender may require to cure any legal compliance issues or deficiencies in the Loan Documents.

51.     **FUTURE ADVANCES.** In addition to the Indebtedness, this Instrument shall (to the extent allowed by applicable law) also secure payment of the principal, interest and other charges due on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Mortgaged Property) when the promissory note evidencing such loan or advance specifically states that it is secured by this Instrument ("Future Advances"), including all extensions, renewals and modifications of any such Future Advances.

52.     **AGREEMENT TO PROVIDE ADDITIONAL DOCUMENTS.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of this Instrument and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended or corrected and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section or under Section 28 above within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

53.     **EXECUTION IN COUNTERPARTS.** This Instrument may be executed in multiple counterparts, and the separate signature pages and notary acknowledgments may then be combined into a single original document for recordation.

54.     **PAYMENT OF CLOSING COSTS.** If for any reason the escrow or closing agent fails to reserve and pay for all of Lender's fees, legal, documentation, appraisal, title, recording and other closing costs incurred in connection with the closing and funding of the Loan, then Borrower shall pay or reimburse Lender for any such unpaid fees or costs within ten (10) days after written demand by Lender itemizing the unpaid fees and costs. Failure of Borrower to so pay or reimburse Lender for any such unpaid fees and costs within ten (10) days after written demand by Lender shall constitute an Event of Default and, without limiting any other remedies of Lender, Lender may immediately instate the Default Rate under the Note until such amounts are received by Lender.

55.     **OBLIGATION TO PAY AT DEFAULT RATE.** Borrower agrees that it is the intention of Borrower and Lender that in the event of a foreclosure or other action to enforce the terms of any or all of the Loan Documents, and the entry of a judgment in such foreclosure or other enforcement action ("Judgment"), Borrower's obligation to pay Lender interest at the Default Rate (as defined in the Note), any taxes, insurance, premiums or other charges advanced by Lender, or attorney's fees or other costs and expenses incurred by Lender with respect to any or all of the Loan Documents, whether paid or incurred

New Jersey Mortgage                                                                                                          Page 20

before or after the entry of such Judgment, will not be deemed to have merged into the Judgment and will survive the entry of such Judgment and continue in full force and effect until all such sums have been paid in full to Lender.

56.     **BALLOON PAYMENT NOTICE.** The Note secured hereby provides for a balloon payment of the entire indebtedness upon the Maturity Date of the Note.

57.     **DOCUMENT IMAGING.** Lender shall be entitled, in its sole discretion, to image or make copies of all or any selection of the agreements, instruments, documents, items and records governing, arising from or relating to any of Borrower's loans, including, without limitation, this Instrument and the other Loan Documents, and Lender may destroy or archive the paper originals. Borrower waives (i) any right to insist or require that Lender produce paper originals, (ii) agrees that such images shall be accorded the same force and effect as the paper originals, (iii) agrees that Lender is entitled to use such images in lieu of destroyed or archived originals for any purpose, including as admissible evidence in any demand, presentment or other proceedings, and (iv) further agrees that any executed facsimile (faxed), scanned, or other imaged copy of this Instrument or any other Loan Document shall be deemed to be of the same force and effect as the original manually executed document.

58.     <u>WAIVER OF TRIAL BY JURY.</u> BORROWER AND LENDER EACH (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

      **ATTACHED EXHIBIT.** The following Exhibit is attached to this Instrument:
        Exhibit "A"        Description of the Land

[Borrower's signatures on next page.]

Book # OR 13328 Page # 9222 Inst. # 5374273

THIS MORTGAGE SECURES A FIXED RATE PROMISSORY NOTE. THIS MORTGAGE IS A FIRST MORTGAGE. NO FURTHER ENCUMBRANCES MAY BE RECORDED AGAINST THE MORTGAGED PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE AN EVENT OF DEFAULT AND AT LENDER'S OPTION THE LOAN SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.

**IN WITNESS WHEREOF**, Borrower has signed and delivered this instrument under seal (where applicable) or has caused this instrument to be signed and delivered by its duly authorized representative under seal (where applicable). Where applicable law so provides or allows, Borrower intends that this instrument shall be deemed to be signed and delivered as a sealed instrument.

