## <u>EXHIBIT 3 - CAPUZZI CERTIFICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(a)

Benesch, Friedlander, Coplan & Aronoff LLP
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel to 710 Route 38 ABL I Holdings, LLC*

| | |
|---|---|
| In re:<br><br>EVERGREEN I ASSOCIATES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-17116 (CMG)<br><br>(Jointly Administered)<br><br>Judge: Christine M. Gravelle |

**CERTIFICATION OF KEVIN M. CAPUZZI, ESQ. IN SUPPORT OF**
**THE MOTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC FOR**
**(I) ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363(e), AND/OR**
**(II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

KEVIN M. CAPUZZI, ESQUIRE, of full age, hereby certifies as follows:

1.  I am an attorney with the law firm of Benesch, Friedlander, Coplan & Aronoff

LLP, counsel of record for 710 Route 38 ABL I Holdings, LLC ("Lender") in the above-

captioned bankruptcy proceedings and am counsel of record to Pender Capital Asset Based

Lending Fund I, LP ("Pender"), the plaintiff in the foreclosure action captioned *Pender Capital*

*Asset Based Lending Fund I, LP v. Evergreen Plaza Associates LLC, et al.*, Case No. SWC-F-

---

[1]     The Debtors in these chapter 11 cases and the last four digits of the Debtors' taxpayer
identification numbers are as follows:  Evergreen I Associates, LLC (5258), Evergreen II
Associates, LLC (5300), Evergreen III Associates, LLC (5332), and Evergreen Plaza
Associates, LLC (5141).

002953-19 (N.J. Super. Ch. Div.) (the "Foreclosure Action").  Because I am the attorney of

record for Lender in this matter, and Pender in the Foreclosure Action, I am aware of the facts set

forth herein.

      2.       This Certification is submitted in support of Motion of 710 Route 38 ABL I

Holdings, LLC for Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363(e) (the

"Motion"),[2] submitted contemporaneously herewith.

      3.       Attached hereto as **Exhibit F** is a true and correct copy of the Original Receiver

Order.

      4.       Attached hereto as **Exhibit G** is a true and correct copy of the Amended Receiver

Order.

      5.       Attached hereto as **Exhibit H** is a true and correct copy of the Summary

Judgment Order.

      6.       Attached hereto as **Exhibit I** is a true and correct copy of the Amount Due Order.

      7.       Attached hereto as **Exhibit J** is a true and correct copy of the Foreclosure

Judgment.

      8.       Attached hereto as **Exhibit K** are true and correct copies of the Lumberton and

Mount Holly public real property tax records showing amounts due for each parcel of the

Property.

      9.       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge and belief.

Dated:  December 28, 2021           */s/ Kevin M. Capuzzi*
                                     Kevin M. Capuzzi (NJ No. 173442015)

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them
in the Motion.

# EXHIBIT F

Benesch, Friedlander, Coplan & Aronoff LLP
By:     Michael J. Barrie (NJ No. 033262000)
        Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff*

FILED WITH THE COURT

AUG 2 6 2019

KATHI F. FIAMINGO, J.T.C. t/a

|  |  |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>DOCKET NO. F-002953-19<br><br>CIVIL ACTION<br><br>**ORDER APPOINTING A RENT RECEIVER TO MAINTAIN THE MORTGAGED REAL PROPERTY** |

**THIS MATTER** having been opened to the Court by Plaintiff Pender Capital Asset Based Lending Fund I, LP ("Plaintiff") by and through its attorneys, Benesch, Friedlander, Coplan & Aronoff LLP, on its motion for the appointment of a rent receiver (the "Motion"); and it appearing that notice of the Motion has been given to all parties; and the Court having considered the pleadings submitted on behalf of Plaintiff, and arguments of counsel, if any; and for good cause having been shown;

IT IS ON THIS **26** day of _____*August*_____, 2019;

12299015

**ORDERED and ADJUDGED** that:

1.      IVL Group, LLC is hereby appointed as rent receiver (the "Rent Receiver") for the mortgaged real property of the Defendants located at Evergreen Plaza, S. Pemberton Road and 1722 Route 38, Mt. Holly, New Jersey 08060 (the "Property").

2.      That the Rent Receiver shall have all powers provided under the applicable laws and rules to collect rents and maintain the Property.

3.      All rents, profits, and revenues generated by the Property and payable to the Defendants under any written or other agreement affecting the Property are to be turned over to the Rent Receiver within five (5) days of the date hereof and when said rental, income, or other revenue payments become due same shall also be paid immediately to the Rent Receiver.

4.      To the extent that Defendants are presently operating and/or residing in the Property, Plaintiff is authorized to require the Defendants to pay market rent for their continued use of the Property.

5.      The Rent Receiver shall not be required to post a bond with the Superior Court of New Jersey.

6.      The Rent Receiver shall be authorized to enter into the Property as necessary to perform all duties as Rent Receiver.

7.      The Rent Receiver shall take all steps as may be necessary to collect all rents, income, revenue, and profits from the Property including those past due and unpaid with full power to make, demand, and/or file suit for payment of any rents, income, and profits and let, re-let, and sublet the Property or any portion thereof at market rental and to make agreements for the Property at market rental or on the condition, however, that no lease shall be executed with a tenant or proposed tenant in excess of one (1) year and on the further condition that such lease

2

shall contain subordination language (acceptable to Plaintiff) subordinating the tenant or prospective tenant's interest in the Property to that of Plaintiff, and to otherwise do all things necessary or proper for the due care of the Property pursuant to the leases and agreements existing or entered into hereafter and to cause fair market value rents, income, and profits to be derived and obtained from the Property; provided, however, that nothing herein is intended to, nor shall it in any way, impair or affect any security interest that Plaintiff has or may assert in the rents, issues, profits, and proceeds from the Property, nor shall it vest any additional rights in any or all of the Defendants with respect to such rents, issues, profits and proceeds.

8.      That the Rent Receiver deposit in his own name, as Rent Receiver, all monies received (whether by rents, income, or profits derived from the operation of the Property, or otherwise) at the time of receipt of such monies, in such number of segregated accounts at a FDIC insured banking institution as the Rent Receiver shall deem necessary, advisable, desirable, and/or convenient, and after paying and applying such monies to the expenses of maintenance and care of the Property, and to disburse the balance of all monies which come into the hands of the Rent Receiver as hereinafter described.

9.      That the Defendants, any unknown tenants and/or occupants, and/or their officers, employees, agents, representatives, and/or servants shall be enjoined and restrained from interfering with the Rent Receiver's collection of the rents and preservation of the Property, including, but not limited to, the collection of rents, issues, revenues, profits, income, and proceeds and including the spending, converting, or otherwise disposing of any income, issues, or profits from the Property, except in accordance herewith.

10.     That the Defendants, and/or any unknown tenants and/or occupants, and/or their officers, employees, agents, representatives, and/or servants shall cooperate with the Rent

Receiver and provide the Rent Receiver with copies of all real estate tax bills, insurance bills, water and sewer bills, all bills and invoices relating to the business operations, and all other information and documentation necessary for the Rent Receiver to maintain and preserve the Property.

11.     That within five (5) days of the date hereof, the Defendants and/or any unknown tenants and/or occupants shall turn over and deliver to the Rent Receiver or cause to be delivered to the Rent Receiver, with respect to the Property, the following:

    a.    All keys or combinations to locks for any of the Property;

    b.    All leases, contracts, or documents relating to the maintenance and operation of equipment and purchase of business assets and inventory;

    c.    All current rent rolls and tenancy lists;

    d.    All insurance information of any kind including, without limitation, property and hazard insurance and liability insurance, including liquor liability insurance;

    e.    All documents relating to utility accounts, including electricity, gas, heat, water, and telephone service;

    f.    The name and account numbers of all utility companies servicing the Property, business assets, and business operations;

    g.    Copies of all contracts relating in any way to the Property, business assets, and business operations, including contracts with vendors or other service personnel; and

    h.    Such other items as the Rent Receiver may reasonably request.

12.     The Rent Receiver is instructed to make the following disbursements, as and when incurred from the rents, income, and profits received by the Rent Receiver which are deemed to be necessary expenses of the Property, business assets, and business operations: All general costs of operation, including all presently due real estate taxes, water and sewer rents, insurance on the Property, utilities, trash collection, essential and routine repairs and

maintenance to the Property, costs and expenses relating to the business operations, and reimbursement of the Rent Receiver's actual and necessary out-of-pocket costs. Thereafter, the remaining balance collected by the Rent Receiver shall be paid to Plaintiff, to be applied against the indebtedness due to Plaintiff by the Defendants; provided, however, that no disbursement shall be made to Plaintiff without further Court approval.

13.     That the Rent Receiver, upon further Court approval, be empowered to employ such professionals, managing agents, contractors, and other persons as may be necessary to best preserve the Property, business assets, and business operations, but notwithstanding the foregoing, the Rent Receiver shall be permitted to immediately retain the services of an independent business and retail consultant to facilitate the maintenance and preservation of the Property.

14.     That the Rent Receiver and/or any party in interest hereto, at any time, on proper notice, may apply to the Court for further instructions and for such further power as may be necessary to enable the Rent Receiver to undertake and fully perform duties as such Rent Receiver.

15.     The Rent Receiver is acting as an officer of the Court and as an agent for Plaintiff. The Rent Receiver and all attorneys and professionals hired by the Rent Receiver, as authorized herein, shall be entitled to interim compensation for their services at their usual and customary monthly or hourly rates and shall be reimbursed for all expenses incurred in the performance of their duties.

16.     The Rent Receiver shall file with the Court and serve upon Plaintiff's counsel an interim management report every thirty (30) days (commencing thirty (30) days after entry of this Order). These interim reports shall include a full accounting of all funds for which the Rent

Receiver comes into possession with as to the Property, the amount of each expenditure incurred by the Rent Receiver, the name of each payee and a description of the services rendered, and the hourly fees and expenses charged by the Rent Receiver and its professionals. The interim fees paid shall be subject to final approval by this Court.

17.    Upon completion of filing and mailing of an interim report, the Rent Receiver may pay from the funds collected by the Rent Receiver in the performance of his or her duties as to the Property the amount of fees, costs and expenses reflected by such interim statements. At the completion of the Rent Receiver's duties, the Rent Receiver shall file with the Court and serve upon Plaintiff and all other parties to this action a Final Account and Report.

18.    The Rent Receiver shall not charge for telephone calls, copy charges, postage or clerical charges such as word processing and filing. Allowable expenses of the Rent Receiver include, but are not limited to, the actual cost of travel, hotel charges when overnight accommodations are required for the Rent Receiver to perform his duties, court filing fees and services fees, film and film processing.

19.    That true copies of the Order, certified by Plaintiff's counsel, be served upon the Defendants, and each tenant of the Property as of the date hereof, within ten (10) days from the date of receipt, and such service may be by certified and ordinary mail sent on the same day.

The Honorable Judge Kathi F. Fiamingo    J.T.C. + h

# EXHIBIT G

Benesch, Friedlander, Coplan & Aronoff LLP
By:    Michael J. Barrie (NJ No. 033262000)
       Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff*

**FILED WITH THE COURT**

**FEB 2 1 2020**

**KATHI F. FIAMINGO, J.T.C. t/a**

|  |  |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>DOCKET NO. F-002953-19<br><br>CIVIL ACTION<br><br>**AMENDED ORDER APPOINTING A RENT RECEIVER TO MAINTAIN THE MORTGAGED REAL PROPERTY** |

**THIS MATTER** having been opened to the Court by Plaintiff Pender Capital Asset Based

Lending Fund I, LP ("Plaintiff") by and through its attorneys, Benesch, Friedlander, Coplan &

Aronoff LLP, on its motion (the "Motion") for clarification of the Court's August 26, 2019 Order

Appointing a Rent Receiver to Maintain the Mortgaged Real Property (the "August 26th Order");

and it appearing that notice of the Motion has been given to all parties; and the Court having

considered the pleadings submitted on behalf of Plaintiff, and arguments of counsel, if any; and

for good cause having been shown;

IT IS ON THIS 21 day of FEBRUARY , 2020;

**ORDERED and ADJUDGED** that:

1.    IVL Group LLC is hereby appointed as rent receiver (the "Rent Receiver") for the mortgaged real property of the Defendants located at Evergreen Plaza, S. Pemberton Road and 1722 Route 38, Mt. Holly, New Jersey 08060 (the "Property").

2.    The Rent Receiver shall have all powers provided under the applicable laws and rules to collect rents and maintain the Property. The terms of this paragraph shall be deemed to require that each Defendant and any of their directors, officers, members, employees, parent companies, affiliates, or agents, shall cause all security deposits of any tenant of the Property to be promptly delivered or otherwise turned over to the Rent Receiver.

3.    All rents, profits, and revenues generated by the Property and payable to the Defendants under any written or other agreement affecting the Property are to be turned over to the Rent Receiver within five (5) days of the date hereof and when said rental, income, or other revenue payments become due same shall also be paid immediately to the Rent Receiver. The terms of this paragraph shall be deemed to require Defendants to turn over all cash or cash equivalents, wherever located, arising from the operation of the Property, including but not limited to all payments under any contracts or leases, all deposits made by actual or potential tenants of the Property, and all things of value that are encumbered by the liens and security interests of Plaintiff sought to be foreclosed herein, wherever situate.