BORROWER:

EVERGREEN PLAZA ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
    NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN I ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
    NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN II ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
    NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

EVERGREEN III ASSOCIATES LLC,
a New Jersey limited liability company

By: _____
    NICHOLAS J. AYNILIAN, Member / Manager

(SEAL)

New Jersey Mortgage                                                      Page 22

State of New Jersey          )
                             ) ss.
County of __BERGEN__         )

On __MARCH 14__, 2018, before me, __ELIZABETH M. ANDREOTTOLA__, Notary Public, personally
appeared **NICHOLAS J. AYNILIAN,**

☑ personally known to me - OR –

☐ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as
Member / Manager on behalf of **EVERGREEN PLAZA
ASSOCIATES LLC,** a New Jersey limited liability company,
the limited liability company therein named, and acknowledged
to me that the limited liability company executed the same for
the purposes therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Place Notary Seal and/or Any Stamp Above

_____
Other Required Information (Printed Name of Notary, Residence, etc.)

**ELIZABETH M. ANDREOTTOLA**
Notary Public, State of New Jersey
My Commission Expires 03/08/2020

Book # OR 13328 Page # 9222 Inst. # 5374273

State of New Jersey                          )
                                            ) ss.
County of _____BERGEN_____ )

On _____MARCH 1st____, 2018, before me, _____ELIZABETH M. ANDREOTTOLA____, Notary Public, personally
appeared NICHOLAS J. AYNILIAN,

    ☑ personally known to me - OR –

    ☐ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as
Member / Manager on behalf of EVERGREEN I ASSOCIATES
LLC, a New Jersey limited liability company, the limited
liability company therein named, and acknowledged to me that
the limited liability company executed the same for the purposes
therein stated.

WITNESS my hand and official seal.

_____
               Signature of Notary Public

Place Notary Seal and/or Any Stamp Above

_____
Other Required Information (Printed Name of Notary, Residence, etc.)

ELIZABETH M. ANDREOTTOLA
Notary Public, State of New Jersey
My Commission Expires 03/08/2020

State of New Jersey                          )
                                             ) ss.
County of __BERGEN_____           )

On __MARCH  14____, 2018, before me, ___ELIZABETH  M.  ANDREOTTOLA___, Notary Public, personally
appeared NICHOLAS J. AYNILIAN,

☑ personally known to me - OR –

☐ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as
Member / Manager on behalf of EVERGREEN II ASSOCIATES
LLC, a New Jersey limited liability company, the limited
liability company therein named, and acknowledged to me that
the limited liability company executed the same for the purposes
therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

_____
Other Required Information (Printed Name of Notary, Residence, etc.)

Place Notary Seal and/or Any Stamp Above

ELIZABETH M. ANDREOTTOLA
Notary Public, State of New Jersey
My Commission Expires 03/08/2020

State of New Jersey                    )
                                       ) ss.
County of _P. ERGEN_____             )

On _MARCH 14_, 2018, before me, _E.IZABETH M. ANDREOTTOLA_, Notary Public, personally
appeared NICHOLAS J. AYNILIAN,

☑ personally known to me - OR –

☐ proved to me on the basis of satisfactory evidence

to be the person(s) who executed the within instrument as
Member / Manager on behalf of **EVERGREEN III
ASSOCIATES LLC, a New Jersey limited liability company,**
the limited liability company therein named, and acknowledged
to me that the limited liability company executed the same for
the purposes therein stated.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Place Notary Seal and/or Any Stamp Above

_____
Other Required Information (Printed Name of Notary, Residence, etc.)

ELIZABETH M. ANDREOTTOLA
Notary Public, State of New Jersey
My Commission Expires 03/08/2020

EXHIBIT 'A'
DESCRIPTION OF THE LAND

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

**TRACT 1:**

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the end of a curve connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way (60') running; thence

1.  Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set; thence
2.  South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3.  North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4.  South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5.  North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6.  South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7.  South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8.  North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9.  South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet and a length of 81.40 feet to the point or place of BEGINNING.