4.    To the extent that Defendants are presently operating and/or residing in the Property, Plaintiff is authorized to require the Defendants to pay market rent for their continued use of the Property.

5.    The Rent Receiver shall not be required to post a bond with the Superior Court of New Jersey.

6.     The Rent Receiver shall be authorized to enter into the Property as necessary to perform all duties as Rent Receiver.

7.     The Rent Receiver shall take all steps as may be necessary to collect all rents, income, revenue, and profits from the Property including those past due and unpaid with full power to make, demand, and/or file suit for payment of any rents, income, and profits and let, re-let, and sublet the Property or any portion thereof at market rental and to make agreements for the Property at market rental, and to otherwise do all things necessary or proper for the due care of the Property pursuant to the leases and agreements existing or entered into hereafter and to cause fair market value rents, income, and profits to be derived and obtained from the Property; provided, however, that nothing herein is intended to, nor shall it in any way, impair or affect any security interest that Plaintiff has or may assert in the rents, issues, profits, and proceeds from the Property, nor shall it vest any additional rights in any or all of the Defendants with respect to such rents, issues, profits and proceeds.  The Rent Receiver unequivocally and exclusively possesses the following powers:

      a.     to enter into, renew, extend, cancel, or modify (including terminate), any existing or new leases (in the case of existing leases, subject only to the terms of such leases), including without limitation, contracts, agreements, and/or leases with a term or tenancy exceeding one (1) year, provided, however, that all such contracts, agreements, and/or leases shall be at market rates and contain subordination language acceptable to Plaintiff; and

      b.     to operate, manage, and lease the Property, and to market the Property for lease, which shall include the ability to enter into any agreement to hire one or more management companies, maintenance personnel, brokers, leasing agents, and/or marketing agents (at competitive rates plus reimbursement of reasonable and necessary out of pocket expenses) and to enter into contracts affecting and/or insuring the Property, all without further Order of the Court.

8.     The Rent Receiver deposit in his own name, as Rent Receiver, all monies received (whether by rents, income, or profits derived from the operation of the Property, or otherwise) at

3

the time of receipt of such monies, in such number of segregated accounts at a FDIC insured banking institution as the Rent Receiver shall deem necessary, advisable, desirable, and/or convenient, and after paying and applying such monies to the expenses of maintenance and care of the Property, and to disburse the balance of all monies which come into the hands of the Rent Receiver as hereinafter described.

9.     The Defendants, any unknown tenants and/or occupants, and/or their officers, employees, agents, representatives, and/or servants shall be enjoined and restrained from interfering with the Rent Receiver's collection of the rents and preservation of the Property, including, but not limited to, the collection of rents, issues, revenues, profits, income, and proceeds and including the spending, converting, or otherwise disposing of any income, issues, or profits from the Property, except in accordance herewith.

10.     The Defendants and each of their respective directors, officers, members, representatives, managers, employees, contractors, agents, and any and all other persons and entities retained, hired, or engaged by any of the Defendants, be enjoined and restrained from the following:

    a.     Entering upon the Property at any time during the pendency of the receivership without the prior written permission of the Rent Receiver, which should not be unnecessarily withheld;

    b.     Collecting or retaining any Property income during the pendency of the receivership;

    c.     Disposing of, dissipating, mishandling, or misappropriating the Property or such other property relating to the operation of the Property (except to immediately provide any Property or property related thereto to the Rent Receiver);

    d.     Terminating or causing to be terminated, or entering into, or causing to be entered into, any insurance policies, permits, leases, licenses, or other agreements relating to the Property during the pendency of the Receivership without the Receiver's consent; and

4

e. Encouraging or causing any tenant to close its business or otherwise leave the Property and/or causing any prospective tenant not to rent at the Property.

11. The Defendants, and/or any unknown tenants and/or occupants, and/or their officers, employees, agents, representatives, and/or servants shall cooperate with the Rent Receiver and provide the Rent Receiver with copies of all real estate tax bills, insurance bills, water and sewer bills, all bills and invoices relating to the business operations, and all other information and documentation necessary for the Rent Receiver to maintain and preserve the Property.

12. Within five (5) days of the date hereof, the Defendants and/or any unknown tenants and/or occupants shall turn over and deliver to the Rent Receiver or cause to be delivered to the Rent Receiver, with respect to the Property, the following:

a. All keys or combinations to locks for any of the Property;

b. All leases, contracts, or documents relating to the maintenance and operation of equipment and purchase of business assets and inventory;

c. All current rent rolls and tenancy lists;

d. All insurance information of any kind including, without limitation, property and hazard insurance and liability insurance, including liquor liability insurance;

e. All documents relating to utility accounts, including electricity, gas, heat, water, and telephone service;

f. The name and account numbers of all utility companies servicing the Property, business assets, and business operations;

g. Copies of all contracts relating in any way to the Property, business assets, and business operations, including contracts with vendors or other service personnel; and

h. Such other items as the Rent Receiver may reasonably request.

13. The Rent Receiver is instructed to make the following disbursements, as and when incurred from the rents, income, and profits received by the Rent Receiver which are deemed to

5

be necessary expenses of the Property, business assets, and business operations: All general costs

of operation, including real estate taxes, water and sewer rents, insurance on the Property, utilities,

trash collection, essential and routine repairs and maintenance to the Property, costs and expenses

relating to the business operations, and reimbursement of the Rent Receiver's actual and necessary

out-of-pocket costs.  Thereafter, the remaining balance collected by the Rent Receiver ~~shall~~ MAY be

paid to Plaintiff, to be applied against the indebtedness due to Plaintiff by the Defendants;

provided, however, that ~~no~~ disbursements shall be made to Plaintiff ~~without further Court~~ ONLY AFTER PAYMENT

~~approval~~ OF THE GENERAL COSTS OF OPERATION CURRENT OPERATING EXPENSES *.  The terms of this paragraph shall be deemed to provide that the Rent Receiver is

authorized, but not directed, to pay any pre-receivership Property Expenses, provided that the Rent

Receiver obtains consent from the Plaintiff to do so.

14.     The Rent Receiver, be empowered to employ such professionals, managing agents,

contractors, and other persons as may be necessary to best preserve the Property, business assets,

and business operations. The Rent Receiver shall be permitted to immediately retain the services

of an independent business and retail consultant to facilitate the maintenance and preservation of

the Property.

15.     The Rent Receiver and/or any party in interest hereto, at any time, on proper notice,

may apply to the Court for further instructions and for such further power as may be necessary to

enable the Rent Receiver to undertake and fully perform duties as such Rent Receiver.

16.     The Rent Receiver is acting as an officer of the Court and as an agent for Plaintiff.

The Rent Receiver and all attorneys and professionals hired by the Rent Receiver, as authorized

herein, shall be entitled to interim compensation for their services at their usual and customary

monthly or hourly rates and shall be reimbursed for all expenses incurred in the performance of

their duties. The terms of this paragraph shall be deemed to provide that: (i) the Rent Receiver

* A REASONABLE RESERVE FOR FUTURE OPERATING EXPENSES,
WORKING CAPITAL, AND CAPITAL IMPROVEMENTS, AND RESERVING
FOR PAYMENT OF REAL ESTATE TAXES, SO THAT THE RENT
RECEIVER HAS ADEQUATE FUNDS TO COMPLY WITH THE TERMS
OF THIS ORDER.

cannot be sued without leave of this Court; and (ii) the Rent Receiver is not personally liable for actions taken in good faith during the receivership

17.     The Rent Receiver shall file with the Court and serve upon Plaintiff's counsel an interim management report every thirty (30) days (commencing thirty (30) days after entry of this Order).   These interim reports shall include a full accounting of all funds for which the Rent Receiver comes into possession with as to the Property, the amount of each expenditure incurred by the Rent Receiver, the name of each payee and a description of the services rendered, and the hourly fees and expenses charged by the Rent Receiver and its professionals.   The interim fees paid shall be subject to final approval by this Court.

18.     Upon completion of filing and mailing of an interim report, the Rent Receiver may pay from the funds collected by the Rent Receiver in the performance of his or her duties as to the Property the amount of fees, costs and expenses reflected by such interim statements.   At the completion of the Rent Receiver's duties, the Rent Receiver shall file with the Court and serve upon Plaintiff and all other parties to this action a Final Account and Report.

19.     The Rent Receiver shall not charge for telephone calls, copy charges, postage or clerical charges such as word processing and filing.   Allowable expenses of the Rent Receiver include, but are not limited to, the actual cost of travel, hotel charges when overnight accommodations are required for the Rent Receiver to perform his duties, court filing fees and services fees, film and film processing.

20.     All terms of the Court's August 26 Order, as clarified by this Order, shall remain in full force and effect.   This Order and the Court's August 26 Order shall be construed together and be interpreted to be consistent with one another.   To the extent there is a direct conflict between

7

the terms of this Order and the terms of the Court's August 26th Order, the terms of this Order shall control.

21.    That true copies of the Order, certified by Plaintiff's counsel, be served upon the Defendants, and each tenant of the Property as of the date hereof, within ten (10) days from the date of receipt, and such service may be by certified and ordinary mail sent on the same day.

The Honorable Judge Kathi F. Fiamingo  JTC

8

FILED WITH THE COURT

FEB 2 1 2020

KATHI F. FIAMINGO, J.T.C. t/a

PREPARED BY THE COURT

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY |
| Plaintiff, | DOCKET NO. F-002953-19 |
| -v.- | CIVIL ACTION |
| EVERGREEN PLAZA ASSOCIATES LLC, et. al., | STATEMENT OF REASONS |
| Defendants. | |

Michael J. Barrie, Esq., Benesch, Friedlander, Coplan & Aronoff LLP
    Attorney for Plaintiff.

This application was opposed.
Proof of service was provided.

**REQUESTED RELIEF**

Pending before the court is plaintiff's motions to clarify and amend the order appointing the rent receiver and to authorize the rent receiver to distribute the net income from the subject property to plaintiff without further order of the court. For the reasons discussed below, the court grants plaintiff's motions, with some modification.

**BACKGROUND**

On February 12, 2019, Pender Capital Asset Based Lending Fund I, LP ("plaintiff") filed a complaint in foreclosure. The complaint alleges that on March 14, 2018, Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III

1

Associates LLC (collectively "defendants") executed a promissory note (the "note") in favor of plaintiff for the principal sum of $6,500,000.00. On even date, defendants executed a Mortgage, Assignment of Rents and Security Agreement (the "mortgage") to plaintiff encumbering the real property known as S. Pemberton Road[1] and 1722 Route 38[2], Mt. Holly, NJ 08060 ("subject property"). The mortgage was recorded at the Office of the Burlington County Clerk on April 5, 2018, it is not a purchase money mortgage.

Plaintiff further alleges that on November 1, 2018, defendants defaulted under the terms of the note and mortgage by failing to make an installment payment. On January 23, 2019 plaintiff exercised its right to accelerate the sums under the mortgage as immediately due and payable and thereafter filed the instant complaint for foreclosure. Defendant filed an answer, affirmative defenses and counterclaims on June 4, 2019. On June 7, 2019 plaintiff filed a motion to appoint a rent receiver which was granted on August 26, 2019 over defendant's objections. In the interim, plaintiff filed a motion to dismiss defendant's counterclaims, which it thereafter withdrew.

On October 25, 2019 the rent receiver filed a motion to authorize it to retain counsel to represent it. The court granted that motion on November 22, 2019. On November 6, 2019 plaintiff filed a motion seeking "clarification" of the court's order appointing the rent receiver, proposing a number of amendments to the order, as opposed to clarification of the order. The court requested that counsel for the receiver provide comments to plaintiff's motion, which comments were subsequently received. Prior to the return date of the motion to clarify (and amend) the court's

---

[1] Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map. Complaint, ¶ 8.

[2] Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map. Complaint, ¶ 8.

2

order appointing the rent receiver, plaintiff again moved for the within order authorizing the rent receiver to make distributions of the net income held by it to plaintiff, without further order of, or approval by, the court. Defendant opposed both plaintiff's motion for clarification and the motion for disbursement of the net income. The court heard oral argument and requested that plaintiff provide the court with the amended order incorporating the requested clarifications and amendments into the specific paragraphs to which the amendments and clarifications applied and to provide the amended order to the parties under R. 4:42-1(b)(5). The requested order was supplied.

**LEGAL ANALYSIS**

As the court has previously noted, an application for the appointment of a rent receiver is subject to the court's careful review and exercise of its sound discretion. Barclays Bank, P.I.C. v. Davidson Ave. Associates, 274 N.J. Super. 519, 520 (App. Div. 1994). "Appointment of a rent receiver solely in enforcement of a contractual right is a usurpation of the chancery court's power." Id. at 522. While a contractual provision providing for the appointment of a rent receiver is not binding on the court, "the covenant is given considerable weight in the court's evaluation of whether a rent receiver should be appointed. Id. at 523-24.