The above description is drawn in accordance with a survey prepared by William J. Fiore, dated August 21, 2006.

Together with certain rights, privileges and easements appurtenant to the above described property created by those certain Deeds of easements recorded in Deed Book 3965 Page 238; Deed Book 3965; Page 241; and Deed Book 3965, Page 244.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map, and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY: BEING COMMONLY KNOWN AS Block 117.02 Lot 2, Mount Holly, NJ 08060 and Block 22, Lot 4.01, Lumberton, NJ 08048.

**TRACT II:**

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A)     Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B)     North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1.     Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence
2.     South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found;   thence
3.     North 58 degrees 26 minutes 24 seconds West 269.52 feet to a monument found; thence
4.     North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.

The above description is in accordance with a survey made by William J. Fiore, Inc., dated 8/21/2006.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2.04 and 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:   BEING COMMONLY KNOWN AS S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060

# EXHIBIT D

EXHIBIT 'A'
DESCRIPTION OF THE LAND

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

**TRACT 1:**

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the end of a curve connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way (60') running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set; thence
2. South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3. North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4. South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5. North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6. South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7. South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8. North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9. South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet and a length of 81.40 feet to the point or place of BEGINNING.

The above description is drawn in accordance with a survey prepared by William J. Fiore, dated August 21, 2006.

Together with certain rights, privileges and easements appurtenant to the above described property created by those certain Deeds of easements recorded in Deed Book 3965 Page 238; Deed Book 3965; Page 241; and Deed Book 3965, Page 244.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map, and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY: BEING COMMONLY KNOWN AS Block 117.02 Lot 2, Mount Holly, NJ 08060 and Block 22, Lot 4.01, Lumberton, NJ 08048.

**TRACT II:**

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A)    Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B)    North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1.    Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence
2.    South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found;   thence
3.    North 58 degrees 26 minutes 24 seconds West 269.52 feet to a monument found; thence
4.    North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.

The above description is in accordance with a survey made by William J. Fiore, Inc., dated 8/21/2006.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2.04 and 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:   BEING COMMONLY KNOWN AS S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060

# EXHIBIT E

# RECORDING INFORMATION SHEET

50 RANCOCAS RD,
MT. HOLLY, NJ 08060

| INSTRUMENT NUMBER: | DOCUMENT TYPE: |
|---|---|
| **5413200** | **AMENDMENT OF MORTGAGE** |

**Official Use Only**

| | |
|---|---|
| Document Charge Type | AMENDMENT OF MORTGAGE |

**Return Address** *(for recorded documents)*
LLC SIMPLIFILE
4844 NORTH 300 WEST
PROVO  UT  84604

TIMOTHY D. TYLER
BURLINGTON COUNTY

RECEIPT NUMBER
8525217
RECORDED ON
October   02, 2018 2:19 PM

INSTRUMENT NUMBER
5413200

BOOK: OR13356
PAGE: 1848

| | |
|---|---|
| **No. Of Pages** *(Excluding Recording Information and/or Summary Sheet)* | 12 |
| **Consideration Amount** | $0.00 |
| **Recording Fee** | $150.00 |
| **Realty Transfer Fee** | $0.00 |
| **Total Amount Paid** | $150.00 |
| **Municipality** | LUMBERTON TWP |
| **Parcel Information** | **Block:**  117.02  **Lot:**  2 |
| **First Party Name** | EVERGREEN PLAZA ASSOC |
| **Second Party Name** | PENDER CAPITAL ASSET BASED LENDING FUND |

**Additional Information (Official Use Only)**

5413200

Ctrl Id: 5667696 Recording Clerk: connieb

*************************** *DO NOT REMOVE THIS PAGE.* ****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF BURLINGTON COUNTY FILING RECORD*
******************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* ******************