In determining to grant plaintiff's motion to appoint a rent receiver in this matter the court specifically noted that the mortgage contained a provision for the appointment of a rent receiver in the event of a default, that a default had occurred, that more than $280,000 in real estate taxes were unpaid and that a tax sale certificate had been sold with respect to the subject property on June 20, 2019 by the municipality, and that plaintiff had demonstrated that the subject property was in a state of disrepair. As a result, the court found that plaintiff's security was at risk and the appointment of a rent receiver was appropriate.

The purpose of a rent receiver is to protect the mortgagee's interests by imposing a court-supervised, disinterested person to collect the rents and pay expenses pending the ultimate disposition of the mortgaged premises. See Kaufman v. 53 Duncan Investors, L.P., 368 N.J. Super. 501, 506 (App. Div. 2004).

Once a rent receiver has been appointed, its responsibilities are limited. "A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee, to be applied upon the debt in the event of a deficiency." [Kaufman v. 53 Duncan Investors, L.P., 368 N.J. Super. 501, 506 (App. Div. 2004) (quoting Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 220-21 (1936)).](emphasis added). "rents collected by a receiver in a foreclosure suit will be disbursed according to the order of priority ascertained by the final decrees irrespective of the party upon whose application the receiver was appointed." Atl. City Nat'l Bank v. Wilson, 108 N.J. Eq. 213 (E & A 1931) (citing Schreiber v. Green, 90 N.J. Eq. 333).

Here plaintiff requests that the rent receiver be empowered to distribute excess income to it to be applied against the amounts due under the note. The proposed order was drafted in the nature of a command that the "remaining balance collected by the Rent Receiver shall be paid to Plaintiff, to be applied against the indebtedness due to Plaintiff by the Defendants." The court finds such a directive is an inappropriate incursion upon the authority of the Rent Receiver, and would unnecessarily relieve the Rent Receiver from making proper decisions as to the disposition of the funds collected and the expenses to be paid. The court will grant the Rent Receiver the ability to make such distributions to the plaintiff, provided, however, that the Rent Receiver is satisfied that all general costs of operation, current operating expenses, a reasonable reserve for further expenses and real estate taxes is maintained. The language proposed by the plaintiff is too

broad, and would both impinge upon the discretion and obligations of the Rent Receiver with respect to his duties.

Accordingly, the court grants plaintiff's motions with modifications as noted on the order.

KATHI F. FIAMINGO, J.T.C. t/a

Dated:  February 21, 2020

5

# EXHIBIT H

**Filed with the Court**

**JUL 15, 2020**

**Kathi F. Fiamingo, J.T.C. t/a**

BY THE COURT

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP, | |
| Plaintiff, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY |
| v. | DOCKET NO. F-002953-19 |
| EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC, | CIVIL ACTION |
| | **ORDER** |
| Defendants. | |

This matter having been brought before the court by Benesch, Friedlander, Copan & Aronoff, LLP, attorney's for plaintiff (Kevin Capuzzi, Esq. appearing) in the presence of Walter Murawinski, Esq., attorney for defendants, and the Court having considered the moving and responding papers and the arguments of the parties; and for good cause shown;

IT IS on this  15th  day of   July 2020,

**ORDERED** that:

1.  Summary judgment in favor of Plaintiff and against Defendants Evergreen Plaza Associates LLC, Evergreen I Associates, LLC, Evergreen II Associates, LLC, and Evergreen III Associates, LLC (together, "Defendants") on all counts set forth in Plaintiff's Complaint is granted;

2.  Defendants' answer is stricken, default is entered against defendants;

3.  Defendants' counterclaims are dismissed;

4.  This matter is referred to the Office of Foreclosure to proceed as an uncontested action;

5.  Plaintiff's motion to authorize the rent receiver to sell the mortgaged property in advance of final judgment is denied without prejudice;

6.  Defendants' motion to compel depositions is denied;

7.  Plaintiff's motion to approve the use of cash collaterall/escrow account held by plaintiff for use by the rent receiver to fund the replacement of the roof at the mortgaged property is granted;

8.  This order will be served upon the parties via eCourts.


/s/  Kathi F. Fiamingo
Kathi F. Fiamingo, J.T.C. t/a

SWC F 002953-19    07/15/2020    Pg 3 of 18 Trans ID: CHC2020180530

**Filed with the Court**

**JUL 15, 2020**

**Kathi F. Fiamingo, J.T.C. t/a**

PREPARED BY THE COURT

| | |
|---|---|
| **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY |
| Plaintiff, | |
| v. | DOCKET NO. F-002953-19 |
| **EVERGREEN PLAZA ASSOCIATES**, et al., | CIVIL ACTION |
| Defendants. | STATEMENT OF REASONS |

Kevin Capuzzi, Esq., Benesch, Friedlander, Coplan & Aronoff LLP
        Attorney for Plaintiff.

Walter Murawinski, Esq., Law Offices of Walter Murawinski, Esq.
        Attorney for Defendant.

This application was opposed
Proof of service was provided

---

**REQUESTED RELIEF**

Pending before the court is plaintiff's: (1) motion for summary judgment, dismiss counterclaims and authorize the sale of the subject property, and (2) motion to "approve use of cash collateral or, alternatively to approve advance under default rate of interest.[1]" Also before the court is defendants' motion to compel depositions. For the reasons discussed below, the court

---

[1] Plaintiff's third motion to compel compliance with the receiver's order was adjourned to August 7, 2020 to permit necessary parties to that motion an opportunity to intervene in this action. An interim order directing the tenants to pay over the rents to the receiver and directing the receiver to escrow $10,000 of the rents until further order of the court.

grants plaintiff's motion for summary judgment and dismisses defendants' counterclaims as non-germane to the foreclosure action. Plaintiff's motion to authorize the sale of the subject property by the rent receiver in advance of final judgment is denied. Defendants' motion to compel depositions is denied. Plaintiff's motion to approve the use of cash collateral is granted.

## FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

On March 14, 2018, Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates LLC (collectively "defendants") executed a promissory note (the "note") in favor of Pender Capital Asset Based Lending Fund I, L.P. ("plaintiff") in the principal amount of $6,500,000.00.[3] On even date, defendants executed a Mortgage, Assignment of Rents and Security Agreement (the "mortgage") to plaintiff encumbering the real property known as Lot 2 in Block 117.02 on the Tax Map of the Township of Mount Holly, Lot 4.01 in lock 22 on the Tax Map of the Township of Lumberton, and Lots 2.04 and 2.05 in Block 117.02 on the Tax Map of the Township of Mount Holly and Lot 4.10 in Block 22.01 on the Tax Map of the Township of Lumberton, being more commonly known as S.

---

[2] The following facts are obtained from the Statement of Material Facts submitted by plaintiff to the extent supported by appropriate certifications and competent evidence. Where defendant has disputed any such fact, the court has so indicated. The court notes that no certification of any representative of plaintiff with personal knowledge of certain facts set forth in the Statement of Material Facts was submitted. The only certification provided was that of plaintiff's counsel. Counsel would be well advised to refrain from providing certifications with information about which he has no personal knowledge. "Attorneys in particular should not certify to 'facts within the primary knowledge of their clients.'" Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 226 (App. Div. 2011) (citing See Pressler & Verniero, Current N.J. Court Rules, comment on R. 1:6-6 (2011); Higgins v. Thurber, 413 N.J. Super. 1, 21 n.19 (App.Div.2010), aff'd, 205 N.J. 227 (2011); Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super 349, 358 (App. Div. 2004) ("Even an attorney's sworn statement will have no bearing on a summary judgment motion when the attorney has no personal knowledge of the facts asserted.") Here counsel has also provided sufficient competent proof in the nature of deposition transcripts and answers to interrogatories which support the material facts relied upon by the court.

[3] Defendant does not dispute the loan documents but asserts that the loan was not "fully funded."

Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060 ("subject property").  The mortgage was recorded at the Office of the Burlington County Clerk on April 5, 2018, it is not a purchase money mortgage.  On September 13, 2018, the parties executed an Amendment to the Mortgage.  The amendment was recorded on October 2, 2018.

Plaintiff maintains that defendants are in default for failing to make the payments due on December 1, 2018 and thereafter.  Although defendants admit that the payments were not made, defendants dispute plaintiff's characterization that its failure to make the payments due on December 1, 2018, January 1, 2019 and thereafter constitutes a default.  Instead defendants contend that plaintiff was in default for its failure to make payments to unnamed contractors from a "set aside" of funds from the note.  Although defendants' representative certifies to such a default, he does not provide a copy of any document imposing such an agreement or which provides that such failure constitutes a default by plaintiff, excusing defendants' performance under the note and mortgage.

On April 1, 2019, the loan came due according to the terms of the note and all amounts due thereunder became due and payable.  In response defendants dispute the amount claimed to be due and assert that plaintiff does not have a "legitimate loan" because "[a]ll funds were not loaned."  Defendants dispute that they have not paid the indebtedness due under the note but provides no proof of payment of any amount.  As indicated above, defendants acknowledge that no payments on the note have been made since November 2018.

On June 20, 2019, a Tax Lien Certificate number 19-00051 was sold for property located at Block 22, Lot 4.01 on the Lumberton Township Tax Map constituting a default under the note and mortgage.  Defendants acknowledge that the lien was placed on the subject property but denies its obligation to make the tax payments.  Defendants assert that it was plaintiff's responsibility to

pay taxes from $200,000 held back form the loan proceeds.  Defendants do not provide any reference to any document or otherwise to support that assertion.

Plaintiff filed a complaint in foreclosure on February 12, 2019.  Defendants filed an answer, affirmative defenses and counterclaims on June 4, 2019.  The counterclaims allege plaintiff (a) tortuously interfered with defendant's contractual relations with its tenants, contractors and other third parties with respect to the subject property; (b) tortuously interfered with defendants' business relationships with its tenants, contractors and other third parties; (c) breached its agreement with defendants by failing to make timely payments to contractors and otherwise properly administer the loan; (d) breached covenants of good faith and fair dealing "implicit in the Loan Agreement"; (e) was unjustly enriched due to improvements made to the subject property by defendants; and (f) made false and misleading statements upon which defendants relied to their detriment.  Defendants claim compensatory and punitive damages and demand a jury trial.

On June 7, 2019 plaintiff filed a motion to appoint a rent receiver which was granted on August 26, 2019 over defendants' objections.  On October 25, 2019, the rent receiver filed a motion to authorize it to retain counsel to represent it which was granted on November 22, 2019.

Also of importance to the resolution of this matter, is prior litigation between the parties and/or their affiliates.  In or about February 2019 M.J. Realty Associates, LLC, M.J. Realty Associates II LLC and V.P.I. Capital Partners filed a third-party complaint against plaintiff in an action in the Superior Court of New Jersey, Law Division, Essex County as <u>Lowenthal v. Aynilian</u>, Docket No. L-9005-18.  The third-party complaint alleged substantially identical claims against plaintiff with respect to a loan transaction secured by property located in Hazelton, Pennsylvania owned by entities affiliated with defendants.  That action was dismissed with prejudice on May 21, 2019.

Additionally, plaintiff asserts and defendant acknowledges an action was brought in Pennsylvania entitled <u>M.J. Realty Associates, LLC, et al. v. Pender Capital Asset Based Lending Fund I, LP</u>, as case No 2019-1607 (Pa. C.C.P. Luzerne County) in which the claims brought in the Essex County third party complaint were brought in a direct action against plaintiff. Plaintiff asserts that both matters were resolved with the result that both the Pennsylvania action and the Essex County litigation claims were dismissed/withdrawn with prejudice. Defendants dispute the characterization of the settlement as a dismissal/withdrawal but admit that the matters were dismissed pursuant to a settlement between the parties.

In response to plaintiff's assertion that the allegations of defendants' counterclaims in this matter relate to the Pennsylvania loan transaction, defendant's response was "Disputed. The Hazelton matter is inextricably intertwined with the New Jersey matter. The lender is the same entity, with the same principals, the individual loans were cross-collateralized and cross-guaranteed. (As admitted by Plaintiff's counsel in open Court)."

On February 28, 2020, plaintiff filed the instant motion for summary judgment. On March 11, plaintiff filed a motion to direct compliance with the rent receiver order and on same date defendants filed a motion to compel the depositions of Zach Murphy, Tyler Tinoco, and Neal Beldock. These motions were originally scheduled to be heard on March 27, 2020.

On March 17, 2020, defendants' counsel requested the motions be adjourned to allow time to respond due to the current COVID-19 pandemic. The motions were then scheduled to be heard on April 24, 2020. On March 19, 2020, plaintiff filed opposition to defendants' motion to compel the depositions. On April 14, 2020, defendants' counsel requested the motions be adjourned again due to the COVID-19 pandemic. The court granted the adjournment request and scheduled the motions to be heard May 22, 2020. On May 12, 2020, defendants' counsel filed opposition to

plaintiff's motion for summary judgment. Oral argument was scheduled for May 22, 2020, but again adjourned at defendants' request until July 10, 2020.