## Burlington County Document Summary Sheet

| | |
|---|---|
| | **Transaction Identification Number** · 3586799 · 3064750 |

BURLINGTON COUNTY CLERK

50 RANCOCAS RD

MOUNT HOLLY NJ 08060 1317

**Recorded Document to be Returned by Submitter to:**
DELANEY CORPORATE SERVICES, LTD.
99 WASHINGTON AVE STE 805
ALBANY, NY 12210

**Official Use Only**

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 09/25/2018 |
| **No. of Pages** *(excluding Summary Sheet)* | 12 |
| **Recording Fee** *(excluding transfer tax)* | $150.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $150.00 |
| **Document Type** | AMENDMENT OF MORTGAGE |

**Electronic Recordation Level**    L2 - Level 2 (With Images)

**Municipal Codes**
    LUMBERTON TWP                                      17

**Bar Code(s)**



3 3 4 2 2 5

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Burlington County Document Summary Sheet

| Type | AMENDMENT OF MORTGAGE |
|---|---|
| Consideration | |
| Submitted By | SIMPLIFILE, LLC. (SIMPLIFILE) |
| Document Date | 09/13/2018 |

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | OR13328 | 9222 | 5374273 | |

**AMENDMENT OF MORTGAGE**

**MORTGAGOR**

| Name | Address |
|---|---|
| EVERGREEN PLAZA ASSOCIATES LLC | |
| EVERGREEN I ASSOCIATES LLC | |
| EVERGREEN II ASSOCIATES LLC | |
| EVERGREEN III ASSOCIATES LLC | |

**MORTGAGEE**

| Name | Address |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I LP | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | 23 | 117.02 | 2 | | 23 |
| | 23 | 117.02 | 2.04 | | 23 |
| | 17 | 22.01 | 4.1 | | 17 |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF BURLINGTON COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

# AMENDMENT TO MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

by and between

## EVERGREEN PLAZA ASSOCIATES LLC,

## EVERGREEN I ASSOCIATES LLC,

## EVERGREEN II ASSOCIATES LLC, and

## EVERGREEN III ASSOCIATES LLC,

as the Mortgagor

and

## PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.

as the Mortgagee

Dated: September 13, 2018

| Premises: | 1710 Route 38 |
| | Mount Holly, Burlington County, State of New Jersey |

1) LUMBERTON TWP B: 22.01 L: 4.10
2) MOUNT HOLLY TWP B: 117.02 L: 2
3) MOUNT HOLLY TWP B: 117.02 L: 2.04

**RECORD AND RETURN TO:**

Dana B. Weiss, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114

# AMENDMENT TO MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**THIS AMENDMENT TO MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT** (this "*Amendment*") is made as of the 13ᵗʰ day of September, 2018 by and between EVERGREEN I ASSOCIATES LLC, a New Jersey limited liability company ("*Evergreen I*"), **EVERGREEN III ASSOCIATES LLC**, a New Jersey limited liability company ("*Evergreen III*", and together with Evergreen I, the "*Owner*"), **EVERGREEN II ASSOCIATES LLC**, a New Jersey limited liability company ("*Evergreen II*"), and **EVERGREEN PLAZA ASSOCIATES LLC**, a New Jersey limited liability company ("*Evergreen Plaza*", together with Evergreen II and the Owner, individually and collectively, the "*Mortgagor*"), each with an address at 477 Colonial Rd. Ridgewood, New Jersey 07450, and **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, a Delaware limited partnership, its successors, participants and assigns (the "*Mortgagee*"), with an address at 11766 Wilshire Blvd., Suite 460, Los Angeles, CA 90025.

**WHEREAS,** the Owner is the owner of those certain tracts or parcels of land described in Exhibit A attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon;

**WHEREAS,** Mortgagor granted to Mortgagee that certain Mortgage, Assignment of Rents and Security Agreement dated as of March 14, 2018 and recorded on April 5, 2018 as Instrument Number 5374273, at Book OR13328, Page 9222 (the "*Mortgage*"), which Mortgage grants a lien on the real property described on Exhibit A attached hereto;

**WHEREAS,** Mortgagor and Mortgagee desire to amend the Mortgage to modify certain provisions thereof; and

**WHEREAS,** each capitalized term used herein and defined in this Amendment, but not otherwise defined herein, shall have the meaning given such term in the Mortgage or that certain Business Loan Agreement dated as of March 14, 2018 (as amended, modified, extended, or restated from time to time, the "*Loan Agreement*");

**NOW, THEREFORE,** in consideration of the premises and of the mutual covenants herein and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Mortgagor and Mortgagee agree as follows:

1.      **Recitals**.  The foregoing recitals are herein incorporated and made a part hereof.