On July 10, 2020, the court heard oral argument and as noted above adjourned one of the motions brought by plaintiff to permit the intervention of necessary parties to that motion. Unfortunately, the court was unable to conclude argument due the request of counsel for defendants that he be permitted to be excused due to an unexpected medical issue which arose during the course of argument. The matter was then adjourned to July 14, 2020. Defendants' counsel was advised that due to the extreme age of the motion and the pending trial date of July 22, 2020, the motion would be heard peremptorily on July 14, 2020. The court instructed defendants' counsel that if he were unable to appear substitute counsel should be engaged for the purpose of arguing the motions, or the motions would be heard on the papers.

On July 13, 2020 defendants' counsel informed the court by letter that he was unable to continue with his representation of defendants and had to "withdraw" from the matter. He advised the court that his clients consented to the motions being heard on the papers, but requested that the argument of plaintiff's counsel heard on July 10, 2020 be "stricken" due to his inability to respond. Plaintiff consented to the waiver of oral argument, but objects to the proposed withdrawal of defense counsel and his request that the oral argument be stricken.

## LEGAL ANALYSIS

### I.    Request to withdraw from representation

Initially the court acknowledges the request of defendants' counsel to withdraw from his representation in this matter, but denies the request. R. 1:11-2 sets forth the requirements applicable to a withdrawal or substitution of attorney. Specifically, R. 1:11-2(a)(2) provides that after

> the fixing of a trial date in a civil action, an attorney may withdraw without leave of court only upon the filing of the client's written request, a substitution of attorney executed by both the withdrawing attorney and the substituted attorney, a written waiver by all other parties of notice and the right to be heard, and a certification by both the withdrawing attorney and the substituted attorney that the withdrawal and substitution will not cause or result in delay.

Defendants' counsel has not complied with the requirements of the cited rule.  Until those requirements are met, the court cannot accede to counsel's request.

## II.     Motion for Summary Judgment

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).  The trial court's "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  The trial judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Ibid.  When the facts present "a single, unavoidable resolution" and the evidence "is so one-sided that one party must prevail as a matter of law," then a trial court should grant summary judgment. Ibid.  "The party defending against a motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a jury might return a verdict in its favor." School Alliance Ins. Fund v. Fama Constr. Co., 353 N.J. Super. 131, 135-136 (Law Div. 2001) (citing Anderson v. Liberty Lobby Inc., 477 U.S. 242,

248 (1986)).   All material facts submitted by the movant which are sufficiently supported are to be deemed admitted unless the other party specifically disputes such facts.  See R. 4:46-2(b).

Moreover, Rule 4:46-5(a) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the pleading, but must respond by affidavits meeting the requirements of R. 1:6-6 or as otherwise provided in this rule and by R. 4:46-2(b), setting forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered, unless it appears from the affidavits submitted, for reasons therein stated, that the party was unable to present by affidavit facts essential to justify the opposition, in which case, the court may deny the motion, may order a continuance to permit additional affidavits to be obtained, depositions to be taken or discovery to be had, or may make such other order as may be appropriate.

Plaintiff argues that summary judgment is appropriate here because it has shown a *prima facie* right to foreclose on the subject property.  To establish a *prima facie* case in a foreclosure proceeding, a plaintiff must establish the validity of the mortgage, default on the debt by the mortgagor, and the right of the mortgagee to resort to the mortgaged premises.  Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993).

As noted above, plaintiff supports its motion with a certification signed by the attorney of record, Michael Barrie, Esq.  No representative of plaintiff with personal knowledge of the matters set forth in the certification has been provided.  Nonetheless, counsel supports the certification with references to the transcript of the deposition of defendants' representatives, interrogatory responses and documentary evidence which is not in dispute.  Thus, competent evidential proof has been submitted by plaintiff in support of this motion.

Here defendants do not dispute the validity of the mortgage.  Additionally, defendants do not deny that they have failed to make any payments on the note since November 2018.  Although

10

defendants dispute that the failure to make those payments constitutes a default, it is undisputed that the note requires monthly payments and that the failure to do so constitutes a default under paragraph 22(a) of the mortgage.

Defendants' contention that it is plaintiff and not defendants that are in default is unsupported by any competent proof. Defendants have provided nothing to support the contention that a "default" by plaintiff occurred other than the self-serving certification of defendants' representative. Nor have defendants provided anything that would support a contention that a default by plaintiff would absolve defendants from making the payments due. Moreover, defendants' representative acknowledged in deposition that the loan matured, according to its terms, as amended, on April 1, 2019, was not further extended, and was not paid. Thus, it is clear, that the mortgage note which defendants acknowledge was signed by them, has not been paid when due, is in default and that plaintiff is entitled to resort to the mortgaged premises under the mortgage.

Plaintiff further contends that defendants' failure to pay the taxes due and permitting the lien of the tax sale certificate to be imposed is an additional cause of default. The mortgage agreement at paragraph 15(a) provides "[s]ubject to the provisions of Section 15(c) and Section 15(d), Borrower shall pay, or cause to be paid, all Taxes when due and before the addition of any interest, fine, penalty, or cost for nonpayment." Additionally, paragraph 22(g) of the mortgage provides that defendant's "failure to perform any of its obligations" under the mortgage constitutes a default. Defendants' assertion that it was plaintiff's obligation to make the payment of taxes from a holdback at closing is not supported by any competent proofs or documentary evidence and is insufficient in the face of plaintiff's proofs to the contrary. Unsupported and self-serving

statements in light of overwhelming evidence to the contrary does not create a question of fact to

defeat summary judgment. See Heyert v. Taddese, 431 N.J. Super 388, 404-414 (App. Div. 2013).

Additionally, there is no genuine factual dispute that plaintiff has standing to bring this

foreclosure action.  To establish standing to bring a foreclosure action, a plaintiff must show that

it is either in possession of the note or was assigned the mortgage at the time it brought the

complaint.  Deutsche Bank v. Mitchell, 422 N.J. Super. 214, 225 (App. Div. 2011).  The Appellate

Division, in Deutsche Bank Trust Co. Americas v. Angeles, 428 N.J. Super. 315, 318 (App. Div.

2012), clarified that "[i]n Mitchell, we held that either possession of the note **or** an assignment of

the mortgage that predated the original complaint conferred standing." (emphasis added).  Plaintiff

is the original lender and always had possession of the note and mortgage.  Thus standing cannot

is not at issue.

For all the foregoing reasons, summary judgment in favor of plaintiff is granted.

### III.    Motion to dismiss counterclaims

Plaintiff further moves to dismiss defendants' counterclaims asserting that they are barred

by the doctrine of *Res Judicata*.  Plaintiff asserts that the same claims were raised in both the Essex

County litigation as a Third-Party Complaint and as a direct claim against plaintiff in the

Pennsylvania litigation.  In the factual contentions set forth in the counterclaims, defendants allege

that the claims being made relate to the loan transaction on the New Jersey property.   In the

statement of material facts, plaintiff states that the allegations in defendants' counterclaims relate

to a "separate loan concerning property in Hazelton, Pennsylvania . . . and involving the Hazelton

Borrowers who, while also controlled by Aynilian, are not parties to this action."  Defendants'

response to that statement is "Disputed.  The Hazelton matter is inextricably intertwined with the

New Jersey matter.  The lender is the same entity, with the same principals, the individual loans

12

were cross-collateralized and cross guaranteed."  Defendants' response appears to concur with plaintiff's assertion that the counterclaims relate to the Hazelton loan transaction.  At best, defendants' reply is confusing and unclear.  It is clear, however, that defendants contend that both the current loan transaction and the Pennsylvania loan transaction are "inextricably intertwined."  Arguably then, such claims were "intertwined" with the claims set forth in both the third-party complaint filed in the Essex County litigation and the direct claims in the Pennsylvania litigation.  Those claims were dismissed, with prejudice, in both cases.  In that case, plaintiff's argument that defendants' counterclaims are barred as a result of the doctrine of *res judicata* has merit.

As noted by our Supreme Court,

> The concept that a party is required to bring all possible claims in one proceeding is embodied in the closely linked concepts of *res judicata* and the entire controversy doctrine. See Long v. Lewis, 318 N.J.Super. 449, 459, (App. Div. 1999) ("The claim preclusion aspect of the entire controversy doctrine is essentially *res judicata* by another name."). Under both federal law and this State's law, claim preclusion requires that

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

> [Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412, (1991) (citations omitted).]

> "Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." Ibid. (citing Angel v. Bullington, 330 U.S. 183, 192-93, (1947); Culver v. Insurance Co. of N. Am., 115 N.J. 451, 463, (1989)).

> "[C]auses of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be precluded in a later action."

> [Id. at 413, 591 A.2d at 599 (citations omitted); see Mortgagelinq
> Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 338
> (1995); Giudice v. Drew Chemical Corp., 210 N.J. Super. 32, 41-
> 42,          (App.          Div.          1986).]

> McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 395
> (2003).

It is not at all clear if, as plaintiff maintains, the facts set forth in defendants' counterclaims relate to the loan transaction in New Jersey or Pennsylvania. What is clear, however, is that defendants asserted in the within counterclaims that the Pennsylvania transaction and the New Jersey transaction were "inextricably entwined." Defendants' affiliates which brought the third-party complaint in the Essex County litigation similarly alleged that the two transactions were "inextricably entwined." Indeed, in responding to plaintiff's statement of material facts defendants again maintain that the two transactions were "inextricably intertwined" while appearing to dispute that the dismissal with prejudice of the Essex County and Pennsylvania actions is not dispositive of the current claims. Moreover, defendants voluntarily dismissed its third-party complaint, and the claims set forth therein, with prejudice.

Although defendants assert that the two transactions were "inextricably entwined" it is not clear if the claims arise out of the same transaction or occurrence. Plaintiff has not provided any competent evidence that the facts underlying the counterclaims arise out of the same transaction as in the Pennsylvania transaction. Defendants assert that the intertwining occurs as a result of cross-collateralization, not due to the same facts or same transaction.

Determining whether the issues are identical requires consideration of

> [1] whether there is substantial overlap of evidence or argument in
> the second proceeding; [2] whether the evidence involves
> application of the same rule of law; [3] whether discovery in the first

proceeding could have encompassed discovery in the second; and
[4] whether the claims asserted in the two actions are closely related.

[First Union Nat'l Bank, v. Penn Salem Marina, Inc., 190 N.J. 342,
353 (2007).]

Nothing provided by plaintiff in support of its motion supports such a determination.  Thus,
the court is unable to determine whether the claim should now be precluded due to the dismissal
with prejudice of the actions relating to the Pennsylvania transaction.

The court now reviews the question of whether such counterclaims are germane to the issue
of foreclosure.  In foreclosure actions, only counterclaims deeded to be germane may be asserted.
R. 4:64-5.  Defendants' counterclaims relate to alleged actions by the plaintiff which are not
germane to the foreclosure action.  Defendant asserts tortious interference with contractual and
business relationships, breach of contract, breach of covenants of good faith and fair dealing, unjust
enrichment, and unspecified fraud apparently occurring after the granting of the mortgage.  Even
assuming the counterclaims are valid and supportable, none of those claims challenge the right of
the mortgagee to foreclose, dispute the amount of the indebtedness, or otherwise have a direct
connection with the subject matter of the foreclosure complaint.  Thus, they are not properly
brought in the current action before the court and are dismissed.

**IV.    Motion to authorize the rent receiver to market and sell the subject property**

Plaintiff moves to permit the rent receiver to market and sell the subject property in lieu of
a sheriff's sale and in advance of establishing the amount due.  Plaintiff refers to N.J.S.A. 2A:50-
31 in support of its motion.  The referenced statute provides

When, in an action for the foreclosure or satisfaction of a mortgage
covering real or personal property, or both, the property mortgaged
is of such a character or so situated as to make it liable to deteriorate
in value or to make its care or preservation difficult or expensive
pending the determination of the action, the superior court may,

> before judgment, upon the application of any party to the action,
> order a sale of the mortgaged property to be made at public or private
> sale through a receiver, sheriff, or otherwise, as the court may direct.
> The proceeds of any such sale shall be brought into court, there to
> remain subject to the same liens and equities of the parties in interest
> as was the mortgaged property and to be disposed of as the court
> shall, by order or judgment, direct.

Plaintiff provides nothing to the court to support any determination that the property is of a character to make it liable to deteriorate in value or make its care or preservation difficult or expensive pending judgment.  Indeed, the court has appointed a receiver to maintain the subject property pending final judgment and to manage the property.  Nothing provided by plaintiff or the receiver in support of this motion supports any conclusion that the property is either deteriorating in value or is difficult or expensive to maintain.

The sole basis for plaintiff's position is the "continuing expansion of the debt due and owing to the lender."  Somewhat disingenuously, plaintiff fails to mention that it is still in possession of a sizable hold back from the closing, and has recently receive a significant sum from the rent receiver, both of which would and should reduce the expanding debt.