2.      **Cross-Collateralization**.  The Loan shall be cross-collateralized via a lien on all of the assets of M.J. Realty Associates LLC, a Delaware limited liability company, as to an undivided 50% ownership interest, and M.J. Realty Associates II LLC, a Delaware limited liability company, as to an undivided 50% ownership interest, as tenants in common (together, the

11484819  v2

"*Affiliated Loan Parties*") (which Affiliated Loan Parties are the borrower under another facility with Mortgagee), including, but not limited to, the real property located in Hazleton, Pennsylvania secured by that certain Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated the date hereof granted by the Affiliated Loan Parties in connection with a $4,200,000.00 loan made by Mortgagee to the Affiliated Loan Parties. Mortgagor hereby acknowledges and agrees to such cross-collateralization with the assets of the Affiliated Loan Parties. Mortgagor shall, and shall cause the Affiliated Loan Parties to, provide and execute such documents and instruments requested by Mortgagee to effectuate such cross-collateralization.

3.      **Default and Cross-Default**. The following shall now constitute an Event of Default under the Loan Agreement and the Mortgage (in addition to all other items under the section labeled "Default" in the original Loan Agreement):

(a)    A default, event of default or similar occurrence with respect to any indebtedness, instrument or obligation owed by any or all of the Affiliated Loan Parties to Mortgagee or its affiliate(s).

4.      **No Impairment of Lien**. Nothing set forth herein shall affect the priority or extent of the lien of the Mortgage or any other Related Document nor release or change the liability of any party who may now be or after the date of this Amendment, become liable, primarily or secondarily, under the Related Documents.

5.      **Counterparts**. This Amendment may be executed in any number of counterparts, by different parties hereto in separate counterparts and by facsimile or other electronic signature, each of which, when so executed and delivered, shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

6.      **Governing Law; Severability**. This Amendment shall be governed by the laws of the State of New Jersey, without regard to principles of conflicts of laws. In the event that any provision of this Amendment conflicts with applicable law, such conflict shall not affect other provisions of this Amendment that can be given effect without the conflicting provisions, and to this end the provisions of this Amendment are declared to be severable.

**[Remainder of Page Intentionally Blank]**

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

EVERGREEN PLAZA ASSOCIATES, LLC

By: _____
Name: _DICHOLAS J. AYNILIAN_
Its: _____MANAGER_____

## ACKNOWLEDGEMENT

STATE OF ____NJ____ )
                                      ) ss:
COUNTY OF __BERGEN__ )

On this, the _6th_ day of _SEPTEMBER_____, 2018, before me, a Notary Public, the undersigned officer, personally appeared _NICHOLAS J. AYNILIAN_, who acknowledged himself/herself to be the __MANAGER__ of Evergreen Plaza Associates, LLC, a New Jersey limited liability company, and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of such entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

BARBARA SARKISIAN
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires May 25, 2016

9/28/21

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

EVERGREEN I ASSOCIATES, LLC

By: _____
Name: NICHOLAS J AYNILIAN
Its: _____ MANAGER

## ACKNOWLEDGEMENT

STATE OF _____ NJ _____ )
                                    ) ss:
COUNTY OF BERGEN _____ )

On this, the 6th day of SEPTEMBER, 2018, before me, a Notary Public, the undersigned officer, personally appeared Nicholas J Aynilian who acknowledged himself/herself to be the MANAGER of Evergreen I Associates, LLC, a New Jersey limited liability company, and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of such entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

BARBARA SARKISIAN
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires May 25, 2015