Plaintiff has not provided any reliable basis upon which this court can support a determination that the property should be sold in advance of final judgment.  Plaintiff's motion for such relief is denied without prejudice.[4]

### V.    Motion to compel depositions

Defendants move for an order compelling depositions which they admit they never noticed and never formally requested.  Moreover, the case management order issued by this court on January 10, 2020 provided that "[a]ny depositions required by defendant shall take place on or

---

[4] The court is mindful that at the present time the Burlington County Sheriff has suspended sheriff's sales due to the Covid-19 pandemic.  If after plaintiff has obtained final judgment sheriff sales have not resumed, plaintiff may wish to consider refiling the motion.

SWC F 002953-19    07/15/2020    Pg 17 of 18 Trans ID: CHC2020180530
Case 21-17116-CMG   Doc 144-3   Filed 12/28/21   Entered 12/28/21 14:57:43   Desc
Exhibit 3 - Capuzzi Certification   Page 42 of 75

before February 21, 2020. **No further extensions shall be granted.**"  Despite such order defendants never arranged for any depositions, and did not move to compel depositions until March 11, 2020, after the period for discovery had ended.  See R. 4:24-1(c) (Motions to extend discovery to be returnable before the conclusion of the applicable discovery period.)

Discovery had been extended several times, and trial scheduled on multiple occasions. Nevertheless, defendants failed to issue a notice to depose the requested witnesses at any time prior to the expiration of any of the specified discovery end date.  Furthermore, in light of the court's determination to grant summary judgment herein and to dismiss defendants' counterclaims, defendants' request is moot.  Thus, the court denies defendants' motion to compel deposition.

## VI.    Motion to Approve the use of cash collateral/advance funds

Plaintiff avers that the roof on the subject property requires replacement.  Plaintiff further avers that the rent receiver does not have sufficient funds to make payment in full of the contract price, although he has made the first installment.  Plaintiff asks that the court authorize it to pay over to the rent receiver funds withheld or escrowed at closing to be utilized to fund the roof replacement.  Alternatively, plaintiff requests that this court authorize plaintiff to advance funds under terms of the mortgage which would accrue interest at the default rate of interest under the mortgage note.

Defendant opposes the motion asserting that defendants have not been consulted about the need for the replacement or the identity of the contractor or the contract price.  Defendants allege, without any proof, that there is collusion between the plaintiff and the rent receiver.  Defendants acknowledge that "there may be truth" as to the condition of the roof, they still oppose because of the lack of consultation.  Defendants further oppose the use of the escrowed funds because these funds "would normally be part of a credit towards settlement and refinancing."  The funds held in

escrow were withheld for a specific purpose or purposes, none of which includes settlement or refinancing.

Of course, the establishment of the escrow was not to repair or maintain the subject property, however, the purpose of the escrow has long been made irrelevant. That is, the purpose of the escrow was to fund the costs of an extension to April 2020, which did not occur. Thus, the need for the escrow account no longer exists and the funds are now available for other purposes. Moreover, the escrowed funds are already included in the amount borrowed, and the use of such funds would not increase any amounts already subject to the mortgage balance due.

Thus, under the circumstances, the court will grant plaintiff's request to utilize the escrowed funds to pay the costs of the roof replacement.

## CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for summary judgment and dismisses defendants' counterclaims. Plaintiff's motion to authorize the sale of the subject property in advance of final judgment is denied. Defendant's motion to compel depositions is also denied. Plaintiff's motion to approve the use of escrowed funds for the purpose of replacing the roof at the subject property is granted.

/s/  Kathi F. Fiamingo
KATHI F. FIAMINGO, J.T.C. t/a

Dated:  July 15, 2020

18

# EXHIBIT I

**Filed with the Court**

**NOV 10, 2020**

**Kathi F. Fiamingo, J.T.C. t/a**

PREPARED BY THE COURT

| | |
|---|---|
| **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION BURLINGTON COUNTY |
| Plaintiff, | DOCKET NO. F-002953-19 |
| v. | CIVIL ACTION |
| **EVERGREEN PLAZA ASSOCIATES, LLC, et al.**, | ORDER SUSTAINING OBJECTION IN PART |
| Defendants. | |

THIS MATTER having come before the Court on defendant's objection to plaintiff's motion for final judgment and defendant being represented by Riker Danzig Scherer Hyland, et al. LLP (James B. Daniels, Esq.) and plaintiff being represented by Benesch Friedlander Coplan & Aronoff (Kevin Capuzzi, Esq.) and the court having reviewed the submissions received from counsel for the parties, and for good cause shown;

IT IS on this   10th   day of   November   2020 ORDERED:

1.  That defendant's objections to plaintiff's proof of amount due are SUSTAINED in part;

2.  The final judgment will reflect principal balance due as of September 30, 2020 in the amount of $6,392,791.61, accrued interest of $2,195,094.74 and per diem interest of $3,551.55;

3.  This action is transferred to the Office of Foreclosure for entry of Final Judgment; and

1

    4.      That a copy of this Order be served upon all parties of record by via eCourts.


/s/  Kathi F. Fiamingo
KATHI F. FIAMINGO, J.T.C., t/a



    X    Opposed.

        Unopposed.

**Filed with the Court**

**NOV 10, 2020**

**Kathi F. Fiamingo, J.T.C. t/a**

PREPARED BY THE COURT

**PENDER CAPITAL ASSET BASED
LENDING FUND I, LP**,

                        Plaintiff,

       v.

**EVERGREEN PLAZA ASSOCIATES**, **et al.,**

                        Defendants.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
BURLINGTON COUNTY

DOCKET NO. F-002953-19

CIVIL ACTION

STATEMENT OF REASONS

Kevin Capuzzi, Esq., Benesch, Friedlander, Coplan & Aronoff LLP
    Attorney for Plaintiff.

James B. Daniels, Esq. and Tod S. Chasin, Esq.,
    Riker Danzig Scherer Hyland Perretti, LLP
    Attorney for Defendant.

This application was opposed

## REQUESTED RELIEF

Pending before the court is defendant's objection to the amount due in plaintiff's motion for final judgment. For the reasons set forth herein, the court sustains defendants' objection and enters judgment in the amount determined herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 14, 2018, Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates LLC (collectively "defendants") executed a promissory note (the "note") in favor of Pender Capital Asset Based Lending Fund I,

L.P. ("plaintiff") in the principal amount of $6,500,000.00.  On even date, defendants executed a Mortgage, Assignment of Rents and Security Agreement (the "mortgage") to plaintiff encumbering the real property known as Lot 2 in Block 117.02 on the Tax Map of the Township of Mount Holly, Lot 4.01 in Block 22 on the Tax Map of the Township of Lumberton, and Lots 2.04 and 2.05 in Block 117.02 on the Tax Map of the Township of Mount Holly and Lot 4.10 in Block 22.01 on the Tax Map of the Township of Lumberton, being more commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060 ("subject property").  The mortgage was recorded at the Office of the Burlington County Clerk on April 5, 2018, it is not a purchase money mortgage.  On September 13, 2018, the parties executed an Amendment to the Mortgage. The amendment was recorded on October 2, 2018.

Defendants defaulted for failing to make the payments due on December 1, 2018 and thereafter.  On April 1, 2019, the loan came due according to the terms of the note and all amounts due thereunder became due and payable.  Additionally, on June 20, 2019, a Tax Lien Certificate number 19-00051 was sold for the property located at Block 22, Lot 4.01 on the Lumberton Township Tax Map also constituting a default under the note and mortgage.

Plaintiff filed a complaint in foreclosure on February 12, 2019.  Defendants filed an answer, affirmative defenses and counterclaims on June 4, 2019.  On June 7, 2019 plaintiff filed a motion to appoint a rent receiver which was granted on August 26, 2019 over defendants' objections.  On October 25, 2019, the rent receiver filed a motion to authorize it to retain counsel to represent it which was granted on November 22, 2019.

On February 28, 2020, plaintiff filed a motion for summary judgment, to strike defendants' answer and counterclaims and return the matter to the Office of Foreclosure to proceed as an uncontested action which was granted on July15, 2020.  On that same date the court also granted

plaintiff's motion to approve the use of cash collateral/escrow funds held by plaintiff by the rent receiver to fund the replacement of the roof at the subject property.[1]

Plaintiff then filed a motion for final judgment on July 28, 2020. Defendants filed the within objection to the amount due on August 7, 2020. The court heard argument and directed plaintiff to provide additional documentation as to the loan payment history which was filed. The court heard the parties' argument on October 16, 2020.[2]

## LEGAL ANALYSIS

R. 4:64-1(d)(1) provides that "[t]he application for entry of judgment shall be accompanied by proofs as required by R. 4:64-2."

R. 4:64-2 in turn provides that:

(a) Proof required by R. 4:64-1 may be submitted by affidavit, unless the court otherwise requires. The moving party shall produce the original mortgage, evidence of indebtedness, assignments, claim of lien (N.J.S.A. 46:8B-21), and any other original document upon which the claim is based. In lieu of an original document, the moving party may produce a legible copy of a recorded or filed document, certified as a true copy by the recording or filing officer or by a New Jersey attorney, or a copy of an original document, if unfiled or unrecorded, certified as a true copy by a New Jersey attorney.

(b) If the action is uncontested, the plaintiff shall file with the Office of Foreclosure an affidavit of amount due, which shall have annexed a schedule as set forth in Appendix XII-J of these rules. The schedule shall state the principal due as of the date of default; advances authorized by the note or mortgage for taxes, hazard insurance and other stated purposes; late charges, if authorized by the note or mortgage, accrued to the date of the filing of the complaint; a

---

[1] Certain other orders were entered by the court which do not impact the matter between the parties or this instant matter.

[2] In addition to the within motion, several other motions in this matter were heard on October 16, 2020, including a motion to intervene by a third-party creditor, a motion to reconsider prior orders of the court relating to the appointment of the rent receiver and a motion to remove the rent receiver.

computation of accrued interest; a statement of the per diem interest accruing from the date of the affidavit; and credit for any payments, credits, escrow balance or other amounts due the debtor. Prejudgment interest, if demanded in the complaint, shall be calculated on rate of interest provided by the instrument of indebtedness. A default rate of interest, if demanded in the complaint and if reasonable, may be used to calculate prejudgment interest from the date of default to the judgment. The schedule shall include notice that there may be surplus money and the procedure for claiming it. The proof of amount due affidavit may be supported by computer-generated entries.

Thereafter "[a]ny party having the right of redemption who disputes the correctness of the affidavit of amount due may file with the Office of Foreclosure an objection stating with specificity the basis of the dispute and asking the court to fix the amount due." R. 4:64-1(d)(3) [emphasis added].

Initially, the court notes that defendants assert that plaintiff should be required to resubmit its motion to the Office of Foreclosure and that this court should not determine the amount due. The court rejects defendants interpretation of the court rules governing this action,

R. 4:64-1(d)(3) provides that [o]n receipt of a specific objection to the calculation of the amount due, the Office of Foreclosure shall refer the matter to the judge in the county of venue, who shall schedule such further proceedings . . ." "The court . . . may enter final judgment upon proofs, as required by R. 4:64-2. The Office of Foreclosure may recommend entry of final judgment pursuant to R. 1:34-6." (emphasis added) R. 4:64-1(d)(4).

R. 1:34-6 permits the Office of Foreclosure to recommend the entry of orders in uncontested actions. As quite clearly indicated here this matter is contested and has been referred to this court in accordance with R. 4:64-1(d)(3). The court agrees with defendants' suggestion that the court may adjudicate the "issue in dispute" and not necessarily make the computations as to the "amount in dispute" and direct the Office of Foreclosure to make such calculations. The

court also finds that it may also perform the necessary calculations to fix the amount due, rather than direct the office of Foreclosure to do so. In a highly contested and contentious case, such as this matter, the court finds that it is its obligation to go beyond the issue of the amount due and instead make the necessary calculations in order that Final Judgment may be entered without further delay.

Here defendants assert that plaintiff improperly charged plaintiff for principal borrowed that was not released to them at closing. Defendants further assert that plaintiff's demand for interest on amounts not borrowed is improper and should be denied. Defendants further assert that monies paid to the plaintiff by the rent receiver have not been properly applied.

Initially, defendants object to the manner in which the interest has been calculated and the amount of the outstanding principal. Specifically defendants assert that at closing on March 14, 2018, plaintiff held back the aggregate amount of $1,300,000. Of the amount held back, $1,100,000 was to fund the costs of certain repairs and improvements to be made at the subject property ("Holdback A/C 2"). The remaining $200,000 was held back to "ensur[e] the cost of the First Extension in the loan documents is available" ("Holdback A/C 1"). Business Loan Agreement at 3. Plaintiff has calculated the amount due in this matter by imposing interest on the entire $6,500,000 from the date of closing, notwithstanding the distribution of held back funds at later dates. Plaintiff agrees that at closing the two holdback accounts were established in the amounts and for the purposes indicated by the defendant, but asserts that it is entitled to interest on the entirety of the principal from the date of closing notwithstanding that amounts were not distributed from the amounts held back until a later time.