9/21/21

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

EVERGREEN II ASSOCIATES, LLC

By: _____

Name: _NICHOLAS J. HVNILIAN_

Its: _MANAGER_

### ACKNOWLEDGEMENT

STATE OF _____    )
                                              ) ss:
COUNTY OF _____    )

On this, the _6TH_ day of _SEPTEMBER_, 2018, before me, a Notary Public, the undersigned officer, personally appeared _NICHOLAS J. HVNILIAN_ who acknowledged himself/herself to be the _MANAGER_ of Evergreen II Associates, LLC, a New Jersey limited liability company, and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of such entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

BARBARA SARKISIAN
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires May 25, 2016

9/21/21

_____
Notary Public

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:                                    **EVERGREEN III ASSOCIATES, LLC**

                                            By: _____
                                            Name: _NICHOLAS J. AYNYLIAN_
                                            Its: _MANAGER_

## ACKNOWLEDGEMENT

STATE OF ___NJ___ )
                                        ) ss:
COUNTY OF ___BERGEN___ )

On this, the _6th_ day of _NOVEMBER_, 2018, before me, a Notary Public, the undersigned officer, personally appeared _NICHOLAS J AYNYLIAN_ who acknowledged himself/herself to be the _MANAGER_ of Evergreen III Associates, LLC, a New Jersey limited liability company., and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of such entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                            _____
                                            Notary Public

BARBARA SARKISIAN
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires May 25, 2016

9/24/# 2.1

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

**PENDER CAPITAL ASSET BASED LENDING FUND I, LP,** a Delaware limited partnership

By: _____

Name: Zachary Murphy

Its: Manager

_____

## ACKNOWLEDGEMENT

STATE OF _____ )

                                     ) ss:

COUNTY OF _____ )

On this, the _10th_ day of _September_, 2018, before me, a Notary Public, the undersigned officer, personally appeared Zachary Murphy, who acknowledged himself/herself to be the Manager of **PENDER CAPITAL ASSET BASED LENDING FUND I, LP,** a Delaware limited partnership, and that he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of such entity.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_See CA Notary Form_____

Notary Public

**California All Purpose Acknowledgement**          **2015 Government Code 1189 compliant**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _9/10/2018_ before me Tim Bowman, Notary Public

personally appeared _Zachary Murphy_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> TIM BOWMAN
> Comm. #2169189
> Notary Public - California
> Santa Clara County
> Comm. expires Oct. 23, 2020

---

**OPTIONAL INFORMATION**

Law does not require the information below. This information could be of great value to any person(s) relying on this document and could prevent fraudulent and/or the reattachment of this document to an unauthorized document(s)

**DESCRIPTION OF ATTACHED DOCUMENT**

Title or Type of Document: _Loan Agreement_

Document Date: _9/10/2018_          Number of Pages: _____

Signer(s) if Different Than Above: _____

Other Information: _____

**CAPACITY(IES) CLAIMED BY SIGNER(S)**
Signer's Name(s):

☐ Individual
☒ Corporate Officer _Manager (Managing Director)_
　　　　(Title(s))
☐ Partner
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian/Conservator
☐ Other: _____

**SIGNER IS REPRESENTING:** Name of Person or Entity _Parler Capital Asset Based Lending Fund LP_

© 2015 Notary Public Seminars  www.notarypublicseminars.com

# EXHIBIT A

Legal Description

11484819 v2

## PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

TRACT I

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the end of a curve connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way (60') running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set; thence
2. South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3. North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4. South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5. North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6. South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7. South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8. North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9. South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet and a length of 81.40 feet to the point or place of BEGINNING.

TRACT II:

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A) Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B) North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence

Copyright 2006-2009 American Land Title Association. All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



**American Land Title Association** **Commitment**
(Continued) **Revised 10-17-92**

Commitment Number:   843266(S-NJ-CR-LX)C

2. South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found; thence
3. North 58 degrees 26 minutes 24 seconds West 269.52 feet to a monument found; thence
4. North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.



Copyright 2006-2009 American Land Title Association.  All rights reserved.

The use of this Form is restricted to ALTA licensees and ALTA members
in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