The Promissory Note in this matter indicates that the defendants borrowed the principal sum of $6,500,000 and that "[i]nterest will accrue on the outstanding principal balance" at 12%

per annum.  Interest is to be calculated on the basis of a "360-day year consisting of twelve 30-day months."  Each payment is to be applied first to interest, with any balance applied against principal.  Interest for the period of the disbursement date through the end of the month was due and paid at closing.[3]  Thereafter the note provides that beginning May 1, 2018,

> and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month.  The amount of the monthly installment of interest only payable pursuant to this Section 3(d) on a Payment Due Date shall be SIXTY-FIVE THOUSAND AND 00/100 DOLLARS (US $65,000.00) (assuming no principal reduction payments have been made and no other changes to the outstanding principal balance have occurred.)  The amount of the monthly interest only payments shall be adjusted in the event any principal payments or other changes to the outstanding principal balance are made during the term  of the Loan.

> [Promissory Note Paragraph 3(d)]

In addition to the Promissory Note, on March 14, 2018 the parties entered into a Business Loan Agreement ("BLA").  The BLA outlined additional terms of the agreements between the parties relative to the loan.  In particular, the BLA provides

> **Lender Holdback Accounts**:  Lender shall maintain hold back accounts which shall be held by Lender in various sums for purposes outlined below.  Lender shall have sole rights to these funds for these purposes and shall distribute these funds, at its sole discretion, as outlined below.  At any time, if the Loan is paid in full with all principal, interest, fees and any other amount due Lender, the lender Holdback Accounts shall be released to Borrower within 5 business days.

---

[3] Curiously, the closing statement for the loan indicates that interest from "3/08/18 to 04/01/18 @ $2,136.9900/day" was paid at $51,287.76.  Even assuming the full $6,500,000 is the correct amount of principal for this calculation and ignoring the fact that the disbursement date was March 14, 2018 and not March 8, 2018, 12 days of interest at $2,136.99 per day is $25,643.88, exactly one-half of the amount charged.  Defendants did not object to this curious and seemingly incorrect calculation; plaintiff did not have an opportunity to respond to that and, as a result, the court will not make any changes to that charge.

**Lender Holdback Account #1**.  Lender shall maintain a hold back account for the purpose of ensuring the cost of the First Extension in the Loan documents is available.  This account shall be used at the Lender's sole discretion for the following:

1) Payment of said Extension fee and processing fee to Lender, at request of Borrower on or before the end of business on the 60th calendar day prior to the end of the original loan Term.
2) Payment of said Extension fee and processing fee to Lender, without requiring further Borrower request, permission or approval other than this document, on or before the final day of the Loan Term, if funds are not received in full for payment of all loan principal, interest and fees by 5PM Pacific Time by Lender.

**Lender Holdback Account #2**.  Lender shall maintain a hold back account for the purpose of ensuring the general welfare of the property.  This account shall be used at the Lender's sole discretion for the following:

1) Lender approved repairs and improvements.  Payments must be requested by Lender from said Lender Holdback Account #2 accompanied by Lender approved vendor package, including but not limited to insurance, bonding, licensing, invoice, contract and any other documents or information requested by lender.

2) Property preservation, legal expenses and management. If under the Loan documents, Lender chooses at its sole discretion to pursue its right to manage, engage third party management, enforce assignment of leases and rents or any other rights, the cost of such action shall be funded from Lender Holdback Account #2, without further Borrower request, permission or approval.

[Business Loan Agreement at 3-4]

Defendants assert that plaintiff is accruing interest on the entire principal amount notwithstanding the amounts held back were not distributed until some time after closing, and in the case of Holdback A/C #1, amounts remain held back and have not yet been distributed.  While acknowledging the fact that the amounts held back were not actually paid out until a later date,

9

and that all of the funds have yet to be distributed to defendants, plaintiff nonetheless asserts that it is entitled to accrue interest on the entirety of the principal amount of the note from the date of closing, and that it need only credit defendants with any amount not distributed, after the total amount of the principal, plus interest is included in the final judgment.  The court does not agree.

It is unquestioned that "[t]he settled rule is that except where the mortgagee holds money for disbursement to the mortgagor at the latter's call at an earlier date, pursuant to agreement, interest is not payable until the mortgage moneys are actually advanced."  Congdon v. Jersey Const. Co., 55 N.J. Super. 571, 576-77 (App. Div. 1959) (citing Homestead Bldg. Co. v. Waverly Building & Loan Ass'n, 99 N.J.L. 276 (E.&A. 1923).  Both defendants and plaintiff acknowledge the foregoing statement of law, but differ in its application.

The language of both holdback accounts quite clearly demonstrate that the Lender had complete control about whether and when held back amounts would be paid out.  The introductory paragraph provides that "Lender shall have sole rights to these funds for these purposes and shall distribute these funds, at its sole discretion, as outlined below."   BLA at 3.   The language establishing both Holdback A/C#1 and Holdback A/C#2 specify that, "[t]his account shall be used at the Lender's sole discretion for the following . . ."  Plaintiff counters that the mortgage document grants plaintiff a secured interest in the mortgaged property which includes "all undisbursed proceeds of the Loan."  While the court agrees that plaintiff has a secured interest in loans it has yet to pay out, that begs the question on whether interest is to accrue on the entire balance notwithstanding the fact that the amounts held back do not constitute "outstanding principal."

The promissory note provides only that "[i]nterest will accrue on the outstanding principal balance of this Note."  Promissory Note at 3(b).  Nowhere in the Note does it indicate that interest is to accrue on the entire amount of the note, whether or not disbursed.  Neither does the note

indicate that principal held back is nonetheless "outstanding." Further, the BLA references "advances" to be made and indicates that the "Initial Advance and each subsequent Advance . . . shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in [the BLA]." BLA at 1. Advance is defined in the BLA as "a disbursement of Loan funds made, or to be made, to Borrower under the terms and conditions of [the BLA]." BLA at 8.

Reconciling the holding of <u>Congdon</u> with the language of the Promissory Note and BLA, including the ultimate discretion provided to plaintiff in the BLA as to whether, how and in what amounts the amounts held back were to be paid out, leads the court to conclude that interest should not accrue on the held back account amounts until and unless disbursed. The court will recalculate the amount of the final judgment accordingly. The court finds the facts of <u>Kuerzi v. Scott</u>, 74 N.J. Eq. 218 (Ch. Ct. 1908) to be distinguishable. There the lender held the entire amount of the loan at the ready for borrowers use, subject only to the borrower's call for the funds. Here the use of the funds was subject to the discretion of the lender upon the satisfaction of various conditions as set by the Lender. [4]

The Promissory Note also provides for a default rate of interest, of "eight percentage points (8%) above the Fixed Interest Rate." Promissory Note at 1(a). The Promissory Note further provides that "[s]o long as (i) any monthly installment under this Note remains past due for thirty (30) days or more . . . interest under this Note shall accrue on the unpaid principal balance from the Payment Due Date of the first such unpaid monthly installment . . . at the Default Rate." Promissory Note at 8(a).

Our Supreme Court has held that contractual provisions calling for a higher rate of interest following default are in the nature of stipulated damages and are enforceable only if the default interest rate is reasonable under the totality of the circumstances. <u>See</u> <u>MetLife Capital Fin. Corp.</u>

---

[4] Notably plaintiff does not aver that the funds representing those "held back" were actually set aside for the benefit of the defendants in escrow accounts or otherwise.

v. Wash. Ace. Assos. LP, 159 N.J. 484, 495 (1999).  "Default interest rates . . . are presumed reasonable."  Id. at 501.  Here defendant did not object to the imposition of the default rate of interest.  Its reasonableness is presumed and nothing to the contrary has been presented to the court.

Defendants assert that the amount paid to the plaintiff by the rent receiver was not properly accounted for.  Plaintiff applied this amount to reduce accrued interest.  The court finds that such accounting is proper and in accord with the agreement of the parties.  The court will take such payment into account by applying it against the recalculated amount of accrued interest.  Defendants' objection to the payment of any amount to the plaintiff from the rent receiver has been the subject of a separate motion and has been addressed by the court.

On the basis of the foregoing, the court has recalculated that amount of principal and interest due and has attached to this statement of reasons that calculation.  The court sustains defendants' objection to the amount due in part, in accordance with that calculation.  Defendants' objection to the payment and application of the amount received by plaintiff from the rent receiver is overruled, except as may be affected by the recalculation of accrued interest and the application of that payment to accrued interest.

The court finds the following:

Principal balance:            $ 6,392,791.61

Interest to 9/30/20:            2,195,095.74   (includes default interest from and after 12/1/18)

Total amount Due:            $ 8,587,887.36

Per diem interest at 20% from 10/1//20:        $3,551.55

The manner in which the court has made this determination is attached.

12

## CONCLUSION

For the reasons set forth above, the court sustains defendant's objections and sets the amount of principal due as of 9/30/20 at $6,392,791.61, accrued interest to 9/30/20 at $2,195,094.74 and per diem interest due from that date at $3,551.55.

Final judgment will be entered in that amount, subject to the review of the procedural requirements by the Office of Foreclosure, as well as any other amounts claimed due for taxed costs, attorney's fees and other amounts to which plaintiff may be entitled by the Rules of Court.

/s/  Kathi F. Fiamingo
KATHI F. FIAMINGO, J.T.C. t/a

Dated:  November 10, 2020

This motion was opposed

| Date | Description | Amount | Principal Payment | Principal balance | Interest | Accumulated Interest | Late Charge |
|---|---|---|---|---|---|---|---|
| | Amount of mortgage | 6,500,000.00 | | | | | |
| | | | | | | | |
| | Less holdbacks | (1,100,000.00) | | | | | |
| | | (200,000.00) | | | | | |
| | | 5,200,000.00 | | | | | |
| | | | | | | | |
| 4/1/2018 | Principal balance | | | 5,200,000.00 | | | |
| 4/20/2018 | Interest accrued 4/1 to 4/20 | | | | 34,666.67 | 34,666.67 | |
| 4/20/2018 | Disbursement | 244,601.00 | | 5,444,601.00 | | | |
| 4/30/2018 | Interest accrued 4/20 to 4/30 | | | | 18,148.67 | 52,815.34 | |
| 4/30/2018 | Disbursement | 30,000.00 | | 5,474,601.00 | | | |
| 5/11/2018 | Payment | 65,000.00 | (12,184.66) | 5,462,416.34 | (52,815.34) | (0.00) | |
| 5/11/2018 | Late Charge | | | | | | 6,500.00 |
| 5/11/2018 | Interest accrued 5/1/18 to 5/11/18 | | | | 20,028.86 | 20,028.86 | |
| 5/11/2018 | Disbursement | 244,601.00 | | 5,707,017.34 | | | |
| 5/22/2018 | Interest accrued 5/11/18 to 5/22/18 | | | | 20,925.73 | 40,954.59 | |
| 5/22/2018 | Disbursement | 10,000.00 | | 5,717,017.34 | | | |
| 5/29/2018 | Interest accrued 5/22/18 to 5/29/18 | | | | 13,339.71 | 54,294.30 | |
| 5/29/2018 | Disbursement | 244,601.00 | | 5,961,618.34 | | | |
| 5/30/2018 | Interest accrued 5/29/18 to 5/30/18 | | | | 1,987.21 | 56,281.50 | |
| 6/1/2018 | Payment | 65,000.00 | (8,718.50) | 5,952,899.84 | (56,281.50) | 0.00 | |
| 6/1/2020 | Disbursement | 65,000.00 | | 6,017,899.84 | | | |
| 6/6/2018 | Interest 6/1/18 to 6/6/18 | | | | 12,035.80 | 12,035.80 | |
| 6/6/2018 | Disbursement | 15,000.00 | | 6,032,899.84 | | | |
| 6/30/2018 | Interest | | | | 48,263.20 | 60,299.00 | |
| 7/1/2018 | Payment | 71,500.00 | (4,701.00) | 6,028,198.84 | 60,299.00 | 0.00 | (6,500.00) |
| 7/30/2018 | Interest | | | | 60,281.99 | 60,281.99 | |
| 8/1/2018 | Payment | 65,000.00 | (4,718.01) | 6,023,480.82 | 60,281.99 | (0.00) | |
| 8/21/2018 | Interest 8/1/18 to 8/21/18 | | | | 42,164.37 | 42,164.37 | |
| 8/21/2018 | Disbursement | 236,000.00 | | 6,259,480.82 | | | |
| 8/30/2018 | Interest 8/21/18 to 8/30/18 | | | | 18,778.44 | 60,942.81 | 6,500.00 |
| 9/14/2018 | Interest 9/1/18 to 9/14/18 | | | | 29,210.91 | 90,153.72 | |
| 9/14/2018 | Disbursement | 10,197.00 | | 6,269,677.82 | | | |
| 9/17/2018 | Payment (due 9/1/18) | 71,500.00 | | | (65,000.00) | 25,153.72 | (6,500.00) |
| 9/30/2018 | Interest 9/14/18 to 9/30/18 | | | | 33,438.28 | 58,592.00 | |
| 10/10/2018 | Payment (due 10/1/18) | 65,000.00 | (6,408.00) | 6,263,269.82 | (58,592.00) | 0.00 | |
| 10/30/2018 | Interest 10/1/18 to 10/31/18 | | | | 62,632.70 | 62,632.70 | |
| 11/30/2018 | Payment (due 11/1/18) | 65,000.00 | (2,367.30) | 6,260,902.52 | (62,632.70) | (0.00) | |
| 11/30/2018 | Interest 11/1/18 to 11/30/18 | | | | 62,609.03 | 62,609.02 | |
| 12/31/2018 | Interest 12/1/18 to 12/31/18 @ 20% | | | | 104,348.38 | 166,957.40 | |
| 12/31/2019 | Interest 1/1/19 to 12/31/19 @20% | | | | 1,252,180.50 | 1,419,137.90 | |
| 3/1/2020 | Interest 1/1/20 to 2/29/20 @20% | | | | 208,696.75 | 1,627,834.65 | |
| 3/10/2020 | Interest 3/1/20 to 3/10/20 @20% | | | | 34,782.79 | 1,662,617.45 | |
| 3/10/2020 | Payment | 166,421.05 | | | (166,421.05) | 1,496,196.40 | |
| 3/30/2020 | Interest 3/10/20 to 3/31/20 @20% | | | | 69,565.58 | 1,565,761.98 | |
| 6/30/2020 | Interest 4/1/20 to 6/30/20@20% | | | | 313,045.13 | 1,878,807.11 | |
| 7/22/2020 | Interest 6/30/20 to 7/22/20@20% | | | | 76,522.14 | 1,955,329.25 | |
| 7/22/2020 | Disbursement | 59,193.83 | | 6,320,096.35 | | | |
| 7/30/2020 | Interest 7/22/20 to 7/30/22@20% | | | | 28,089.32 | 1,983,418.57 | |
| 8/17/2020 | Interest 8/1/20 to 8/17/20@20% | | | | 59,689.80 | 2,043,108.36 | |
| 8/17/2020 | Disbursement | 25,811.00 | | 6,345,907.35 | | | |
| 8/30/2020 | Interest 8/17/20 to 8/30/20@20% | | | | 45,831.55 | 2,088,939.92 | |
| 9/15/2020 | Interest 9/1/20 t 9/15/20@20% | | | | 52,882.56 | 2,141,822.48 | |
| 9/15/2020 | Disbursement | 46,884.26 | | 6,392,791.61 | | | |
| 9/30/2020 | Interest 9/15/20 to 9/30/20@20% | | | | 53,273.26 | 2,195,095.74 | |
| | | | | | | | |
| 10/1/2020 | Principal Balance | 6,392,791.61 | | | | | |
| 9/30/2020 | Accured Interest | 2,195,095.74 | | | | | |
| | | | | | | | |
| 10/1/2020 | Total Principal & Interest | 8,587,887.36 | | | | | |
| | | | | | | | |
| | Per Diem Interest from 10/1/20 | | | | | | |
| | at 20% | 3,551.55 | | | | | |

# EXHIBIT J



# SUPERIOR COURT OF NEW JERSEY

## OFFICE OF FORECLOSURE

### Cost Sheet

Chancery Division

Docket No. SWC-F-002953-19                                        County:BURLINGTON

| | |
|---|---|
| Attorney's Allowance by Statute | 50.00 |
| Filing Fees Paid to Clerk | 250.00 |
| Counsel  Fees Allowed Under R.4:42-9 | 7500.00 |
| Sheriff Fees for Service | 0.00 |
| Search Costs Allowed Under R.4:42-10 | 500.00 |
| Printing Costs for Publication | 0.00 |
| Cost of Filing Lis Pendens | 0.00 |
| Motions | 100.00 |
| Costs on Application for Writ of Execution (if applicable) | 0.00 |
| Other | 0.00 |
| Total Costs | 8400.00 |

Date Taxed and Filed:    11/13/2020

Attorney:

Benesch, Friedlander, Coplan & Aronoff LLP
By:     Michael J. Barrie (NJ No. 033262000)
        Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff Pender Capital Asset Based Lending Fund I, LP*

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP, <br><br> Plaintiff, <br><br> v. <br><br> EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY <br><br> Docket No. SWC-F-002953-19 <br><br> Civil Action – Foreclosure <br><br> **FINAL JUDGMENT OF FORECLOSURE** |

Upon motion to the Court by Plaintiff Pender Capital Asset Based Lending Fund I, LP ("Plaintiff"), by and through its counsel; and it appearing that the Summons and Complaint in Foreclosure were duly issued and served upon Defendants Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates, LLC (together, "Defendants") in accordance with the Rules of Civil Practice Governing the Courts of the State of New Jersey; and the Court ordering summary judgment against Defendants on July 15, 2020.

And it appearing that the Note dated March 14, 2018 and the Mortgage dated March 18, 2018, have been presented and marked as exhibits by the Court; and that proofs have been

submitted of the amounts due thereon; and that there is due and owing to Plaintiff, as more particularly described in the Note and Mortgage, the aggregate sum of ~~$8,340,659.20~~ $8,591,437.90, as of ~~July 31, 2020~~ September 30, 2020, with lawful interest computed thereafter on the total sum due Plaintiff until the same be paid and satisfied, plus costs to be taxed and counsel fees;

IT IS on this 13th day of November, 2020;

1.    ORDERED AND ADJUDGED that Plaintiff is entitled to have first the sum of ~~$8,340,659.20~~ $8,591,437.90, with lawful interest from ~~December 1, 2018~~ the date of final judgment, until the same be paid and satisfied, plus costs ~~of this suit to be taxed ($850.00) and~~ attorney's fees ($7,500.00) ~~in the aggregate amount of $8,350.00~~, all to be raised and paid out of those certain tracts, lots, and parcels of land situate and lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060 (collectively, the "Property" or the "Mortgaged Premises") and collateral; and it is

2.    FURTHER ORDERED AND ADJUDGED that Plaintiff, its successors and/or assigns, or any purchaser at the foreclosure sale duly recover against Defendants, and all parties holding by, though, or claiming under them, possession of the premises and collateral mentioned and described in the Complaint in Foreclosure with the appurtenances thereon and that a Writ of Possession issue thereon; and it is

3.    FURTHER ORDERED AND ADJUDGED that the Mortgaged Premises be sold to raise and satisfy the amounts due to Plaintiff, or its successors and assigns, and that, for that purpose, an execution duly issue out of this Court directed to the Sheriff of Burlington County commanding him or her to make a sale, according to law, of the Mortgaged Premises and collateral, and out of the monies arising from the sale that he or she pay Plaintiff, or its successors and assigns or its attorney, the amounts due and owing to Plaintiff until such amounts are paid in full and satisfied; and that in case more money shall be realized by such sale than shall be necessary to satisfy such indebtedness to Plaintiff, that such surplus be brought into this Court and deposited with the Clerk to abide the further order of this Court and that the Sheriff make his or her report of the aforesaid sale without delay as required by the Rules Governing the Courts of the State of New Jersey; and it is

4.    FURTHER ORDERED AND ADJUDGED that this Final Judgment shall not affect the rights of persons protected by the New Jersey Tenant Anti-Eviction Act (N.J.S.A. 2A:18-68.l *et. seq.*, if any; and it is

5.    FURTHER ORDERED AND ADJUDGED that Defendants, and their heirs, successors and assigns, stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to the Mortgaged Premises and collateral described in the Complaint in Foreclosure when sold by virtue of this Final Judgment, except as provided by 28 U.S.C. § 2410.

/s/Kathi F. Fiamingo, J.T.C. t/a
Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

Benesch, Friedlander, Coplan & Aronoff LLP
By:     Michael J. Barrie (NJ No. 033262000)
          Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff Pender Capital Asset Based Lending Fund I, LP*

| | |
|---|---|
| PENDER CAPITAL ASSET BASED LENDING FUND I, LP,<br><br>        Plaintiff,<br><br>v.<br><br>EVERGREEN PLAZA ASSOCIATES LLC, EVERGREEN I ASSOCIATES LLC, EVERGREEN II ASSOCIATES LLC, and EVERGREEN III ASSOCIATES, LLC,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: BURLINGTON COUNTY<br><br>Docket No. SWC-F-002953-19<br><br>Civil Action – Foreclosure<br><br>**WRIT OF EXECUTION** |

THE STATE OF NEW JERSEY TO THE

SHERIFF OF THE COUNTY OF BURLINGTON

GREETINGS:

WHEREAS, on the 13th day of November, 2020, by a certain judgment made in our

Superior Court of New Jersey in a certain cause therein pending wherein Pender Capital Asset

Based Lending Fund I, LP ("Plaintiff") is the plaintiff and Evergreen Plaza Associates LLC,

Evergreen I Associates LLC, Evergreen II Associates LLC, and Evergreen III Associates LLC

(together, "Defendants") are the defendants, it was ordered and adjudged that certain mortgaged

premises with the appearances and collateral particular set forth and described in the Complaint in

SWC F 002953-19     11/13/2020          Pg 2 of 5 Trans ID: CHC2020263187

Foreclosure, that is to say: all those certain tracts, lots, and parcels of land situate and lying in the

Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in Block 117.02

on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township of

Lumberton Tax Map and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount

Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being

commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060, the real

property as more particularly described on **Exhibit A** attached hereto and made a part hereof.

TOGETHER with all and singular the rights, liberties, privileges, hereditaments, and

appurtenances thereunto belonging or in anywise appertaining, and the reversion and remainders,

rents, issues, and profits thereof, and also all the estate, right, title, interest, use, property, claim,

and demand of Defendants of, in, to and out of the same, and all collateral, including, but not

limited to, fixtures, be sold to pay and satisfy in the first place unto Plaintiff Pender Capital Asset

Based Lending Fund I, LP the aggregate sum of ~~$8,349,009.20~~ $8,591,437.90 as of ~~July 31, 2020~~

September 30, 2020, which is secured by a certain mortgage dated March 14, 2018 and given by

Evergreen Plaza Associates LLC, Evergreen I Associates LLC, Evergreen II Associates LLC, and

Evergreen III Associates LLC, together with lawful interest computed thereafter on the total sum

due Plaintiff until the same be paid and satisfied, and also the costs and attorneys' fees of the

aforesaid Plaintiff, with interest thereon;

AND that, for that purpose, a Writ of Execution should issue, directed to the Sheriff of the

County of Burlington, commanding him or her to make the sale as aforesaid; and that the surplus

money arising from such sale, if any there be, should be brought into said Court and deposited

with the Clerk, subject to the further order of the said Court as by the said judgment remaining as

of record in our said Superior Court of New Jersey, at Trenton, doth and may more fully appear;

WHEREAS, the costs of the said Plaintiff including attorneys' fees have been duly taxed in the amount of $8,400.00;

THEREFORE, you are hereby commanded that you cause sale to be made of the premises and collateral, by selling so much of the same as may be needful and necessary for the purpose, to raise for Plaintiff said sum of ~~$8,340,659.20~~ $8,591,437.90 as of ~~July 31, 2020~~ September 30, 2020, with lawful interest thereafter, plus costs and attorneys' fees in the amount of $8,400.00, and that you have the surplus money, if any there be, before the Superior Court of New Jersey aforesaid at Trenton, within thirty (30) days after the sale to abide the further order of the said court, according to the judgment aforesaid; and you are to make return of the time and place aforesaid, by certificate under your hand, of the manner in which you have executed this our Writ, together with this Writ.  If there is no sale, the Writ shall be returnable within twenty-four (24) months in accordance with Rule 4:59-l(a).

WITNESS, the Honorable Kathi F. Fiamingo, J.T.C. t/a, a Judge of the Superior Court of New Jersey, at Mount Holly, New Jersey, aforesaid this 13th day of November, 2020.


Benesch, Friedlander, Coplan &                     Clerk of the Superior Court
Aronoff LLP
*Attorneys for Plaintiff*

By:  __/s/ Kevin M. Capuzzi__          By:  __/s/ Michelle M. Smith, Esq.__
     KEVIN M. CAPUZZI                       MICHELLE M. SMITH, ESQ.
                                            Clerk of the Superior Court

                              Signed and Sealed in the Superior Court of New Jersey

3

Case 21-17116-CMG   Doc 14-3   Filed 12/28/21   Entered 12/28/21 14:57:43   Desc
Exhibit 3 - Capuzzi Certification    Page 68 of 75

SWC F 002953-19    11/13/2020        Pg 4 of 5 Trans ID: CHC2020263187
recorded in the Office of the Superior Court Clerk on 11/13/2020 263187

**EXHIBIT 'A'**
**DESCRIPTION OF THE LAND**

All that certain lot, parcel or tract of land, situate and lying in the Townships of Mount Holly & Lumberton, County of Burlington and State of New Jersey being more particularly described as follows:

**TRACT 1:**

BEGINNING at an iron pin set in southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the end of a curve connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way (60') running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to an iron pin set; thence
2. South 31 degrees 33 minutes 36 seconds West 83.03 feet to a point; thence
3. North 65 degrees 15 minutes 11 seconds West 130.79 feet to a point; thence
4. South 31 degrees 33 minutes 36 seconds West 248.58 feet to a point; thence
5. North 58 degrees 27minutes 32 seconds West 162.24 feet to a point; thence
6. South 31 degrees 13 minutes 02 seconds West 150.00 feet to a point; thence
7. South 17 degrees 38 minutes 38 seconds West 199.69 feet to a monument found; thence
8. North 75 degrees 57 minutes 26 seconds West 261.07 feet to a monument found; thence
9. South 14 degrees 02 minutes 34 seconds East 82.40 feet to a point; thence
10. North 58 degrees 26 minutes 24 seconds West 561.78 feet to an iron pin found in the southeasterly line of Savory Way; thence
11. Along the southeasterly line of Savory Way, North 25 degrees 33 minutes 36 seconds East 626.12 feet to a drill hole found in a concrete sidewalk; thence
12. In a northerly direction, through a curve bearing to the right, having a radius of 70.00 feet and a length of 81.40 feet to the point or place of BEGINNING.

The above description is drawn in accordance with a survey prepared by William J. Fiore, dated August 21, 2006.

Together with certain rights, privileges and easements appurtenant to the above described property created by those certain Deeds of easements recorded in Deed Book 3965 Page 238; Deed Book 3965; Page 241; and Deed Book 3965, Page 244.

FOR INFORMATIONAL PURPOSES ONLY:  Also known as Lot 2 in Block 117.02 on the Township of Mount Holly Tax Map, and Lot 4.01 in Block 22 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY:  BEING COMMONLY KNOWN AS Block 117.02 Lot 2, Mount Holly, NJ 08060 and Block 22, Lot 4.01, Lumberton, NJ 08048.

Book # OR 13328 Page # 9222 Inst. # 5374273

**TRACT II:**

BEGINNING at a point in the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, said point being the following two courses and distances from the point of curvature of an arc connecting the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road and the southeasterly line of Savory Way running; thence

A) Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 1108.90 feet to a point; thence

B) North 31 degrees 33 minutes 36 seconds East 9.00 feet to the point or place of BEGINNING and from said point or place of BEGINNING running; thence

1. Along the southerly line of New Jersey State Highway Route No. 38 South Pemberton Road, South 58 degrees 26 minutes 24 seconds East 200.00 feet to an iron pin set; thence
2. South 12 degrees 23 minutes 30 seconds West 211.74 feet to a monument found; thence
3. North 58 degrees 26 minutes 24 seconds West 269.52 feet to a monument found; thence
4. North 31 degrees 33 minutes 36 seconds East 200.00 feet to the point or place of BEGINNING.

The above description is in accordance with a survey made by William J. Fiore, Inc., dated 8/21/2006.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2.04 and 2.05 in Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map.

FOR INFORMATIONAL PURPOSES ONLY: BEING COMMONLY KNOWN AS S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060

Book # OR 13328 Page # 9222 Inst. # 5374273

# EXHIBIT K



# Taxpayer Information

| | | | |
|---|---|---|---|
| **Block/Lot/Qual:** | 22. 4.01 | **Tax Account Id:** | 2319 |
| **Property Location:** | 1710 ROUTE 38 | **Property Class:** | 4A - Commercial |
| **Owner Name/Address:** | EVERGREEN I ASSOCIATES, LLC | **Land Value:** | 2,221,000 |
| | C\O VANICK PROPERTIES INC | **Improvement Value:** | 4,779,000 |
| | 477 COLONIAL ROAD | **Exempt Value:** | 0 |
| | RIDGEWOOD, NJ 07450 | **Total Assessed Value:** | 7,000,000 |
| | | **Additional Lots:** | None |
| **Special Taxing Districts:** | | **Deductions:** | |

**This Property is in Bankruptcy   |   There is a Lien on this Property**

## Taxes | Liens

| Make a Payment | View Tax Rates | View Current Bill | Project Interest |
|---|---|---|---|

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| 2022 | 02/01/2022 | Tax | 42,665.00 | 42,665.00 | 0.00 | 42,665.00 | OPEN |
| 2022 | 05/01/2022 | Tax | 42,665.00 | 42,665.00 | 0.00 | 42,665.00 | OPEN |
| | **Total 2022** | | **85,330.00** | **85,330.00** | **0.00** | **85,330.00** | |
| 2021 | 02/01/2021 | Tax | 42,297.50 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 05/01/2021 | Tax | 42,297.50 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 08/01/2021 | Tax | 43,032.50 | 0.21 | 0.01 | 0.22 | OPEN |
| 2021 | 11/01/2021 | Tax | 43,032.50 | 43,032.50 | 1,226.43 | 44,258.93 | OPEN |
| | **Total 2021** | | **170,660.00** | **43,032.71** | **1,226.44** | **44,259.15** | |
| 2020 | 02/01/2020 | Tax | 41,825.00 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 05/01/2020 | Tax | 41,825.00 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 08/01/2020 | Tax | 43,505.00 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 11/01/2020 | Tax | 42,035.00 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2020** | | **169,190.00** | **0.00** | **0.00** | **0.00** | |

Last Payment: 09/09/21

**Return to Home**



# Taxpayer Information

*Lumberton, New Jersey*

| | | | |
|---|---|---|---|
| **Block/Lot/Qual:** | 22. 4.02 | **Tax Account Id:** | 2320 |
| **Property Location:** | ROUTE 38 | **Property Class:** | 1 - Vacant Land |
| **Owner Name/Address:** | EVERGREEN II ASSOCIATES, LLC | **Land Value:** | 1,426,400 |
| | C/O VANICK PROPERTIES, INC | **Improvement Value:** | 0 |
| | 477 COLONIAL RD | **Exempt Value:** | 0 |
| | RIDGEWOOD, NJ 07450 | **Total Assessed Value:** | 1,426,400 |
| | | **Additional Lots:** | None |
| **Special Taxing Districts:** | | **Deductions:** | |

**This Property is in Bankruptcy   |   There is a Lien on this Property**

**Taxes**  Liens

[Make a Payment]  [View Tax Rates]  [View Current Bill]  [Project Interest]

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| **2022** | 02/01/2022 | Tax | 8,693.91 | 8,693.91 | 0.00 | 8,693.91 | OPEN |
| **2022** | 05/01/2022 | Tax | 8,693.91 | 8,693.91 | 0.00 | 8,693.91 | OPEN |
| | **Total 2022** | | **17,387.82** | **17,387.82** | **0.00** | **17,387.82** | |
| **2021** | 02/01/2021 | Tax | 8,619.03 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 05/01/2021 | Tax | 8,619.02 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 08/01/2021 | Tax | 8,768.79 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 11/01/2021 | Tax | 8,768.79 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2021** | | **34,775.63** | **0.00** | **0.00** | **0.00** | |
| **2020** | 02/01/2020 | Tax | 8,522.74 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 05/01/2020 | Tax | 8,522.74 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 08/01/2020 | Tax | 8,865.08 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 11/01/2020 | Tax | 8,565.53 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2020** | | **34,476.09** | **0.00** | **0.00** | **0.00** | |

Last Payment: 11/01/17

**Return to Home**



# Taxpayer Information

| | | | |
|---|---|---|---|
| **Block/Lot/Qual:** | 22.01 4.10 | **Tax Account Id:** | 2511 |
| **Property Location:** | 1722 ROUTE 38 | **Property Class:** | 1 - Vacant Land |
| **Owner Name/Address:** | EVERGREEN III ASSOCIATES, LLC | **Land Value:** | 200,000 |
| | C/O VANICK PROPERTIES, INC. | **Improvement Value:** | 0 |
| | 477 COLONIAL ROAD | **Exempt Value:** | 0 |
| | RIDGEWOOD, NJ 07450 | **Total Assessed Value:** | 200,000 |
| | | **Additional Lots:** | None |
| **Special Taxing Districts:** | | **Deductions:** | |

**This Property is in Bankruptcy   |   There is a Lien on this Property**

**Taxes**   Liens

[Make a Payment]    [View Tax Rates]    [View Current Bill]    [Project Interest]

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| **2022** | 02/01/2022 | Tax | 1,219.00 | 1,219.00 | 0.00 | 1,219.00 | OPEN |
| **2022** | 05/01/2022 | Tax | 1,219.00 | 1,219.00 | 0.00 | 1,219.00 | OPEN |
| | **Total 2022** | | **2,438.00** | **2,438.00** | **0.00** | **2,438.00** | |
| **2021** | 02/01/2021 | Tax | 1,208.50 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 05/01/2021 | Tax | 1,208.50 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 08/01/2021 | Tax | 1,229.50 | 0.00 | 0.00 | 0.00 | PAID |
| **2021** | 11/01/2021 | Tax | 1,229.50 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2021** | | **4,876.00** | **0.00** | **0.00** | **0.00** | |
| **2020** | 02/01/2020 | Tax | 1,195.00 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 05/01/2020 | Tax | 1,195.00 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 08/01/2020 | Tax | 1,243.00 | 0.00 | 0.00 | 0.00 | PAID |
| **2020** | 11/01/2020 | Tax | 1,201.00 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2020** | | **4,834.00** | **0.00** | **0.00** | **0.00** | |

Last Payment: 02/07/19

**Return to Home**

| Block/Lot/Qual: | 117.02 2. | Tax Account Id: | 2896 |
|---|---|---|---|
| Property Location: | 1710 ROUTE 38 | Property Class: | 1 - Vacant Land |
| Owner Name/Address: | EVERGREEN I ASSOCIATES, LLC | Land Value: | 350,000 |
| | 477 COLONIAL ROAD | Improvement Value: | 0 |
| | RIDGEWOOD, NJ 07450 | Exempt Value: | 0 |
| | | Total Assessed Value: | 350,000 |
| | | Additional Lots: | None |
| Special Taxing Districts: | FIRE DISTRICT 1 | Deductions: | |

**There is a Lien on this Property**

**Taxes**  Liens

[ Make a Payment ]  [ View Tax Rates ]  [ View Current Bill ]  [ Project Interest ]

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| 2022 | 02/01/2022 | Tax | 2,786.88 | 2,786.88 | 0.00 | 2,786.88 | OPEN |
| 2022 | 05/01/2022 | Tax | 2,786.87 | 2,786.87 | 0.00 | 2,786.87 | OPEN |
| | Total 2022 | | 5,573.75 | 5,573.75 | 0.00 | 5,573.75 | |
| 2021 | 02/01/2021 | Tax | 3,455.11 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 05/01/2021 | Tax | 3,455.10 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 08/01/2021 | Tax | 1,936.65 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 11/01/2021 | Tax | 2,300.64 | 0.00 | 0.00 | 0.00 | PAID |
| | Total 2021 | | 11,147.50 | 0.00 | 0.00 | 0.00 | |
| 2020 | 02/01/2020 | Tax | 3,377.23 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 05/01/2020 | Tax | 3,377.22 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 08/01/2020 | Tax | 3,397.54 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 11/01/2020 | Tax | 3,668.43 | 0.00 | 0.00 | 0.00 | PAID |
| | Total 2020 | | 13,820.42 | 0.00 | 0.00 | 0.00 | |

Last Payment: 12/09/21

**Return to Home**

| | | | | |
|---|---|---|---|---|
| **Block/Lot/Qual:** | 117.02 2.04 | **Tax Account Id:** | 2901 | |
| **Property Location:** | S PEMBERTON RD | **Property Class:** | 1 - Vacant Land | |
| **Owner Name/Address:** | EVERGREEN III ASSOCIATES, LLC | **Land Value:** | 50,000 | |
| | 400 BROADWAY | **Improvement Value:** | 0 | |
| | NEW YORK, NY 10013 | **Exempt Value:** | 0 | |
| | | **Total Assessed Value:** | 50,000 | |
| | | **Additional Lots:** | L2.05 | |
| **Special Taxing Districts:** | FIRE DISTRICT 1 | **Deductions:** | | |

**There is a Lien on this Property**

**Taxes**  Liens

| Make a Payment | | View Tax Rates | View Current Bill | Project Interest | |

| Year | Due Date | Type | Billed | Balance | Interest | Total Due | Status |
|---|---|---|---|---|---|---|---|
| 2022 | 02/01/2022 | Tax | 398.13 | 398.13 | 0.00 | 398.13 | OPEN |
| 2022 | 05/01/2022 | Tax | 398.12 | 398.12 | 0.00 | 398.12 | OPEN |
| | **Total 2022** | | **796.25** | **796.25** | **0.00** | **796.25** | |
| 2021 | 02/01/2021 | Tax | 495.89 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 05/01/2021 | Tax | 495.88 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 08/01/2021 | Tax | 274.37 | 0.00 | 0.00 | 0.00 | PAID |
| 2021 | 11/01/2021 | Tax | 326.36 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2021** | | **1,592.50** | **0.00** | **0.00** | **0.00** | |
| 2020 | 02/01/2020 | Tax | 484.71 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 05/01/2020 | Tax | 484.70 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 08/01/2020 | Tax | 487.62 | 0.00 | 0.00 | 0.00 | PAID |
| 2020 | 11/01/2020 | Tax | 526.50 | 0.00 | 0.00 | 0.00 | PAID |
| | **Total 2020** | | **1,983.53** | **0.00** | **0.00** | **0.00** | |

Last Payment: 09/03/20

**Return to Home**